## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------- x
In re:                                                  :    Chapter 11
                                                        :
NE OPCO, INC., et al.,                                  :    Case No. 13-_____ (____)
                                                        :
                    Debtors.¹                           :    Joint Administration Pending
------------------------------------------------------- x
```

**MOTION OF DEBTORS FOR ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 345, AND
363, FED. R. BANKR. P. 6003 AND DEL. BANKR. L.R. 2015-2 (I) AUTHORIZING
CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, INCLUDING
MAINTENANCE OF EXISTING BANK ACCOUNTS, CHECKS AND BUSINESS
FORMS, (II) WAIVING CERTAIN REQUIREMENTS OF THE UNITED STATES
TRUSTEE, AND (III) EXTENDING THE DEBTORS' TIME TO COMPLY WITH
SECTION 345 OF THE BANKRUPTCY CODE**

The debtors and debtors in possession in the above-captioned cases (collectively,

the "**Debtors**") hereby move (the "**Motion**") for entry of an order, under Sections 105, 345, and

363 of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 6003 of the Federal

Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 2015-2 of the Local Rules

of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "**Local Rules**"), (i) authorizing, but not directing, the Debtors to continue to

maintain and use their existing cash management system, including maintenance of the Debtors'

existing bank accounts, checks and business forms; (ii) granting the Debtors a waiver of certain

bank account and related requirements of the Office of the United States Trustee for the District

of Delaware (the "**United States Trustee**") to the extent that such requirements are inconsistent

with (a) the Debtors' existing practices under the cash management system or (b) any action

taken by the Debtors in accordance with any order granting this Motion or any other order

---

¹ The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax
identification number, are NE Opco, Inc. (9830) and NEV Credit Holdings, Inc. (9596). The above-captioned
Debtors' mailing address is c/o NE Opco, Inc., 3211 Internet Boulevard, Suite 200, Frisco, Texas 75034.

entered in the Debtors' Chapter 11 cases; and (iii) granting the Debtors additional time to comply with Section 345 of the Bankruptcy Code.  In support of the Motion, the Debtors rely upon the *Declaration of James Pinto in Support of Chapter 11 Petitions and First Day Motions*, filed with the Court concurrently herewith and fully incorporated herein (the "**Pinto Declaration**").  In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief requested herein are Sections 105(a), 345, and 363 of the Bankruptcy Code, Bankruptcy Rule 6003 and Local Rule 2015-2.

## BACKGROUND

2.      On the date hereof (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing cases for relief under Chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").  The factual background regarding the Debtors, including their business operations, their capital and debt structures and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the Pinto Declaration and fully incorporated herein by reference.

3.      The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been requested in the Chapter 11 Cases and no committees have yet been appointed.

## RELIEF REQUESTED

4.      By this Motion, the Debtors seek entry of an order, pursuant to Sections 105(a), 345, and 363 of the Bankruptcy Code, authorizing, but not directing, the Debtors to continue to maintain and use their existing cash management system, including maintenance of the Debtors' existing bank accounts, checks and business forms; (b) granting the Debtors a waiver of certain bank account and related requirements of the United States Trustee to the extent that such requirements are inconsistent with (i) the Debtors' existing practices under the cash management system or (ii) any action taken by the Debtors in accordance with any order granting this Motion or any other order entered in the Chapter 11 Cases; and (c) granting an extension of sixty (60) days for the Debtors to comply with the requirements of Section 345 of the Bankruptcy Code.  The Debtors also request that the Court (a) authorize and direct all banks with which the Debtors maintain accounts to continue to maintain, service, and administer such accounts; (b) waive any applicable requirement to establish separate accounts for cash collateral and/or tax payments; and (c) authorize third-party payroll and benefits administrators and providers to prepare and issue checks on behalf of the Debtors.

## BASIS FOR RELIEF

**A.      The Debtors' Cash Management System and Bank Accounts**

5.      In the ordinary course of their businesses, the Debtors maintain a cash management system (the "**Cash Management System**") which includes a collections account, a concentration account, a disbursement account, and a payroll account.  The Cash Management System is integral to the operation and administration of the Debtors' businesses.  The Cash Management System allows the Debtors to efficiently identify the Debtors' cash requirements and efficiently monitor and control all of the Debtors' cash receipts and disbursements.  The

Debtors believe that the Cash Management System is similar to those utilized by many other companies of comparable size and complexity to collect, transfer and disburse funds in a cost-effective and efficient manner.

6.      The Debtors' Accounting Department located in Frisco, Texas manages the Debtors' Cash Management System.   The Accounting Department's control over the administration of the various bank accounts to effect the collection, disbursement and movement of cash facilitates accurate cash forecasting and reporting and enables the Debtors to, among other things, monitor the collection and disbursement of funds.

7.      As of the Petition Date, (a) the Debtors maintained four (4) bank accounts (collectively, the "**Bank Accounts**") at one (1) financial institution.  A schedule of the Bank Accounts is attached as <u>Attachment 2</u> to this Motion.[2]  As reflected in such schedule, all of the Debtors' Bank Accounts are held in the name of NE Opco, Inc.

