## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------- x

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| NE OPCO, INC., et al., | : Case No. 13-_____ (_____) |
| | : |
| Debtors.[1] | : Joint Administration Pending |

------------------------------------------------------- x

### APPLICATION OF DEBTORS FOR ORDER APPOINTING EPIQ SYSTEMS AS CLAIMS AND NOTICING AGENT PURSUANT TO 28 U.S.C. § 156(c), 11 U.S.C. § 105(a) AND DEL. BANKR. L.R. 2002-1(f)

The debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") hereby apply (the "**Section 156(c) Application**") for entry of an order (the "**Retention Order**") under Section 156(c) of Title 28 of the United States Code, 28 U.S.C. §§ 101 *et seq.* (the "**Judicial Code**"), Section 105(a) of Title 11 of the United States Code (the "**Bankruptcy Code**"), and Rule 2002-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") appointing Epiq Systems ("**Epiq**") as claims and noticing agent in the above-captioned cases. In support of the Section 156(c) Application, the Debtors rely upon and incorporate by reference the *Declaration of Jennifer M. Meyerowitz, Esq. in Support of the Application of Debtors for Order Appointing Epiq Systems as Claims and Noticing Agent Pursuant to 28 U.S.C. § 156(c), 11 U.S.C. § 105(a) and Del. Bankr. L.R. 2002-1(f)*, (the "**Epiq Declaration**"), attached hereto as Exhibit A. In further support of the Section 156(c) Application, the Debtors respectfully represent as follows:

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are NE Opco, Inc. (9830) and NEV Credit Holdings, Inc. (9596). The above-captioned Debtors' mailing address is c/o NE Opco, Inc., 3211 Internet Boulevard, Suite 200, Frisco, Texas 75034.

## JURISDICTION

1.      The Court has jurisdiction to consider the Section 156(c) Application under Judicial Code Sections 157 and 1334.  This is a core proceeding under Judicial Code Section 157(b).  Venue of these cases and the Section 156(c) Application in this District is proper under Judicial Code Sections 1408 and 1409.  The legal predicates for the relief requested herein are Judicial Code Section 156(c), Section 105(a) of the Bankruptcy Code and Local Rule 2002-1(f).

## BACKGROUND

2.      On the date hereof (the "**Petition Date**"), the Debtors filed voluntary petitions in the Court commencing cases (the "**Chapter 11 Cases**") for relief under Chapter 11 of the Bankruptcy Code.  The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the Declaration of James Pinto in Support of Chapter 11 Petitions and First Day Motions (the "**Pinto Declaration**"), filed with the Court concurrently herewith, and fully incorporated herein by reference.[2]

3.      The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been requested in the Chapter 11 Cases, and no committees have yet been appointed.

4.      Pursuant to a separate motion filed on the Petition Date, the Debtors requested joint administration of the Debtors' estates, as provided for in Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

---

[2]      Capitalized terms not otherwise defined herein have the meanings given to them in the Pinto Declaration.

RLF1 8612771v.3

**RELIEF REQUESTED**

5.      The Section 156(c) Application is made pursuant to Judicial Code Section 156(c), Section 105(a) of the Bankruptcy Code, and Local Rule 2002-1(f) for an order appointing Epiq to act as the claims and noticing agent in order to assume full responsibility for the distribution of notices and the maintenance, processing and docketing of proofs of claim filed in the Chapter 11 Cases.

6.      The Debtors' selection of Epiq to act as the claims and noticing agent has satisfied the Court's *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)*, in that the Debtors have obtained and reviewed engagement proposals from at least two (2) other court-approved claims and noticing agents to ensure selection through a competitive process.   Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that Epiq's rates are competitive and reasonable given Epiq's quality of services and expertise.

7.      The proposed terms of retention are set forth in the Agreement for Services dated May 22, 2013 annexed hereto as <u>Exhibit B</u> (the "**Epiq Agreement**"); *provided, however,* that the Debtors are seeking approval solely with respect to services and terms and provisions that are consistent with the Section 156(c) Application and the Retention Order.[3]

8.      Although the Debtors have not yet filed their schedules of assets and liabilities, they estimate that there will be in excess of 11,000 entities to be noticed.  In view of the number of anticipated claimants and the complexity of the Debtors' businesses, the Debtors

---

[3]      The Debtors will file the *Application of Debtors for Order under 11 U.S.C. §§ 327 and 328 Authorizing Employment and Retention of Epiq Systems as Administrative Advisor Nunc Pro Tunc to the Petition Date* (the "**Section 327 Application**").  Pursuant to the Section 327 Application, the Debtors will seek to retain *Epiq Systems* to perform additional services outside of the ambit of those services covered under the Section 156(c) Application.

submit that the appointment of a claims and noticing agent is both necessary and in the best interests of both the Debtors' estates and their creditors.

9.    Epiq is one of the country's leading chapter 11 administrators, with significant experience in noticing, claims administration, solicitation, balloting, and other administrative aspects of Chapter 11 cases.  It has acted as the claims and noticing agent in numerous cases of comparable size, including several cases that were commenced in this Court.[4] See, e.g., In re Dex One Corporation, Case No. 13-10533 (KG) (Bankr. D. Del. Mar. 19, 2013); In re Supermedia, Inc., Case No. 13-10545 (KG) (Bankr. D. Del. Mar. 19, 2013);   In re Prince Sports, Inc., Case No. 12-11439 (KJC) (Bankr. D. Del. May 2, 2012); In re SSI Grp. Holding Corp., Case No. 11-12917 (MFW) (Bankr. D. Del. Sept. 15, 2011); In re Anchor Blue Holding Corp., Case No. 11-10110 (PJW) (Bankr. D. Del. Jan. 12, 2011); In re Post-Sale Co. II, LLC (f/k/a Consol. Horticulture Grp. LLC), Case No. 10-13308 (CSS) (Bankr. D. Del. Oct. 14, 2010); In re Trico Marine Servs., Inc., Case No. 10-12653 (BLS) (Bankr. D. Del. Aug. 27, 2010).