8.      The Cash Management System is primarily organized in a way that facilitates the Debtors ability to identify and fund their ongoing capital needs.  A summary of the Cash Management System is attached hereto as <u>Attachment 1</u>.

9.      **Debtors' Bank Accounts:**  The Debtors' Bank Accounts, are described below:

(a)      The Debtors maintain their concentration account at Wells Fargo Bank ("**Wells Fargo**"), which is held in the name of NE Opco, Inc. (Account No. XXXXXX5140) (the "**Master Account**").  Disbursements are made from the Master Account to the Controlled Disbursement Account and the Payroll Account (as such terms are defined herein).  NE Opco, Inc. daily

---

[2]      The Debtors believe, and have undertaken reasonable efforts to ensure, that Attachment 2 lists all of the Bank Accounts.  In the event that the Debtors inadvertently omitted any Bank Account from Attachment 2, the Debtors request that the relief sought by this Motion be deemed to apply to any such inadvertently omitted Bank Account.

requests drawdown funding in amounts necessary to fund disbursements from the Controlled Disbursement and Payroll Accounts.

(b)     The Debtors maintain one (1) deposit account at Wells Fargo which is held in the name of NE Opco, Inc. (Account No. XXXXXX5132) (the "**Collection Account**").   Payments from customers, including wire transfers, are deposited into the Collection Account. This account is swept on a daily basis to pay down amounts owing under the Debtors' revolving credit facility.

(c)     The Debtors maintain two (2) disbursement accounts, both of which are held in the name of NE Opco, Inc.  The first is a controlled disbursement account (Account No. XXXXXX0526) that is used to fund the Debtors' accounts payable other than with respect to payroll (the "**Controlled Disbursement Account**").   The second disbursement account (Account No. XXXXX5157) funds payroll and related expenses for the Debtors and is a zero balance account (the "**Payroll Account**").

**B.     The Debtors Should be Authorized to Continue to Use Their Existing Cash Management System and Bank Accounts.**

10.     The Debtors believe that the Cash Management System is an ordinary course, customary and essential business practice, and is similar to cash management systems employed by other businesses of a similar size and complexity.  The Cash Management System allows the Debtors to efficiently identify the Debtors' cash requirements and efficiently monitor and control all of the Debtors' cash receipts and disbursements.

11.     The continued use of the Cash Management System during the pendency of the Chapter 11 Cases is essential to the Debtors' business operations and their goal of maximizing value for the benefit of all parties in interest.  Requiring the Debtors to adopt new cash management systems at this early and critical stage would be expensive, impose needless administrative burdens and cause undue disruption.  Any such disruption would adversely (and perhaps irreparably) affect the Debtors' ability to maximize estate value for the benefit of creditors and other parties in interest.  Moreover, such a disruption would be wholly unnecessary insofar as the Cash Management System provides a valuable and efficient means for the Debtors

to address their cash management requirements and, to the best of the Debtors' knowledge, the Bank Accounts are held in approved depositories of the United States Trustee. Maintaining the existing Cash Management System without disruption is both essential to the Debtors' ongoing operations and in the best interests of the Debtors, their estates and all interested parties. Accordingly, the Debtors request that they be allowed to maintain and continue to use the Cash Management System and the Bank Accounts.

12.    As part of the relief requested herein, and to ensure that their transition into Chapter 11 is as smooth as possible and subject to the terms of any financing order in these cases, the Debtors seek an order authorizing the Debtors to (a) maintain and continue to use the Bank Accounts, including but not limited to those accounts that are listed on Attachment 2 hereto, in the same manner and with the same account numbers, styles and document forms as are currently employed, (b) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, ACH transfers, and drafts or other items presented, issued or drawn on the Bank Accounts, (c) pay ordinary course bank fees in connection with the Bank Accounts including prepetition fees, (d) perform their obligations under the documents and agreements governing the Bank Accounts, and (e) treat the Bank Accounts for all purposes as accounts of the Debtors in their capacities as debtors in possession.

13.    If the relief requested herein is granted, the Debtors will implement appropriate mechanisms to ensure that no payments will be made on any debts incurred by the Debtors prior to the Petition Date, other than those authorized by this Court. To prevent the possible inadvertent payment of prepetition claims against the Debtors, except those otherwise authorized by the Court, the Debtors will work closely with Wells Fargo to ensure appropriate procedures are in place to prevent checks issued prepetition from being honored absent this

Court's approval. However, the Debtors request that if Wells Fargo implements such handling procedures and then honors a prepetition check or other item drawn on any account that is the subject of this Motion (a) at the direction of the Debtors to honor such prepetition check or item, (b) in a good faith belief that the Court has authorized such prepetition check or item to be honored or (c) as a result of a good faith error made despite implementation of reasonable item handling procedures, Wells Fargo will not be deemed to be liable to the Debtors or to their estates on account of such prepetition check or other item being honored post-petition. The Debtors believe that such flexibility accorded Wells Fargo is necessary to induce Wells Fargo to continue providing cash management services to the Debtors.