10.    By appointing Epiq as the claims and noticing agent in the Chapter 11 Cases, the distribution of notices and the processing of claims will be expedited, and the office of the Clerk of the Bankruptcy Court for the District of Delaware (the "**Clerk**") will be relieved of the administrative burden of processing what may be an overwhelming number of claims.

11.    The Section 156(c) Application pertains only to the work to be performed by Epiq under the Clerk's delegation of duties permitted by Judicial Code Section 156(c) and Local Rule 2002-1(f), and any work to be performed by Epiq outside of this scope is not covered by the Section 156(c) Application or by any order granting approval hereof.  Specifically, Epiq

---

[4]    Because of the voluminous nature of the orders cited herein, they are not attached to the Section 156(c) Application.  Copies of these orders, however, are available upon request of the Debtors' proposed counsel.

will perform the following tasks in its role as claims and noticing agent (the "**Epiq Services**"), as well as all quality control relating thereto:

(a) Prepare and serve required notices and documents in the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including (i) notice of the commencement of the Chapter 11 Cases and the initial meeting of creditors under Bankruptcy Code Section 341(a), (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan and (vii) all other notices, orders, pleadings, publications and other documents as the Debtors or the Court may deem necessary or appropriate for an orderly administration of the Chapter 11 Cases;

(b) Maintain (i) a list of all potential creditors, equity holders and other parties-in-interest; and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j) and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update and make said lists available upon request by a party-in-interest or the Clerk;

(c) Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(d) Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(e) For all notices, motions, orders or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket numbers(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(f)     Process all proofs of claim received, including those received by the Clerk's office, and check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(g)     Maintain the official claims register for each Debtor (the "**<u>Claims Registers</u>**") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (<u>e.g.</u>, secured, unsecured, priority, etc.), (vi) the applicable Debtor, and (vii) any disposition of the claim;

(h)     Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(i)     Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(j)     Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to Epiq's offices, not less than weekly;

(k)     Upon completion of the docketing process for all claims received to date for each Chapter 11 Case, turn over to the Clerk copies of the claims register for the Clerk's review (upon the Clerk's request);

(l)     Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register;

(m)     Assist in the dissemination of information to the public and respond to requests for administrative information regarding the Chapter 11 Cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

(n)     If the Chapter 11 Cases are converted to cases under Chapter 7 of the Bankruptcy Code, contact the Clerk's office within three (3) days of the notice to Epiq of entry of the order converting the Chapter 11 Cases;

(o)     Thirty (30) days prior to the close of the Chapter 11 Cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing Epiq and terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of the Chapter 11 Cases;

(p)    Within seven (7) days of notice to Epiq of entry of an order closing the Chapter 11 Cases, provide to the Court the final version of the claims register as of the date immediately before the close of the Chapter 11 Cases; and

(q)    At the close of the Chapter 11 Cases, box and transport all original documents, in proper format, as provided by the Clerk's office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064 or (ii) any other location requested by the Clerk's office.

12.    The Claims Registers shall be opened to the public for examination without charge during regular business hours and on a case-specific website maintained by Epiq.

13.    Epiq shall not employ any past or present employee of the Debtors for work that involves the Chapter 11 Cases.

14.    The Debtors propose to compensate Epiq on substantially the terms and conditions set forth in the Epiq Agreement, upon receipt of reasonably detailed invoices setting forth the services provided by Epiq during the prior month and the rates charged for such services performed.

15.    The Debtors respectfully request that the undisputed fees and expenses incurred by Epiq in the performance of the Epiq Services be treated as administrative expenses of the Debtors' estates pursuant to Judicial Code Section 156(c) and Section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court. Epiq agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on the Debtors, the Office of the United States Trustee, counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors and any party-in-interest who specifically requests service of the monthly invoices. If any dispute arises relating to the Epiq Agreement or monthly

invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

16.    Prior to the Petition Date, the Debtors provided Epiq a retainer in the amount of $15,000, which Epiq applied to all prepetition invoices. Epiq seeks to have the retainer held under the Epiq Agreement during the Chapter 11 Cases as security for the payment of fees and expenses incurred in rendering the Epiq Services hereunder, with any remainder to be held as security for the payment of other approved fees and expenses incurred in rendering other services under the Epiq Agreement.

17.    In connection with its retention as claims and noticing agent, Epiq represents in the Epiq Declaration, among other things, that:

    (a)    Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the claims and noticing agent in the Chapter 11 Cases;

    (b)    By accepting employment in the Chapter 11 Cases, Epiq waives any rights to receive compensation from the United States government in connection with the Debtors' Chapter 11 Cases;

    (c)    In its capacity as the claims and noticing agent in the Chapter 11 Cases, Epiq will not be an agent of the United States and will not act on behalf of the United States; and

    (d)    It is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged.

18.    To the extent that there is any inconsistency between the Section 156(c) Application, the Retention Order and the Epiq Agreement, the Retention Order will govern.

19.    The Section 156(c) Application complies with the *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)* and conforms to the standard Section 156(c) Application in use in this District.

**NOTICE**

20.     Notice of this Motion will be given to: (a) the Office of the United States Trustee for the District of Delaware, (b) counsel to the Debtors' postpetition secured lender, (c) counsel to Wells Fargo Capital Finance, LLC, as agent under the First Lien Credit Agreement, (d) counsel to Galactic Holdings, LLC, as agent under the Second Lien Credit Agreement, (e) counsel to International Paper Company, (f) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors and (g) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.  The Debtors will serve copies of the Motion and any order entered in respect of the Motion as required by Rule 9013-1(m) of the Local Rules.  The Debtors submit that, under the circumstances, no other or further notice is required.