14.     In addition, and in the interest of maintaining the continued and efficient operation of the Cash Management System during the pendency of these Chapter 11 Cases and subject to the terms of any financing order in these cases, the Debtors request that Wells Fargo be authorized and directed to continue to administer, service and maintain the Bank Accounts as such accounts were administered, serviced and maintained prepetition, without interruption and in the ordinary course (including making deductions for bank fees), and to honor any and all checks, drafts, wires, ACH transfers or other items presented, issued or drawn on the Bank Accounts on account of a claim arising on or after the Petition Date.

15.     The Debtors further request that they be authorized to implement such reasonable changes to the Cash Management System as the Debtors may deem necessary or appropriate, including, without limitation, closing any of the Bank Accounts or opening any additional Bank Accounts following the Petition Date (the "**New Accounts**"), wherever the Debtors deem that such accounts are needed or appropriate, and whether or not the banks in which the accounts are opened are designated depositories in the District of Delaware.

Notwithstanding the foregoing, any New Account that the Debtors open will be (a) at Wells Fargo or with a bank that is organized under the laws of the United States of America or any state therein and insured by the FDIC or the Federal Savings and Loan Insurance Corporation and (b) designated a "Debtor in Possession" account by the relevant bank. The Debtors request that the relief sought by this Motion extend to any New Accounts and that any order approving this Motion provide that the New Accounts are deemed to be Bank Accounts and are similarly subject to the rights, obligations and relief granted in the order. The Debtors will provide the United States Trustee and any statutory committee appointed in these cases with written notice of any New Accounts that are opened. In furtherance of the foregoing, the Debtors also request that the relevant banks be authorized to honor the Debtors' requests to open or close (as the case may be) such Bank Account(s) or New Account(s). Notwithstanding the foregoing, no New Account will be opened by the Debtors to the extent it would constitute an event of default under any postpetition financing agreement authorized in these cases.

**C.      The Debtors Should be Granted Authority to Continue to Use Existing Checks and Business Forms**

16.      Local Rule 2015-2(a) provides:

> Where the debtor uses pre-printed checks, upon motion of the debtor, the Court may, without notice and a hearing, permit the debtor to use its existing checks without the designation "Debtor-in-Possession" and use its existing bank accounts. However, once the debtor's existing checks have been used, the debtor shall, when reordering checks, require the designation "Debtor-in-Possession" and the corresponding bankruptcy number on all such checks.

Del. Bankr. L.R. 2015-2(a).

17.      To minimize expenses to their estates, the Debtors seek authorization to continue using all checks substantially in the forms existing immediately prior to the Petition Date, without reference to the Debtors' status as debtors in possession; provided, however, that

8

in the event that the Debtors generate new checks during the pendency of these cases other than from their existing stock of checks, such checks will include a legend referring to the Debtors as "Debtor in Possession."  The Debtors also seek authority to use all correspondence and other business forms (including, without limitation, letterhead, purchase orders and invoices) without reference to the Debtors' status as debtors in possession.[3]

18.    Most parties doing business with the Debtors undoubtedly will be aware of the Debtors' status as debtors in possession as a result of the publicity of these cases, the press releases issued by the Debtors and additional press coverage.  Moreover, the Debtors will provide notice of the commencement of the Chapter 11 Cases to creditors and other parties-in-interest.

19.    Changing the Debtors' existing checks, correspondence and other business forms would be expensive, unnecessary and burdensome to the Debtors' estates.  Further, such changes would be disruptive to the Debtors' business operations and would not confer any benefit upon those dealing with the Debtors.  For these reasons, the Debtors request that they be authorized to use their existing check stock, all correspondence and other business forms without being required to place the label "Debtor in Possession" on any of the foregoing.

**D.    The Debtors Should Be Granted a Waiver of Certain Requirements of the United States Trustee**

20.    The Debtors further request, pursuant to Sections 105(a) and 363 of the Bankruptcy Code, that this Court grant a waiver of certain bank account and related requirements

---

[3]    Although the operating guidelines that have been established for debtors in possession by the United States Trustee would require the Debtors to obtain and use new checks bearing the "Debtor in Possession" designation, the Debtors do not believe that they impose any limitation on the Debtors' other correspondence and business forms. Nevertheless, out of an abundance of caution, the Debtors seek explicit authority to continue using their existing correspondence and business forms without reference to the Debtors' status as debtors in possession.