**WHEREFORE**, the Debtors respectfully request that the Court enter the Retention Order substantially in the form of Exhibit C hereto, granting the relief requested in the Section 156(c) Application and such other and further relief as may be just and proper.

Dated:  June 9, 2013          NE Opco, Inc. and NEV Credit Holdings, Inc.
        Wilmington, Delaware    Debtors and Debtors in Possession

                               _____
                               James Pinto

                               Chairman and Chief Executive Officer of NE
                               Opco, Inc., and Chairman and President of NEV
                               Credit Holdings, Inc.

**EXHIBIT A**

Epiq Declaration

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NE OPCO, INC., et al., | : | Case No. 13-_____ (_____) |
| | : | |
| Debtors.[1] | : | Joint Administration Pending |

------------------------------------------------------------ x

### DECLARATION OF JENNIFER M. MEYEROWITZ, ESQ. IN SUPPORT OF APPLICATION OF DEBTORS FOR ORDER APPOINTING EPIQ SYSTEMS AS CLAIMS AND NOTICING AGENT PURSUANT TO 28 U.S.C. § 156(c), 11 U.S.C. § 105(a) AND DEL. BANKR. L.R. 2002-1(f)

Under 28 U.S.C. § 1764, Jennifer M. Meyerowitz, Esq. declares as follows under the penalty of perjury:

1.      I am the Vice President, Senior Consultant and Director of Business Development of  Epiq Systems ("**Epiq**"), which maintains an office at 757 Third Avenue, 3rd Floor, New York, New York, 10017.  I am duly authorized to make this declaration on behalf of Epiq, and I submit this declaration on behalf of Epiq (the "**Epiq Declaration**") in support of the application (the "**Section 156(c) Application**")[2] of the debtors and debtors in possession in the above-captioned Chapter 11 Cases (collectively, the "**Debtors**"), for an order under Judicial Code Section 156(c), Section 105(a) of the Bankruptcy Code, and Local Rule 2002-1(f) approving the Debtors' retention of Epiq as claims and noticing agent.  The facts set forth in this Epiq Declaration are personally known to me and, if called as a witness, I could and would testify thereto.

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are NE Opco, Inc. (9830) and NEV Credit Holdings, Inc. (9596).  The above-captioned Debtors' mailing address is c/o NE Opco, Inc., 3211 Internet Boulevard, Suite 200, Frisco, Texas 75034.

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Section 156(c) Application.

2.     As agent and custodian of court records, the services my firm proposes to render to the Clerk's office and the Debtors include the Epiq Services as described in the Section 156(c) Application.

3.     Epiq represents that:

(a)   Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the claims and noticing agent in the Chapter 11 Cases;

(b)   By accepting employment in the Chapter 11 Cases, Epiq waives any rights to receive compensation from the United States government in connection with the Chapter 11 Cases;

(c)   In its capacity as the claims and noticing agent in the Chapter 11 Cases, Epiq will not be an agent of the United States and will not act on behalf of the United States; and

(d)   It is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged.

4.     Epiq is a data processing firm that specializes in Chapter 11 administration, consulting, and analysis, including noticing, claims processing and other administrative tasks in Chapter 11 cases.  Epiq has assisted and advised numerous Chapter 11 debtors in connection with noticing and claims administration and reconciliation.  Epiq has provided identical or substantially similar services in other Chapter 11 cases nationwide, including in this Court.[3]

5.     To the best of my knowledge, neither Epiq nor any employee thereof has any affiliation with the Debtors, their creditors, other parties-in-interest, the United States

---

[3]     Nationally, Epiq has provided identical or substantially similar services in chapter 11 cases including In re Dex One Corporation, Case No. 13-10533 (KG) (Bankr. D. Del. Mar. 19, 2013);  In re Supermedia, Inc., Case No. 13-10545 (KG) (Bankr. D. Del. Mar. 19, 2013);  In re Prince Sports, Inc., Case No. 12-11439 (KJC) (Bankr. D. Del. May 2, 2012); In re SSI Grp. Holding Corp., Case No. 11-12917 (MFW) (Bankr. D. Del. Sept. 15, 2011); In re Anchor Blue Holding Corp., Case No. 11-10110 (PJW) (Bankr. D. Del. Jan. 12, 2011); In re Post-Sale Co. II, LLC (f/k/a Consol. Horticulture Grp. LLC), Case No. 10-13308 (CSS) (Bankr. D. Del. Oct. 14, 2010); and In re Trico Marine Servs., Inc., Case No. 10-12653 (BLS) (Bankr. D. Del. Aug. 27, 2010).

RLF1 8612771v.3

Trustee, or any other person employed by the Office of the United States Trustee. To the best of my knowledge, neither Epiq nor any other employee thereof holds any interest adverse to the Debtors' estates with respect to the matters upon which it is to be engaged.

6.    In connection with the preparation of this Declaration, I caused to be submitted for review by our conflicts system the names of all known potential parties-in-interest (the "**Potential Parties in Interest**") in these cases. The list of Potential Parties in Interest was provided by the Debtors and included the Debtors, non-debtor affiliates, current and former directors and officers of the Debtors, significant stockholders, secured creditors, largest unsecured creditors, and other parties. The results of the conflict check were compiled and reviewed by employees of Epiq, under my supervision. At this time, Epiq is not aware of any relationship which would present a disqualifying conflict of interest.