of the United States Trustee to the extent that such requirements are inconsistent with (a) the Debtors' existing practices under the Cash Management System or (b) any action taken by the Debtors in accordance with any order granting this Motion or any other order entered in the Chapter 11 Cases. The United States Trustee has established certain operating guidelines for debtors in possession in order to supervise the administration of Chapter 11 cases. These requirements (each a "**UST Requirement**" and, collectively, the "**UST Requirements**") require Chapter 11 debtors to, among other things: (i) close all existing bank accounts and open new debtor-in-possession bank accounts; (ii) establish one debtor-in-possession account for all estate monies required for the payment of taxes, including payroll taxes; (iii) maintain a separate debtor-in-possession account for cash collateral; and (iv) obtain checks for all debtor-in-possession accounts which bear the designation "Debtor In Possession," the bankruptcy case number and the type of accounts. These requirements are designed to draw a clear line of demarcation between prepetition and postpetition transactions and operations, and prevent the inadvertent postpetition payment of prepetition claims. As set forth above, the Debtors submit that (x) they are able to work with Wells Fargo to ensure that this goal of separation between the prepetition and postpetition period is observed and (y) enforcing certain of these UST Requirements would disrupt the Debtors' operations and impose a financial burden on the Debtors' estates.

21.    To begin, as noted previously, in light of the complexity of the Cash Management System, it will be incredibly onerous for the Debtors to meet the requirement of closing all existing bank accounts and opening new debtor-in-possession bank accounts. Indeed, not only would the Debtors be unnecessarily inconvenienced, but so would their customers.

22.    Further, requiring the Debtors to abide by the UST Requirement to establish specific debtor-in-possession accounts for tax payments (including payroll taxes) and to deposit to such specific tax accounts sufficient funds to pay any tax liability (when incurred) associated with the Debtors' payroll and other tax obligations would be unnecessarily burdensome.  The Debtors believe that they can pay their tax obligations most efficiently from the Main Operating Account maintained at Wells Fargo in accordance with their existing practices, that the United States Trustee can adequately monitor the flow of funds into and out of such accounts, and that the creation of new debtor-in-possession accounts designated solely for tax obligations would be unnecessary and inefficient.

23.    Additionally, requiring the Debtors to abide by the UST Requirement to establish specific debtor-in-possession accounts for cash collateral will be unnecessary.  As set forth in the *Debtors' Motion for Interim and Final Orders (I) Authorizing Debtors to Obtain Post-Petition Secured Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507; (II) Authorizing Use of Cash Collateral; (III) Granting Liens and Super-Priority Claims; (IV) Granting Adequate Protection; (V) Modifying Automatic Stay; and (VI) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001* that was filed contemporaneously herewith, the Debtors have provided significant safeguards (negotiated in good faith with parties in interest) to ensure that those who have interests in the Debtors' cash collateral are adequately protected and such persons have been provided with notice of the proposed use of such cash collateral.

24.    Finally, for the reasons noted above, compliance with the UST Requirement that requires a debtor to obtain checks for all debtor-in-possession accounts which bear the designation "Debtor-In-Possession," the bankruptcy case number and the type of accounts is unnecessarily burdensome in these Chapter 11 Cases.

E.     **The Court Should Grant the Debtors an Extension of Time to Either Comply With the Deposit Requirements of 11 U.S.C. § 345(b) or to File a Motion Seeking to Waive Them**

25.     The Debtors further request that this Court grant the Debtors a sixty (60) day extension of time to either (i) comply with the requirements of Section 345(b) of the Bankruptcy Code or (ii) file a motion seeking to waive the requirements of Section 345(b) of the Bankruptcy Code, to the extent that either one or both actions is necessary in order for the Debtors to comply with Section 345(b) of the Bankruptcy Code, while, in the mean time, permitting the Debtors to maintain their deposits in their accounts in accordance with their existing deposit practices as of the Petition Date.

26.     As this Motion is being filed on the first day of the Debtors' Chapter 11 cases, the Debtors respectfully submit that cause exists to grant an interim sixty (60) day extension of the requirements of section 345(b) of the Bankruptcy Code.  During that time the Debtors can consult with the United States Trustee in order to determine whether the Cash Management System is currently in compliance with the requirements of Section 345(b) of the Bankruptcy Code and/or whether the Debtors need to take any further action to bring the Cash Management System into compliance with the requirements of Section 345(b).

## APPLICABLE AUTHORITY

A.     **The Bankruptcy Code Permits the Debtors to Continue Using the Cash Management System and the Bank Accounts**

27.     Section 363(c)(1) of the Bankruptcy Code authorizes a debtor in possession to use "property of the estate, in the ordinary course of business, without notice or a hearing." 11 U.S.C. § 363(c)(1).  The authority granted by Section 363(c)(1) of the Bankruptcy Code extends to a debtor in possession's continued use of its customary cash management system and, thus, supports the relief requested.  See, e.g., Charter Co. v. Prudential Ins. Co. Am.

(In re Charter Co.), 778 F.2d 617, 621 (11th Cir. 1985) (indicating that an order authorizing the debtor to employ a cash management system that was "usual and customary in the past" was "entirely consistent" with Section 363(c)(1)) of the Bankruptcy Code).