7.    To the best of my knowledge, Epiq and each of its employees are "disinterested persons," as that term is defined in 11 U.S.C. § 101(14) and neither Epiq nor any of its employees hold or represent an interest adverse to the Debtors' estates related to any matter for which Epiq will be employed. To the best of my knowledge, neither Epiq nor any of its personnel have any relationship with the Debtors that would impair Epiq's ability to serve as claims and noticing agent. Epiq may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Epiq serves or has served in a neutral capacity as claims and noticing agent for another Chapter 11 debtor. To the best of my knowledge, such relationships are completely unrelated to the Chapter 11 Cases. Epiq personnel may have relationships with some of the Debtors' creditors or other parties in interest. However, to the best of my knowledge, such relationships, to the extent they exist, are of a personal financial nature and completely unrelated to the Chapter 11 Cases. Epiq has, and will continue to

3

represent clients in matters unrelated to the Chapter 11 Cases.  In addition, Epiq has had, and will continue to have, relationships in the ordinary course of its business with certain vendors, professionals and other parties in interest that may be involved in the Debtors' cases in matters unrelated to the Chapter 11 Cases.

8.      Epiq shares a corporate parent with certain companies that provide integrated technology products and services to the legal profession for electronic discovery, class action settlements, financial transactions, Chapter 7 and 13 bankruptcy, litigation, and regulatory compliance.  Given the legal and operational separateness of Epiq from its affiliates and the administrative nature of the services performed by such companies, Epiq does not believe that a conflict would arise solely from any relationship or claim of an Epiq affiliate or its corporate parent.

9.      If any new facts or relationships are discovered, Epiq will supplement its disclosure to the Court.

10.      In performing the Epiq Services as described in the Section 156(c) Application, Epiq will charge the rates set forth in the Epiq Agreement.  These rates are at least as favorable as the prices Epiq charges in cases in which the firm has been retained to perform similar services.

11.      Epiq will comply with all requests of the Clerk's office and the *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)*.

12.      If appointed as claims and noticing agent, Epiq will not (a) cease providing claims processing services during the Chapter 11 Cases for any reason, including nonpayment, without an order of the Court and (b) undertake any legal representation of the

Debtors, nor provide any advice of a legal nature, outside the scope of the duties outlined in the

Section 156(c) Application without prior order from the Court authorizing Epiq to do so.

        13.     To the best of my knowledge, information and belief, and after reasonable

inquiry, the foregoing is true and correct.

_____, 2013

                                    Jennifer M. Meyerowitz, Esq.

                                    Vice President, Senior Consultant and
                                    Director of Business Development

# **EXHIBIT B**

Epiq Agreement



# EPIQ

## STANDARD SERVICES AGREEMENT

This Standard Services Agreement is being entered into by and between Epiq Bankruptcy Solutions, LLC ("Epiq") and NEV Credit Holdings, Inc. and its subsidiary, NE Opco, Inc. dba National Envelope and related debtors (collectively, the "Client"), as of May 22 2013.

In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## General Terms and Conditions

**1.   Services.**

In accordance with the charges, terms and conditions contained in this agreement and in the schedule(s) attached hereto (collectively, the "Agreement"), Epiq agrees to furnish Client with the services set forth on Exhibit A hereto (the "Services") in connection with a corporate restructuring. Services will be provided on an as needed basis and upon request or agreement of the Client. Charges for the Services will be based on the pricing schedule set forth on Exhibit B hereto (the "Pricing Schedule"). The Pricing Schedule sets forth individual unit pricing for each of the Services provided by Epiq and represents a bona fide proposal for that Service. The Client may request separate Services or all of the Services reflected in the Pricing Schedule.

**2.   Term.**

This Agreement shall become effective on the date of its acceptance by both Epiq and the Client; provided, however, Epiq acknowledges that Bankruptcy Court approval of its engagement may be required in order for Epiq to be engaged in a chapter 11 proceeding. The Agreement shall remain in effect until terminated: (a) by the Client, on thirty (30) days' prior written notice to Epiq and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq; or (b) by Epiq, on ninety (90) days' prior written notice to the Client and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq.

**3.   Charges.**

3.1   For the Services and materials furnished by Epiq under this Agreement, the Client shall pay the fees, charges and costs set forth in the Pricing Schedule. Epiq will bill the Client monthly. All invoices shall be due and payable upon receipt.

3.2   Epiq reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective January 2, 2014. If such annual increases exceed 10% from the prior year's level, Epiq shall provide sixty (60) days' prior written notice to the Client of such proposed increases.



3.3    Client agrees to pay Epiq for all materials necessary for performance of the Services under this Agreement (other than computer hardware and software) and any reasonable out of pocket expenses including, without limitation, transportation, long distance communications, printing, photocopying, fax, postage and related items.

3.4    Client shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of the Client, notwithstanding how such taxes may be designated, levied or based.  This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Epiq.

3.5    Client shall pay to Epiq any actual charges (including fees, costs and expenses as set forth in the Pricing Schedule) related to, arising out of or resulting from any Client error or omission.  Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Pricing Schedule.

3.6    In the event of termination pursuant to Section 2 hereof, Client shall be liable for all amounts then accrued and/or due and owing to Epiq under the Agreement.