28.     Section 105(a) of the Bankruptcy Code also authorizes this Court to permit the Debtors to continue using their existing Cash Management System and the Bank Accounts.  Section 105(a) vests in this Court the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  The continuation of the Cash Management System, including the continued use of the Bank Accounts, is essential to the Debtors' efforts to maximize the value of their estates and the efficient administration of these Chapter 11 Cases.  Indeed, one court, in another context, has recognized that a centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash."  In re Columbia Gas Sys., Inc., 136 B.R. 930, 934 (Bankr. D. Del. 1992), aff'd in part and rev'd in part, 997 F.2d 1039 (3d Cir. 1993).  The relief requested is, therefore, appropriate under Section 105(a) of the Bankruptcy Code.  Indeed, bankruptcy courts routinely permit Chapter 11 debtors to continue using their existing cash management system, generally treating requests for such relief as a relatively "simple matter."  In re Baldwin-United Corp., 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987); see also In re Columbia Gas Sys., Inc., 136 B.R. at 934.

29.     Additionally, numerous courts including this Court have authorized debtors to continue their existing cash management systems in other large Chapter 11 cases.  See, e.g., In re Graceway Pharmaceuticals, LLC, Case No. 11-13036 (MFW) (Bankr. D. Del. Sept. 30, 2011); In re Appleseed's Intermediate Holdings LLC, Case No. 11-10160 (KG) (Bankr. D. Del. Jan. 20, 2011); In re Freedom Commc'ns Holdings, Inc., Case No. 09-13046 (BLS) (Bankr. D.

13

Del. Sept. 2, 2009); In re Tribune Co., Case No. 08-13141 (Bankr. D. Del. April 30, 2009); In re Spansion Inc., Case No. 09-10690 (Bankr. D. Del. March 23, 2009); In re Sportsman's Warehouse, Inc., Case No. 09-10990 (CSS) (Bankr. D. Del. March 23, 2009); In re Journal Register Co., Inc., Case No. 09-10769 (Bankr. S.D. N.Y. March 18, 2009); In re Star Tribune Holdings Corp., Case No. 09-10244 (RDD) (Bankr. S.D.N.Y. Feb. 6, 2009).

**B.      This Court Should Waive the UST Requirements to Permit the Debtors to Continue the Cash Management System**

30.      The continuation of the Cash Management System, as requested in this Motion, is consistent with the Debtors' authority to use property of the estate in the ordinary course of business pursuant to Section 363(c)(1) of the Bankruptcy Code.  Accordingly, this Court should grant the Debtors a waiver of the UST Requirements to the extent that such requirements conflict with the Debtors' existing practices under the Cash Management System or any action taken by the Debtors in accordance with any order granting this Motion or any other order entered in the Chapter 11 Cases.

31.      Moreover, compelling the Debtors to alter their current cash management practices and to modify the Cash Management System to comply with the UST Requirements would risk severe disruption to the Debtors' businesses and jeopardize the Debtors' ability to maximize value for all parties in interest.  Cf. In re Gaylord Container Corp., 1993 WL 188671, at *3, 13 (E.D. La. May 24, 1993) (adopting the bankruptcy court's findings of fact and conclusions of law, which included a finding that the banking requirements of Office of the United States Trustee for the District of Louisiana "represent a substantial burden on any debtor and, in this case, resulted in the incurrence of extraordinary unquantifiable costs by [the debtor] associated with the confusion engendered by the implementation of new policies and procedures to comply with such rules, and due to the substantial restrictions that such ruled placed on [the

debtor's] treasury functions"). This factor alone justifies the relief that the Debtors are seeking. See 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.").

**C.    The Court Should Grant the Debtors an Extension  of Time to Either Comply With the Deposit Requirements of 11 U.S.C. § 345(b) or to File a Motion Seeking to Waive Them**

32.    Section 345(a) of the Bankruptcy Code governs a debtor's deposit of cash during a Chapter 11 case and authorizes deposits of estate money that "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit." 11 U.S.C. § 345(a).  If a deposit is not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," Section 345(b) of the Bankruptcy Code requires the debtor to obtain from the entity with which the money is deposited a bond in favor of the United States that is secured by the undertaking of an adequate corporate surety.  Id. § 345(b).  In the alternative, the estate may require the entity to deposit governmental securities pursuant to 31 U.S.C. § 9303, which provides that when a person is required by law to give a surety bond, that person, in lieu of a surety bond, may provide a governmental obligation. See 31 U.S.C. § 9303.

33.    By this motion, the Debtors seek a sixty (60) day extension of the time to comply with Section 345(b) of the Bankruptcy Code to the extent the Bank Accounts do not already comply with Section 345(b) of the Bankruptcy Code, without prejudice to the Debtors' ability to seek a further extension or final waiver of those requirements.  During the extension period, the Debtors propose to engage the United States Trustee in discussions to determine if compliance with Section 345(b) is necessary in the case at hand, and if necessary, if it is appropriate.  The Debtors believe that the benefits of the requested extension far outweigh any

15

harm to the estates.  See generally In re Serv. Merchandise Co., Inc., 240 B.R. 894 (Bankr. M.D. Tenn. 1999).

34.    It is difficult at this time, without further analysis, to determine whether Section 345(b) is even applicable to the Bank Accounts.  Considering the Debtors' extremely limited liquidity and need to conserve cash, the Debtors submit that it would be an unnecessary drain of scarce estate resources to incur administrative expense at this time to comply with such requirement.