3.7    To the extent permitted by applicable law, Epiq shall receive a retainer in the amount of $15,000.00 (the "Retainer") that may be held by Epiq as security for the Company's payment obligations under the Agreement.  The Retainer is due upon execution of this Agreement.  Epiq shall be entitled to hold the Retainer until the termination of the Agreement.  Following termination of the Agreement, Epiq shall return to the Company any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices

## 4.  <u>Confidentiality.</u>

Client data provided to Epiq during the term of this Agreement in connection with the Services ("<u>Client Data</u>") shall be maintained confidentially by Epiq in the same manner and to the same level as Epiq safeguards data relating to its own business, but in no event less than a reasonable degree of care; <u>provided, however,</u> that if Client Data is publicly available, was already in Epiq's possession or known to it, was required to be disclosed by law, was independently developed by Epiq without use or reference to any Client Data, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for public disclosure of such data.  Except to the extent caused by Epiq's gross negligence or willful misconduct, client agrees that Epiq shall not be liable for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any Client Data or other Client materials provided to Epiq in the performance of this Agreement.

## 5.  <u>Title to Property.</u>

5.1    Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications, applications, processes, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by the Client (collectively, the "<u>Property</u>").  Charges paid by Client



do not vest in Client any rights to the Property, it being expressly understood that the Property is made available to Client under this Agreement solely for Client's use during and in connection with each use of the Epiq equipment and services. Client agrees not to copy or permit others to copy any of the Property.

5.2    Client retains all property rights in and to all Client Data.


## 6.  **Disposition of Data.**

6.1    Client is responsible for the accuracy of the programs and Client Data it provides or gives access to Epiq and for the output resulting from such data. Client shall initiate and maintain backup files that would allow Client to regenerate or duplicate all programs and Client Data which Client provides or gives access to Epiq. Client agrees, represents and warrants to Epiq that, prior to delivery of any Client Data to Epiq, Client warrants that it has full authority to deliver the Client Data to Epiq. Client has obtained binding consents, permits, licenses and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to use all Client Data delivered to it in connection with its Services. Epiq shall not be liable for, and Client accepts full responsibility for, any liability or obligation with respect to Client Data prior to Epiq's receipt, including without limitation, any liability arising during the delivery of Client Data to Epiq.

6.2    Any Client Data, programs, storage media or other materials furnished by the Client to Epiq in connection with this Agreement (collectively, the "Client Materials") may be retained by Epiq until the services provided pursuant to this Agreement are paid for, or until this Agreement is terminated with the services provided herein having been paid for in full. Client shall remain liable for all out of pocket charges incurred by Epiq under this Agreement as a result of any Client Materials maintained by Epiq. Epiq shall dispose of Client Materials in the manner requested by Client (except to the extent disposal may be prohibited by law). Client agrees to pay Epiq for reasonable expenses incurred as a result of the disposition of the Client Materials. Epiq reserves the right to dispose of any Client Materials if this Agreement is terminated without Client's direction as to the return or disposal of Client Material or Client has not paid all charges due to Epiq for a period of at least ninety (90) days; provided, however, Epiq shall provide Client with thirty (30) days' prior written notice if its intent to dispose of such data and media.


## 7.  **Indemnification.**

The Client shall indemnify, defend and hold Epiq, its affiliates, parent, and each such entity's officers, members, directors, agents, representatives, managers, consultants and employees (each an "Indemnified Person") harmless from and against any and all losses, claims, damages, liabilities, costs (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting solely from Epiq's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person. Client and Epiq shall notify the other party in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which the Client is aware with respect to the services provided by Epiq under this



Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of the Client, and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.


## 8.  Representations / Warranties.

Epiq makes no representations or warranties, express or implied, including, without limitation, any implied or express warranty of merchantability, suitability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

## 9.  Confidential On-Line Workspace

Upon request of the Client, Epiq shall be authorized to: (a) establish a confidential on-line workspace with an outside vendor in connection with the provision of its services to the Client pursuant to this Agreement; and (b) with the consent of the Client and/or its designees, publish documents and other information to such confidential workspace. By publishing documents and other information to this confidential workspace in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

## 10.  General

10.1  No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

10.2  This Agreement may not be assigned by Client without the express written consent of Epiq, which consent shall not be unreasonably withheld. The services provided under this Agreement are for the sole benefit and use of Client, and shall not be made available to any other persons.

10.3  This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law. Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement or the alleged breach thereof shall be settled by mandatory, final and binding arbitration before the American Arbitration Association in New York, New York and such arbitration shall comply with and be governed by the rules of the American Arbitration Association, provided that each party may seek interim relief in court as it deems necessary to protect its confidential information and intellectual property rights. Any arbitration award rendered pursuant to this provision shall be enforceable worldwide.

10.4  The parties hereto agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

10.5  Client will use its best efforts to cooperate with Epiq at Client's facilities if any portion of the Services requires its physical presence thereon.

10.6  In no event shall Epiq's Services constitute or contain legal advice or opinion, and neither Epiq nor its personnel shall be deemed to practice law hereunder.



10.7 Except for Client's obligation to pay fees, expenses and charges hereunder when due, neither party shall be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such delay or failure arises by reason of any act of God, any governmental requirement, act of terrorism, riots, epidemics, flood, strike, lock-out, industrial or transportational disturbance, fire, lack of materials, war, event of force majeure, or other acts beyond the reasonable control of a performing party.

10.8 This Agreement may be executed in counterparts, each of which shall be deemed to an original, but all of which shall constitute one and the same agreement.

10.9 All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein. The parties are independent contractors and, except as expressly stated herein, neither party shall have any rights, power or authority to act or create an obligation on behalf of the other party.