35.    Accordingly, the Debtors submit that "cause" exists pursuant to Section 345(b) of the Bankruptcy Code to extend the time to comply with the requirements of the statute because it is unclear whether compliance with Section 345(b) is necessary in the case at hand. Moreover, strict compliance with the requirements of Section 345 of the Bankruptcy Code would not be practical in these Chapter 11 cases.  A bond secured by the undertaking of a corporate surety would be prohibitively expensive, if such bond is available at all.

36.    Similar extensions have been granted in other Chapter 11 cases in this district and elsewhere.  See, e.g., In re Xerium Techs., Inc., Case No. 10-11031 (KJC) (Bankr. D. Del. Mar. 31, 2010) (D.I. 72) (60 days); In re Simmons Bedding Co., Case No. 09-14037 (MFW) (Bankr. D. Del. Nov. 17, 2009) (D.I. 45) (60 days); In re Panolam Holdings Co., Case No. 09-13889 (MFW) (Bankr. D. Del. Nov. 5, 2009) (D.I. 36) (60 days); In re NTK Holdings, Inc., Case No. 09-13611 (KJC) (Bankr. D. Del. Oct. 23, 2009) (D.I. 39) (60 days); In re Sun-Times Media Group, Inc., Case No. 09-11092 (CSS) (Bankr. D. Del. Apr. 1, 2009) (D.I. 33) (60 days); In re Pierre Foods, Inc., Case No. 08-11480 (KG) (Bankr. D. Del. July 16, 2008) (D.I. 49) (60 days); In re Landsource Comm. Dev., LLC, Case No. 08-11111 (KJC) (Bankr. D. Del. Jun. 10, 2008) (D.I. 29) (60 days); In re Tropicana Entm't, LLC, Case No. 08-10856 (KJC) (Bankr. D. Del.

May 6, 2008) (D.I. 58) (60 days); In re KB Toys, Inc., Case No. 08-13269 (KJC) (Bankr. D. Del. Dec. 12, 2008) (D.I. 42) (60 days).

37.     Based on the foregoing, the Debtors submit that the relief requested herein is necessary and appropriate, is in the best interests of their estates and all other interested parties, and should be granted in all respects.

**E.     Bankruptcy Rule 6003 Has Been Satisfied and Bankruptcy Rule 6004 Should be Waived**

38.     Certain isolated aspects of the relief requested herein may, if granted, be subject to Bankruptcy Rule 6003.  Pursuant to Bankruptcy Rule 6003, a court may grant such relief if it is necessary to avoid immediate and irreparable harm.  The Debtors submit that facts set forth herein demonstrate that the relief requested is necessary to avoid immediate and irreparable harm to the Debtors and, thus, Bankruptcy Rule 6003 has been satisfied.

39.     Additionally, to the extent that any aspect of the relief sought herein constitutes a use of property under Section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).  As described above, the relief that the Debtors seek in this Motion is immediately necessary in order for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.  The Debtors thus submit that the requested waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h) is here appropriate.

NOTICE

40.     Notice of this Motion will be given to: (a) the Office of the United States Trustee for the District of Delaware, (b) counsel to the Debtors' postpetition secured lender, (c) counsel to Wells Fargo Capital Finance, LLC, as agent under the First Lien Credit Agreement, (d) counsel to Galactic Holdings, LLC, as agent under the Second Lien Credit Agreement, (e)

counsel to International Paper Company, (f) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors and (g) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002. The Debtors will serve copies of the Motion and any order entered in respect of the Motion as required by Rule 9013-1(m) of the Local Rules. The Debtors submit that, under the circumstances, no other or further notice is required.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit A, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: June 9, 2013
      Wilmington, Delaware

RICHARDS, LAYTON & FINGER, P.A.

Mark D. Collins (No. 2981)
John H. Knight (No. 3848)
Michael J. Merchant (No. 3854)
Paul N. Heath (No. 3704)
920 N. King Street
Wilmington, Delaware 19801
Telephone: 302-651-7700
Facsimile: 302-651-7701
Email: collins@rlf.com
      knight@rlf.com
      merchant@rlf.com
      heath@rlf.com

Proposed Counsel for Debtors and Debtors in Possession

## ATTACHMENT 1

Summary of Cash Management System