10.10 Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by hand delivery, overnight or certified mail, postage prepaid, and addressed as follows:

> If to Epiq:
>
>> Epiq Bankruptcy Solutions, LLC
>> 757 Third Avenue, Third Floor
>> New York, New York 10017
>> Attn: Lorenzo Mendizabal
>
> If to Client:
>
>> National Envelope
>> 3211 Internet Blvd., Ste 200
>> Frisco, TX 75034
>> Attn: Brian Zollinger
>
> With a copy to:
>
>> John H. Knight, Esq.
>> Richards Layton & Finger, P.A.
>> One Rodney Square
>> 920 North King St.
>> Wilmington, Delaware 19801



10.11 Invoices sent to the Client should be delivered to the following address:

> National Envelope
> 3211 Internet Blvd., Ste 200
> Frisco, TX 75034
> Attn: Brian Zollinger

Email:          bzollinger@natenv.com

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ BANKRUPTCY SOLUTIONS, LLC**

Name:  Lorenzo Mendizabal
Title:    Managing Director

**NATIONAL ENVELOPE**

By: _____
Name: BRIAN  ZOLLINGER
Title: UP, General Counsel

6



# SERVICES

## PRE- AND POST-FILING PREPARATIONS

➢ Assist the Debtors with administrative tasks in the preparation of their bankruptcy, including, as needed, preparation of the creditor matrix, first day filings, Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"), including (as needed):

- Coordinate with the Client and its advisors regarding the data collection process, requirements, timelines and deliverables.
- Create and maintain databases for maintenance and formatting of necessary data.
- Coordinate collection of data from the Client and advisors.
- Provide data entry and quality assurance assistance as needed.

## CLAIMS MANAGEMENT

➢ Maintain copies of all proofs of claim and proofs of interest filed (in hard copy and electronic form).

➢ Provide a secure on-line tool through which creditors can file proofs of claim and related documentation, eliminating costly manual intake, processing and data entry of paper claims and ensuring maximum efficiency in the claim-filing process.

➢ Create and maintain electronic databases for creditor/party in interest information provided by the debtor (e.g., creditor matrix and Schedules of Statements of Assets and Liabilities) and creditors/parties in interest (e.g., proof of claim/interest).

➢ Process all proofs of claim/interest submitted.

➢ Provide access to the public for examination of copies of the proofs of claim or interest without charge during regular business hours.

➢ Maintain official claims registers, including, among other things, the following information for each proof of claim or proof of interest:

- Name and address of the claimant and any agent thereof, if the proof of claim or proof of interest was filed by an agent;
- Date received;
- Claim number assigned; and
- Asserted amount and classification of the claim.

➢ Create and maintain a website with general case information, key documents, claim search function, and mirror of ECF case docket.

➢ Transmit to the Clerk's office a copy of the claims registers on a monthly basis, unless requested by the Clerk's office on a more or less frequent basis or, in the alternative, make available the claims register on-line.



➤ Implement necessary security measures to ensure the completeness and integrity of the claims registers.

➤ Record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e).

➤ Maintain an up-to-date mailing list for all entities that have filed a proof of claim, proof of interest or notice of appearance, which list shall be available upon request of a party in interest or the Clerk's office.

## NOTICING

➤ Prepare and serve required notices in these Chapter 11 cases, including:

- Notice of the commencement of these Chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

- Notice of any auction sale hearing;

- Notice of the claims bar date;

- Notice of objection to claims;

- Notice of any hearings on a disclosure statement and confirmation of the plan of reorganization; and

- Other miscellaneous notices to any entities, as the debtor or the Court may deem necessary or appropriate for an orderly administration of these Chapter 11 cases.

➤ After service of a particular notice - whether by regular mail, overnight or hand delivery, email or facsimile service - file with the Clerk's office an affidavit of service that includes a copy of the notice involved, a list of persons to whom the notice was mailed and the date and manner of mailing.

➤ Update claim database to reflect undeliverable or changed addresses.

➤ Coordinate publication of certain notices in periodicals and other media.

➤ Distribute Claim Acknowledgement Cards to creditor having filed a proof of claim/interest.

## CRISIS AND COMMUNICATION MANAGEMENT

➤ Draft crisis and restructuring communications plan and provide strategy, guidance and plan implementation support.

- Media Strategy – Work with and advise the Company on a media strategy that supplements existing media processes and procedures.



- Customer, Vendor and other Constituent Outreach – Create outreach strategy and develop supporting documents. Keeping this group informed every step of the way through open and honest outreach will support loyalty, engender trust, and ensure that ongoing operations continue.

- Employee Communications – Construct and support the Company to strategize and draft employee communications. Leverage employee relationships by keeping employees in the loop which will help maintain productivity and engender trust. In other words, the more they know, the less they will assume.

- Document Development – The communications team, in collaboration with the Company and its legal, financial, and other advisors, will prepare all necessary documents such as letters, Q&A, talking points, etc. for use with media, employees, customers, vendors and other critical constituents. If the Company files for Chapter 11, the news release will also parallel the legal pleading and act as the central document from which all others will be developed. The communications team will draft each of the documents and circulate them through management and the legal team for review and comments.

- Dissemination of communication materials – The Company and/or the communications team will distribute communications documents/emails/etc. to all constituencies to ensure timely information flow to its employees, customers, vendors, and the like.

- Draft Ongoing Messages – The communications team will draft updated employee memos and follow-up letters to customers, vendors, etc., as the Company moves through the restructuring process. Keeping constituents informed is critical to ensure that business operations are productive during the restructuring.

## CALL CENTER

➢ Provide state-of-the-art Call Center facility and services, including (as needed):

- Create frequently asked questions, call scripts, escalation procedures and call log formats.
- Record automated messaging.
- Train Call Center staff.
- Maintain and transmit call log to Client and advisors.

## BALLOTING/TABULATION

➢ Provide balloting services in connection with the solicitation process for any chapter 11 plan for which a disclosure statement has been approved by the court, including (as needed):

- Consult company and its counsel regarding timing issues, voting and tabulation procedures, and documents needed for the vote.

- Review of voting-related sections of the voting procedures motion, disclosure statement and ballots for procedural and timing issues.