**NE Opco, Inc.
Account Structure
June 2013**



**ATTACHMENT 2**

Schedule of Bank Accounts

| Financial Institution | Address | Account Number(s) | Account Holder | Account Type |
|---|---|---|---|---|
| Well Fargo Bank | Wells Fargo<br>420 Montgomery Street<br>San Francisco, CA 94104 | 5132 | NE Opco, Inc. | Collection |
| Well Fargo Bank | Wells Fargo<br>420 Montgomery Street<br>San Francisco, CA 94104 | 0526 | NE Opco, Inc. | Controlled Disbursement |
| Well Fargo Bank | Wells Fargo<br>420 Montgomery Street<br>San Francisco, CA 94104 | 5140 | NE Opco, Inc. | Master Account |
| Well Fargo Bank | Wells Fargo<br>420 Montgomery Street<br>San Francisco, CA 94104 | 5157 | NE Opco, Inc. | Payroll |

## EXHIBIT A

**Proposed Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x

In re:                                              :    Chapter 11
                                                    :
NE OPCO, INC., et al.,                              :    Case No. 12-12859 (KJC)
                                                    :
             Debtors.[1]                            :    Joint Administration Pending

------------------------------------------------------------ X

**ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 345, AND 363, FED. R. BANKR. P. 6003 AND DEL. BANKR. L.R. 2015-2 (I) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, INCLUDING MAINTENANCE OF EXISTING BANK ACCOUNTS, CHECKS AND BUSINESS FORMS, (II) WAIVING CERTAIN REQUIREMENTS OF THE UNITED STATES TRUSTEE, AND (III) EXTENDING THE DEBTORS' TIME TO COMPLY WITH SECTION 345 OF THE BANKRUPTCY CODE**

Upon the motion (the "**Motion**")[2] of the Debtors for an order, pursuant to Sections 105(a), 345, and 363 of the Bankruptcy Code, Bankruptcy Rule 6003 and Local Rule 2015-2, (i) authorizing, but not directing, the Debtors to continue to maintain and use their existing cash management system, including maintenance of the Debtors' existing bank accounts, checks and business forms; (ii) granting the Debtors a waiver of certain bank account and related requirements of the United States Trustee to the extent that such requirements are inconsistent with (a) the Debtors' existing practices under the cash management system or (b) any action taken by the Debtors in accordance with any order granting this Motion or any other order entered in the Debtors' Chapter 11 cases; and (iii) granting the Debtors additional time to comply with Section 345 of the Bankruptcy Code including the related requirements of the United States

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are NE Opco, Inc. (9830) and NEV Credit Holdings, Inc. (9596). The above-captioned Debtors' mailing address is c/o NE Opco, Inc., 3211 Internet Boulevard, Suite 200, Frisco, Texas 75034.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Trustee; and the Court having reviewed the Motion and the Pinto Declaration; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

<b>ORDERED, ADJUDGED, AND DECREED THAT:</b>

1.     The Motion is GRANTED, as set forth herein.

2.     The Debtors are authorized to continue to use their existing Cash Management System and shall maintain through the use thereof detailed records reflecting all transfers of funds under the terms and conditions provided for by the existing agreements with the institutions participating in the Cash Management System, except as modified by this Order.  In connection with the ongoing utilization of the Cash Management System, the Debtors shall continue to maintain records with respect to all transfers of cash so that all transactions may be readily ascertained, traced, and recorded properly.

3.     The Debtors are authorized to (a) designate, maintain and continue to use any and all of their respective operating, disbursement, collection and other accounts (collectively, the "**Bank Accounts**") in existence as of the Petition Date, with the same account numbers, styles, and document forms as are currently employed, including but not limited to the accounts identified in the attachments to the Motion, (b) if necessary, open new accounts wherever they are needed, whether or not such banks are designated depositories in the District of Delaware, (c) subject to the terms of this Order, deposit funds in, and withdraw funds from, the Bank Accounts in the usual and ordinary course, including checks, wire transfers, ACH transfers, drafts or other

items presented, issued, or drawn on the Bank Accounts, (d) pay ordinary course bank fees in connection with the Bank Accounts, including any fees arising prior to the Petition Date, (e) perform their obligations under the documents and agreements governing the Bank Accounts, and (f) treat the Bank Accounts for all purposes as accounts of the Debtors in their capacities as debtors-in-possession; provided, however, that the Debtors may only open new Bank Accounts with banks that agree to be bound by the terms of this Order and, in particular, the Cash Management System. The Debtors are further authorized to close Bank Accounts in the ordinary course of business. To the extent the Debtors open or close Bank Accounts, they shall provide prompt notice to the United States Trustee, any agent under any postpetition financing agreement with the Debtors (and their counsel) and counsel to any official committee appointed in these cases. Any new check stock used by the Debtors shall contain the designation "Debtor in Possession."

4.      Pursuant to Local Rule 2015-2(a), the Debtors are authorized to continue to use their existing checks and business forms without alteration or change and without the designation "Debtor in Possession" or a "debtor in possession case number" imprinted upon them.

5.      The Debtors are authorized to continue to utilize all third-party providers necessary for the administration of their Cash Management System.

6.      Nunc pro tunc to the Petition Date, and subject to the terms of this Order, Wells Fargo is authorized and directed, to the extent of available funds, to continue to administer, service and maintain the Bank Accounts as such accounts were administered, serviced and maintained prepetition, without interruption and in the ordinary course (including making deductions for bank fees), and to honor, and debit from Debtors' accounts in the ordinary course of business and without further Order of this Court, any and all checks, wire transfers, ACH

3

transfers, electronic funds transfers or other items presented, issued or drawn on the Bank Accounts, in respect of any amounts owing other than with respect to chargebacks on account of Returned Items (defined below) related to such Bank Accounts; provided, however, that unless otherwise ordered by the Court, no checks, drafts, electronic funds transfers (excluding any electronic funds transfer that Wells Fargo is obligated to settle) or other items presented, issued or drawn on the Bank Accounts prior to the Petition Date shall be honored.