9



- Assist in obtaining information regarding members of voting classes, including lists of security holders, if appropriate (and, if needed, assist the company in requesting these listings).

- Coordinate distribution of solicitation documents.

- Respond to requests for documents from claimants and other parties in interest.

- Respond to telephone inquiries from voting parties regarding the disclosure statement and the voting procedures.

- Receive and examine all ballots and master ballots cast by voting parties. Date-stamp the originals of all such ballots and master ballots upon receipt.

- Tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a certification for filing with the court.

- Undertake such other duties as may be requested by the Client.

## VIRTUAL DATAROOM

Provide confidential on-line workspace to facilitate permission based and password protected simultaneous document sharing in connection with asset sale due diligence, contract and invoice review, or creation of contract repository, among other reasons.

## MISCELLANEOUS

➢ Provide such other claims processing, noticing and related administrative services as may be requested from time to time by the Debtors.

➢ Promptly comply with such further conditions and requirements as the Court may at any time prescribe.

➢ Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

➢ Provide temporary employees to the Clerk's Office to process claims, as necessary.



# PRICING SCHEDULE

**RETAINER - $15,000**

## CLAIM AND NOTICING RATES[1]

| Title | Rates |
|---|---|
| Clerical/Administrative Support | $35.00 – $50.00 |
| Case Manager | $60.00 – $95.00 |
| IT / Programming | $80.00 – $150.00 |
| Senior Case Manager | $100.00 – $140.00 |
| Consultant | $120.00 – $170.00 |
| Senior Consultant | $175.00 – $225.00 |
| Senior Managing Consultant | $230.00 – $270.00 |
| Communication Counselor | $250.00 – $295.00 |

## NOTICING SERVICES[2]

| | |
|---|---|
| Printing | $0.10 per image (volume discounts apply) |
| Personalization / Labels | $0.05 each |
| Postage / Overnight Delivery | At cost |
| E-Mail Noticing | $50 per 1,000 |
| Fax Noticing | $0.10 per page |
| Claim Acknowledgement Card | $0.10 per card |
| Publication Noticing | Quoted at time of request |
| Processing Undeliverable Mail | $0.25 per piece |
| CD-Rom | $5.00 per CD plus single setup charge of $750 |

---

[1] Epiq does not charge a premium/overtime charge for any of the professional services it performs. Outside vendors utilized by Epiq may include a premium / overtime charge for work performed on a weekend, holiday or after standard business hours.

[2] Noticing via overnight delivery after traditional overnight drop-off times (e.g., 9:00 p.m. in NYC) may result in additional print charges.



## SOLICITATION, BALLOTING AND TABULATION SERVICES

| Title | Rates |
|---|---|
| Executive Vice President | $325.00 |

*Standard hourly rates and noticing fees apply for work done by all other associates.*

## DATA MANAGEMENT SERVICES

| | |
|---|---|
| Database Maintenance | $0.10 per record/month |
| Data Import / Transfer | No per creditor charge |
| Electronic Imaging[3] | $0.12 per image |
| Weblink Hosting Fee | **WAIVED** |
| Manual Claim Input | No per creditor charge |
| CD- ROM (Mass Document Storage) | Quoted at time of request |
| Document Storage   (paper) | $2.00 per box |
| (electronic) | No per creditor/image charge |

## ON-LINE CLAIM FILING SERVICES

| | |
|---|---|
| On-Line Claim Filing | $600 per 100 claims filed |

## CALL CENTER SERVICES

| | |
|---|---|
| Standard Call Center Setup | $1,250 |
| | **WAIVED** |
| Call Center Operator | $75 per hour |
| Voice Recorded Message | $0.34 per minute |
| | **WAIVED FIRST 3 MONTHS** |
| Support/Maintenance | $100.00 per month |
| | **WAIVED** |

---

[3] An additional $0.10 is charged per image for optical character recognition imaging.

12



## VIRTUAL DATA ROOM

Confidential Document Management:

Base Fee*                                         WAIVED
0 - 10,000 pages                                  $0.50 per page

First DVD (per room)                              $350
Additional DVDs                                   $150

Term for each room is 6 months


\* Base Fee includes room set up, project management, reporting, document locking and protection features, 24/7 support and client personalization.


## DISBURSEMENT SERVICES

Check and/or Form 1099                            Quoted at time of request

Record to Transfer Agent                          Quoted at time of request

**EXHIBIT C**

Proposed Retention Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------- x

In re:                                                      :      Chapter 11
                                                            :
NE OPCO, INC., et al.,                                      :      Case No. 13-_____ (_____)
                                                            :
                          Debtors.[1]                       :      Joint Administration Pending

----------------------------------------------------------- x

## ORDER AUTHORIZING RETENTION AND APPOINTMENT OF EPIQ SYSTEMS AS CLAIMS AND NOTICING AGENT PURSUANT TO 28 U.S.C. § 156(c), 11 U.S.C. § 105(a) AND DEL. BANKR. L.R. 2002-1(f)

Upon the application (the "**Section 156(c) Application**")[2] of the Debtors for an

order authorizing the retention and appointment of Epiq Systems ("**Epiq**") as claims and noticing

agent, under Judicial Code Section 156(c), Section 105(a) of the Bankruptcy Code, and Local

Rule 2002-1(f) to, among other things, (i) distribute required notices to parties-in-interest, (ii)

receive, maintain, docket and otherwise administer the proofs of claim filed in the Chapter 11

Cases, and (iii) provide such other administrative services, as required by the Debtors, that would

fall within the purview of services to be provided by the Clerk's Office; and upon the Epiq