7.    Each Bank that maintains a disbursement account shall implement reasonable handling procedures designed to effectuate the terms of this Order.  No Bank that implements such handling procedures and then honors a prepetition check, wire transfer, ACH transfer or other item drawn on any account that is the subject of this Order (a) at the direction of the Debtors, (b) in the good-faith belief that the Court has authorized such prepetition check, wire transfer, ACH transfer, electronic funds transfer, or other item to be honored, or (c) as a result of a good faith error made despite implementation of such handling procedures, shall be deemed to be liable to the Debtors or their estates or otherwise in violation of this Order.

8.    Subject to the provisions of this Order, Wells Fargo is authorized and directed to honor all representations from the Debtors as to which checks, wire transfers, ACH transfers or other items should be honored or dishonored; provided, however, in the course of providing cash management services to the Debtors, Wells Fargo is authorized, without further Order of this Court, to deduct from the appropriate Bank Accounts of the Debtors its bank fees, and further, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including without limitation, returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind (collectively, "**Returned Items**"), regardless of whether such items were deposited or transferred pre-prepetition or post-

4

petition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

9.    For banks at which the Debtors hold accounts that are party to a Uniform Depository agreement with the United States Trustee, within fifteen (15) days of the date of entry of this Order, the Debtors shall (a) contact each bank, (b) provide each of the Debtors' employer identification numbers and (c) identify each of their accounts held at such banks as being held by a debtor in possession in a bankruptcy case.

10.    The Debtors are authorized to implement such reasonable changes to the Cash Management System as the Debtors may deem necessary or appropriate, including, without limitation, closing any of the Bank Accounts or opening any additional Bank Accounts following the Petition Date (the "**New Accounts**"), wherever the Debtors deem that such accounts are needed or appropriate, and whether or not the banks in which the accounts are opened are designated depositories in the District of Delaware. Notwithstanding the foregoing, any New Account that the Debtors open will be (a) with a bank that is organized under the laws of the United States of America or any state therein, and that is insured by the FDIC or the Federal Savings and Loan Insurance Corporation (b) designated a "Debtor in Possession" account by the relevant bank and (c) in accordance with the terms and provisions of any covenants relating thereto set forth in any postpetition financing agreement with the Debtors. The New Accounts are deemed to be Bank Accounts and are similarly subject to the rights, obligations, and relief granted in this Order. The Debtors shall provide the United States Trustee and counsel to any official committee appointed in these cases with prompt notice of any New Accounts that are opened. Wells Fargo is authorized to honor the Debtors' requests to open or close (as the case may be) any Bank Account(s).

RLF1 8596886v.6

11.     The bank account and related requirements of the United States Trustee are hereby waived to the extent that such requirements are inconsistent with (a) the Debtors' existing practices under the Cash Management System or (b) any action taken by the Debtors in accordance with this Order or any other order entered in these Chapter 11 cases.

12.     The Debtors are authorized to deposit and invest funds in accordance with their established deposit and investment practices in effect as of the commencement of these Chapter 11 cases and, to the extent such deposit practices are not consistent with the requirements of Section 345(b) of the Bankruptcy Code or the United States Trustee Operating Guidelines for Chapter 11 Cases, such requirements are waived, on an interim basis. The Debtors shall have 60 days (or such additional time as the United States Trustee may agree to) from the Petition Date (the "**Extension Period**") within which to either come into compliance with Section 345(b) of the Bankruptcy Code or to make such other arrangements as agreed with the United States Trustee. Such extension is without prejudice to the Debtors' right to request a further extension of the Extension Period or a final waiver of the requirements of Section 345(b) of the Bankruptcy Code.

13.     Notwithstanding anything herein to the contrary, those certain existing deposit agreements between Debtors and Wells Fargo shall continue to govern the postpetition Cash Management System between the Debtors and Wells Fargo, and that all of the provisions of such agreements, including without limitation, the termination and fee provisions, shall remain in full force and effect.

14.     The Debtors shall at all times maintain sufficient balances in the Bank Accounts so as to secure their obligations to Wells Fargo.

RLF1 8596886v.6

15.     Notwithstanding the relief granted herein, no action by any Debtor is permitted to the extent that it would be inconsistent with any financing or cash collateral order entered by this Court and no payment shall be made by the Debtors unless (a) such payment is permitted by the budget then in effect under the financing or cash collateral order entered by this Court and (b) the financing or cash collateral order is in effect and has not been terminated in accordance with its terms.

16.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

17.     The Debtors are hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Order.

18.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: _____, 2013
        Wilmington, Delaware


_____
UNITED STATES BANKRUPTCY JUDGE

RLF1 8596886v.6