Declaration submitted in support of the Section 156(c) Application; and the Debtors having

estimated that there are in excess of 11,000 creditors in the Chapter 11 Cases, many of which are

expected to file proofs of claim, and it appearing that the receiving, docketing and maintaining of

proofs of claim would be unduly time consuming and burdensome for the Clerk; and the Court

being authorized under 28 U.S.C. §156(c) to utilize, at the Debtors' expense, outside agents and

facilities to provide notices to parties in Title 11 cases and to receive, docket, maintain,

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are NE Opco, Inc. (9830) and NEV Credit Holdings, Inc. (9596). The above-captioned Debtors' mailing address is c/o NE Opco, Inc., 3211 Internet Boulevard, Suite 200, Frisco, Texas 75034.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Section 156(c) Application.

photocopy and transmit proofs of claim; and the Court being satisfied that Epiq has the capability and experience to provide such services and that Epiq does not hold an interest adverse to the Debtors or the estates respecting the matters upon which it is to be engaged; and good and sufficient notice of the Section 156(c) Application having been given; and no other or further notice being required; and it appearing that the employment of Epiq is in the best interests of the Debtors, the estates and creditors; and sufficient cause appearing therefor; it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Section 156(c) Application is approved to the extent set forth in this Retention Order.

2.      The Debtors are authorized to retain Epiq effective as of the Petition Date under the terms of the Epiq Agreement, and Epiq is authorized and directed to perform noticing services and to receive, maintain, record and otherwise administer the proofs of claim filed in the Chapter 11 Cases, and all related tasks, all as described in the Section 156(c) Application as the Epiq Services.

3.      Epiq shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in the Chapter 11 Cases and is authorized and directed to maintain official claims registers for each of the Debtors and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

4.      Epiq is authorized and directed to obtain a post office box or address for the receipt of proofs of claim.

5.      Epiq is authorized to take such other action to comply with all duties set forth in the Section 156(c) Application.

6.     The Debtors are authorized to compensate Epiq in accordance with the terms of the Epiq Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Epiq and the rates charged for each, and to reimburse Epiq for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Epiq to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

7.     Epiq shall be precluded, in the absence of an order of this Court, from suspending or terminating its services under the Epiq Agreement.

8.     Epiq shall maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and shall serve monthly invoices on the Debtors, the Office of the United States Trustee, counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors and any party-in-interest who specifically requests service of the monthly invoices.

9.     The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Epiq Agreement or monthly invoices, and that the parties may seek resolution of the matter from the Court if resolution is not achieved.

10.     Pursuant to Section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Epiq under this Retention Order shall be an administrative expense of the Debtors' estates.

11.     The application of Epiq's retainer to all prepetition invoices is approved. Epiq may hold its retainer under the Epiq Agreement during the Chapter 11 Cases as security for the payment of fees and expenses incurred in performing the Epiq Services, with any remaining

amount to be held as security for the payment of approved fees and expenses incurred in performing other authorized services under the Epiq Agreement.

12.     The Debtors shall indemnify Epiq under the terms of the Epiq Agreement and this Retention Order.

13.     Epiq shall not be entitled to indemnification, contribution or reimbursement pursuant to the Epiq Agreement for services other than the services provided under the Epiq Agreement, unless such services and the indemnification, contribution or reimbursement therefor are approved by the Court.

14.     Notwithstanding anything to the contrary in this Order or the Epiq Agreement, the Debtors shall have no obligation to indemnify Epiq, or provide contribution or reimbursement to Epiq, for any claim or expense that is either: (a) judicially determined (the determination having become final) to have arisen from Epiq's gross negligence, willful misconduct, or fraud; (b) for a contractual dispute in which the Debtors allege the breach of Epiq's contractual obligations if the Court determines that indemnification, contribution or reimbursement would not be permissible pursuant to In re United Artists Theatre Co., et al., 315 F.3d 217 (3d Cir. 2003), or (c) settled prior to a judicial determination under (a) or (b), but determined by the Court, after notice and a hearing, to be a claim or expense for which Epiq should not receive indemnity, contribution or reimbursement under the terms of the Epiq Agreement as modified by this Retention Order.

15.     If, before the earlier of (a) the entry of an order confirming a Chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal), or (b) the entry of an order closing the Chapter 11 Cases, Epiq believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution

and/or reimbursement obligations under the Epiq Agreement (as modified by this Retention Order), including without limitation the advancement of defense costs, Epiq must file an application therefore in the Court, and the Debtors may not pay any such amounts to Epiq before the entry of an order by the Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Epiq for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Epiq. All parties-in-interest shall retain the right to object to any demand by Epiq for indemnification, contribution or reimbursement.

16.    In the event Epiq is unable to provide the services set out in this Retention Order, Epiq will immediately notify the Clerk and Debtors' attorney and cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and Debtors' attorneys.

17.    The Debtors will submit a separate retention application for Epiq pursuant to Sections 327 and 328 of the Bankruptcy Code for services that Epiq intends to perform outside the ambit of those services described in the Section 156(c) Application, and nothing in this Retention Order shall operate to limit the approval of such retention application under Sections 327 and 328 of the Bankruptcy Code.

18.    The Debtors and Epiq are authorized to take all actions necessary to effectuate the relief granted pursuant to this Retention Order in accordance with the Section 156(c) Application.

19.     Notwithstanding any term in the Epiq Agreement to the contrary, the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Retention Order.

20.     Notwithstanding any term in the Epiq Agreement to the contrary, Epiq shall not cease providing claims processing services during the Chapter 11 Cases for any reason, including nonpayment, without an order of the Court.

21.     In the event of any inconsistency between the Epiq Agreement, the Section 156(c) Application and this Retention Order, this Retention Order shall govern.

Dated:          _____, 2013
                Wilmington, Delaware


                            _____
                            UNITED STATES BANKRUPTCY JUDGE