IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
In re:                                              :    Chapter 11
                                                    :
NE OPCO, INC., et al.,                              :    Case No. 13-_____ (____)
                                                    :
            Debtors.¹                               :    Joint Administration Pending
------------------------------------------------------------ x

## MOTION OF DEBTORS FOR ORDER UNDER 11 U.S.C. §§ 105(A), 363, 1107(A) AND 1108 AND FED R. BANKR. P. 6003 AUTHORIZING HONORING OF PREPETITION OBLIGATIONS UNDER, AND CONTINUATION OF, CERTAIN <u>CUSTOMER PROGRAMS</u>

The debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") hereby move (the "**Motion**") for entry of an order, pursuant to Sections 105(a), 363, 1107(a) and 1108 of Title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), authorizing, but not directing, the Debtors to honor prepetition obligations under, and the continuation of, certain of their customer practices and programs, as more particularly described below. In further support of the Motion, the Debtors respectfully represent:

### JURISDICTION

1.       This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are Sections 105(a), 363, 1107(a) and 1108 of the Bankruptcy Code. Such relief is warranted under Bankruptcy Rule 6003.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are NE Opco, Inc. (9830) and NEV Credit Holdings, Inc. (9596). The above-captioned Debtors' mailing address is c/o NE Opco, Inc., 3211 Internet Boulevard, Suite 200, Frisco, Texas 75034.

RLF1 8603292v.3

## BACKGROUND

2. On the date hereof (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing cases for relief under Chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the *Declaration of James Pinto in Support of Chapter 11 Petitions and First Day Motions*, filed with the Court concurrently herewith and fully incorporated herein (the "**Pinto Declaration**").

3. The Debtors continue to manage and operate their business as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been requested in the Chapter 11 Cases, and no committees have yet been appointed.

## RELIEF REQUESTED

4. By this Motion, the Debtors seek entry of an order authorizing, but not directing, them (a) to honor their prepetition obligations arising under ordinary course customer practices and programs offered to their customers (collectively, the "**Customer Programs**" and obligations arising thereunder, collectively, the "**Customer Obligations**") and (b) to otherwise continue, and honor their postpetition obligations under, the Customer Programs in the ordinary course of business during the pendency of these cases.

## BASIS FOR RELIEF

5. Prior to the Petition Date, and in the ordinary course of business, the Debtors offered and engaged in certain programs and practices to develop and sustain a positive reputation and relationship with their customers. Specifically, the Debtors implemented rebate programs for certain of their customers designed to ensure customer satisfaction, drive sales,

meet competitive pressures, develop and sustain customer relationships and loyalty, and generate goodwill for the Debtors and their products.

A. **The Rebate Program**

6. In the ordinary course of conducting their business, the Debtors historically have provided certain customers with rebates (the "**Rebate Program**"). This program is similar to those offered by the Debtors' industry competitors.

7. Under the Rebate Program, the Debtors provide certain customers with cash rebates which the Debtors pay at periodic intervals, as determined by a customer's particular sales contract or other arrangement with the Debtors. In some instances the rebate operates in a manner similar to a volume discount in that once a customer reaches a pre-established purchase threshold, the customer is eligible to receive a percentage of its aggregate purchase total as a cash refund. In other instances, the Debtors offer customers an agreed percentage rebate that is applied to all of the customer's invoices, irrespective of sales volume.

8. The Debtors accrue the rebates on an ongoing basis and, depending upon the terms of the agreement with the customer, pay rebates on a monthly, quarterly, annual and/or bi-annual basis. As of the Petition Date, the Debtors estimate that approximately $1,600,000 of cash rebates under the Rebate Program has accrued and remains outstanding. The Debtors further estimate that in aggregate $4,770,000 will accrue and be paid under the Rebate Program in 2013.

B. **Impact on Debtors' Estates of Not Continuing Customer Programs**

9. The success and ultimate viability of the Debtors' business is dependent upon the Debtors' continuing relationships with their customers. The Debtors believe that, in order to maintain such relationships and to ensure customer loyalty, the Debtors must satisfy their Customer Obligations. In the Debtors' industry, the failure to honor the Customer

3

Obligations arising from the Rebate Program is likely to have a material adverse impact on the Debtors' ability to attract new customers and maintain existing ones.

10. Moreover, the Debtors believe that if the Court does not authorize them to continue the Customer Programs during the pendency of these Chapter 11 Cases, their valuable business relationships with their customers will be severely jeopardized. Even a short delay by the Debtors in continuing their payments under the Rebate Program could cause serious and irreparable harm to the value of the Debtors' estates.

11. The Debtors submit that the total amount that they will pay in rebates to customers if the Court grants the requested relief is minimal compared with the losses that the Debtors could suffer if the patronage of their customers erodes at the outset of these cases.

12. In sum, maintenance of the Customer Programs is essential to the continued vitality of the Debtors' business and, ultimately, to their prospects for success in their Chapter 11 Cases. The Debtors thus submit that permitting them to continue to honor the Customer Obligations and the Customer Programs is in the best interests of their estates, their creditors, and all other parties in interest.

## APPLICABLE AUTHORITY

**A.   Honoring Customer Programs is Appropriate Under Section 363 of the Bankruptcy Code**

13. To the extent that honoring of the Customer Obligations would be deemed to constitute a use of property outside the ordinary course of business, one basis for granting the requested relief is found under Section 363(b)(1) of the Bankruptcy Code. Section 363(b)(1) permits a debtor in possession to use property of the estate "other than in the ordinary course of business" after notice and a hearing. 11 U.S.C. § 363(b)(1). Under this section, a court may authorize a debtor to pay certain prepetition claims. See, e.g., In re MPC Computers,

LLC, Case No. 08-12667 (PJW) (Bankr. D. Del. Nov. 10, 2008) (authorizing, pursuant to Section 363, the payment of prepetition claims of some suppliers); In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authorizing payment of prepetition claims where the debtors articulate "some business justification, other than mere appeasement of major creditors"). Courts have indicated that the use of property of the estate outside of the ordinary course of business is proper where the debtor in possession has articulated a good business reason for such use. See Institutional Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.), 780 F.2d 1223, 1226 (5th Cir. 1986) (holding that Section 363(b) requires that "there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business"); Dai-Ichi Kangyo Bank, Ltd.v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under [Section 363], courts require the debtor to show that a sound business purpose justifies such actions"); United States Trustee v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp., No. 02 Civ. 2854 (MBM), 2003 WL 21738964, at *12 (S.D.N.Y. July 28, 2003) ("To approve a transaction under § 363(b), the bankruptcy court must find that there is a good business reason to allow the transaction"); In re Global Crossing Ltd., 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003) ("[A] § 363 application requires a showing that there is a 'good business reason to grant such an application.'") (quoting Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983)).

14. Where a debtor has articulated a valid business justification for a proposed transaction, courts generally apply the business judgment rule in evaluating such transaction. Lange v. Schropp (In re Brook Valley VII, Joint Venture), 496 F.3d 892, 900 (8th Cir. 2007)

("In general, courts do not second-guess business decisions made in good faith."); Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) ("The business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was taken in the best interests of the company.'") (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985))

15. The business judgment rule has vitality in Chapter 11 cases. See Lange, 496 F.3d at 900; Integrated Res., 147 B.R. at 656; see also Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a Debtor's management decisions.").

16. The Debtors submit that honoring of the Customer Obligations is essential to the business purpose of maintaining customer relationships and preserving the going concern value of their business and, thus, their estates. As such, the Court should grant the requested relief as a valid exercise of the Debtors' business judgment.

**B.  Maintaining the Customer Programs is Appropriate Under Sections 1107(A) and 1108 of the Bankruptcy Code**

17. The Debtors, operating their business as debtors in possession under Sections 1107(a) and 1108 of the Bankruptcy Code, are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a Chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." Id.

18. The CoServ court has noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." Id. That court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." Id. at 497. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

Id. at 498.

19. Honoring the Customer Obligations meets each element of the CoServ court's standard. First, as described above, the success and ultimate viability of the Debtors' business is dependent upon customer loyalty. In the Debtors' business judgment, the uninterrupted maintenance of their Customer Programs is essential to maintaining such loyalty.

20. Second, the disruption and adverse publicity that would necessarily result from failing to honor the Customer Obligations or discontinuing the Customer Programs would threaten the Debtors' customer base and ultimately, the success of their Chapter 11 Cases, thereby causing harm to the Debtors that is grossly disproportionate to the cost of the Customer Obligations and Customer Programs.

21. Third, the Debtors have examined other options short of continuation of the Customer Programs and have determined that to avoid significant disruption of the Debtors' business operations there exists no practical or legal alternative to honoring of such obligations.

22.  Therefore, the Debtors can meet their fiduciary duties as debtors in possession under Sections 1107(a) and 1108 of the Bankruptcy Code only by maintaining the Customer Programs and by honoring the Customer Obligations.

C.  **Section 105 of the Bankruptcy Code and the Doctrine of Necessity Support Honoring of Customer Obligations**

23.  Additionally, the Debtors' proposed honoring of the Customer Obligations should be authorized under Section 105(a) of the Bankruptcy Code, which permits this Court to "issue any order . . . that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code.  11 U.S.C. § 105(a).  The purpose of Section 105(a) is "to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction."  Collier on Bankruptcy § 105.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

24.  The relief sought is further supported by the doctrine of necessity.  The doctrine of necessity is a well-settled doctrine that permits a bankruptcy court to authorize honoring of certain prepetition claims prior to the completion of the reorganization process where the honoring of such claims is necessary to the continued operation of the business.  See In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) (payment of creditors' claims authorized under "necessity of payment" doctrine); In re Penn Central Transp. Co., 467 F.2d 100, 102 n.1 (3d Cir. 1972) (the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid"); In re Just for Feet, Inc., 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment);  In re Columbia Gas Sys., Inc., 136 B.R. 930, 939 (Bankr. D.

Del. 1992) (noting that Court may authorize payment of prepetition claims essential to continued operation of debtor); see also In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("[T]he court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor.").

25. The doctrine of necessity functions in a Chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow honoring of critical prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein. See In re Lehigh, 657 F.2d at 581 (holding that a court may authorize payment of prepetition claims if such payment is essential to continued operation of the debtor); see also Just for Feet, 242 B.R. at 824-25 (holding that "[s]ection 105(a) of the [Bankruptcy] Code provides a statutory basis for the payment of pre-petition claims" under the doctrine of necessity and noting that the Supreme Court, the United States Circuit Court of Appeals for the Third Circuit, and the District Court of Delaware all accept the authority of the bankruptcy court "to authorize the payment of pre-petition claims when such payment is deemed necessary to the survival of a debtor in a Chapter 11 reorganization.").

26. The doctrine of necessity is a widely accepted component of modern bankruptcy jurisprudence. See id., 242 B.R. at 826 (approving payment of key inventory suppliers' prepetition claims when such suppliers could destroy debtor's business by refusing to deliver new inventory on eve of debtor's key sales season); In re Payless Cashways, Inc., 268 B.R. 543, 546-47 (Bankr. W. D. Mo. 2001) (authorizing payment of critical prepetition suppliers' claims when such suppliers agree to provide postpetition trade credit). See also In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994); Ionosphere Clubs, 98 B.R. at 175-76. Customer obligations, such as refund claims and honoring of deposits, were

9

RLF1 8603292v.3

specifically held to be justified examples under the necessity of payment doctrine. See In re CoServ, L.L.C., 273 B.R. 487 (Bankr. N.D. Tex. 2002).

27. For the reasons discussed herein, it is evident that honoring of the Customer Obligations is necessary to preserve the value of the Debtors' business. In particular, absent honoring of such obligations, the Debtors' business and operations will be detrimentally impacted due to the resulting injury to the Debtors' reputation and loss of customer loyalty during a critical time for the Debtors' business. Hence, this Court should exercise its equitable powers to grant the relief requested in this Motion.

**D.    Precedent Cases Support the Requested Relief**

28. Where retaining the loyalty of customers is critical to the success of a Chapter 11 case, courts in this District and elsewhere have authorized debtors to honor certain prepetition obligations to customers and to continue customer programs. See, e.g., In re Ritz Camera & Image, L.L.C., Case No. 11868 (KG) (Bankr. D. Del. June 25, 2012); In re Blitz U.S.A., Inc., Case No. 11-13603 (PJW) (Bankr. D. Del. Dec. 5, 2011); In re Graceway Pharmaceuticals, LLC, Case No. 11-13036 (PJW) (Bankr. D. Del. Oct. 17, 2011); In re Local Insight Media Holdings, Inc., Case No. 10-13677 (KG) (Bankr. D. Del. Nov. 19, 2010); In re Sun-Times Media Group, Inc., Case No. 09-11092 (CSS) (Bankr. D. Del. Apr. 1, 2009); In re Sportsmans' Warehouse, Inc., Case No. 09-10990 (CSS) (Bankr. D. Del. March 23, 2009); In re Journal Register Company, Case No. 09-10769 (ALG) (Bankr. S.D.N.Y. Feb. 24, 2009); In re Star Tribune Holdings Corp., Case No. 09-10244 (RDD) (Bankr. S.D.N.Y. Jan. 16, 2009); In re Tribune Company, Case No. 08-13141 (KJC) (Bankr. D. Del. Dec. 10, 2008); In re Circuit City Stores, Inc., Case No. 08-35653 (KRH) (Bankr. E.D. Va. Nov. 10, 2008).

RLF1 8603292v.3

## SATISFACTION AND
## WAIVER OF BANKRUPTCY RULES

29. The request for authorization to honor the Customer Obligations is subject to Bankruptcy Rule 6003, which provides for authorization to be obtained within twenty-one (21) days after the Petition Date only if necessary to avoid immediate and irreparable harm. The Debtors submit that standard is satisfied here for all the reasons described above. Accordingly, the relief requested herein is appropriate under the circumstances and under Bankruptcy Rule 6003.

30. In addition, the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h). As described above, the relief that the Debtors seek in this Motion is immediately necessary in order for the Debtors to be able to preserve the value of their estates. The Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## NOTICE OF MOTION

31. Notice of this Motion will be given to: (a) the Office of the United States Trustee for the District of Delaware, (b) counsel to the agent for the Debtors' postpetition DIP lenders, (c) counsel to Wells Fargo Capital Finance, LLC, as agent under the First Lien Credit Agreement, (d) counsel to Galactic Holdings, LLC, as agent under the Second Lien Credit Agreement, (e) counsel to International Paper Company, (f) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors and (g) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002. The Debtors will serve copies of the Motion and any order entered in respect of the Motion as required by Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States

RLF1 8603292v.3

Bankruptcy Court for the District of Delaware (the "**Local Rules**").  The Debtors submit that, under the circumstances, no other or further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit A, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: June 9, 2013
       Wilmington, Delaware

RICHARDS, LAYTON & FINGER, P.A.

/s/ Paul N. Heath

Mark D. Collins (No. 2981)
John H. Knight (No. 3848)
Paul N. Heath (No. 3704)
Michael J. Merchant (No. 3854)
920 N. King Street
Wilmington, Delaware 19801
Telephone: 302-651-7700
Facsimile: 302-651-7701
Email: collins@rlf.com
       knight@rlf.com
       heath@rlf.com
       merchant@rlf.com

Proposed Counsel for Debtors and Debtors in Possession

# EXHIBIT A

**Proposed Order**

RLF1 8603292v.3

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x
In re:                                                     :    Chapter 11
                                                           :
NE OPCO, INC., et al.,                                     :    Case No. 13-_____ (____)
                                                           :
        Debtors.[1]                                          :    Joint Administration Pending
                                                           :
                                                           :
---------------------------------------------------------- x

## ORDER PURSUANT TO 11 U.S.C. §§ 105(A), 363, 1107(A) AND 1108 AND FED R. BANKR. P. 6003 AUTHORIZING HONORING OF PREPETITION OBLIGATIONS UNDER, AND CONTINUATION OF, CUSTOMER PROGRAMS

Upon the motion (the "**Motion**") of the Debtors for an order, pursuant to Bankruptcy Code Sections 105(a), 363, 1107(a) and 1108 and Bankruptcy Rule 6003, authorizing, but not directing, them (i) to pay and otherwise honor their Customer Obligations and (ii) to continue, and honor their postpetition obligations under, the Customer Programs in the ordinary course of business during the pendency of these cases; and the Court having reviewed the Motion and the Pinto Declaration; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED AND DECREED THAT:

1.      The Motion is GRANTED as set forth herein.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are NE Opco, Inc. (9830) and NEV Credit Holdings, Inc. (9596). The above-captioned Debtors' mailing address is c/o NE Opco, Inc., 3211 Internet Boulevard, Suite 200, Frisco, Texas 75034.

RLF1 8603292v.3

2. The Debtors are authorized, but not directed, to honor their Customer Obligations, provided that the total cost to the Debtors in honoring those Customer Obligations shall not exceed $1,600,000 without further order of the Court.

3. The Debtors are authorized, but not directed, to continue, renew, replace, modify, and/or terminate such of their Customer Programs as they deem appropriate, in their discretion, and in the ordinary course of business, without further order of the Court.

4. Notwithstanding the relief granted herein or any actions take hereunder, nothing contained in this Order shall create any rights in favor of, or enhance the status of any claim held by, any person to whom any of the Customer Obligations may be owed.

5. Neither the provisions contained herein, nor any actions made by the Debtors pursuant to this Order, shall be deemed an assumption of any executory contract arising out of an existing agreement or contract, or otherwise shall constitute a waiver of the Debtors' rights under Section 365 of the Bankruptcy Code or an admission by the Debtors that any such financing program, agreement or contract constitutes an executory contract within the meaning of Section 365 of the Bankruptcy Code.

6. Neither the provisions contained herein, nor any actions taken by the Debtors pursuant to this Order, shall be deemed an admission as to the validity of the underlying obligation or a waiver of any rights the Debtors may have to dispute such obligation on any ground that applicable law permits.

7. Notwithstanding the relief granted herein, no action by any Debtor is permitted to the extent that it would be inconsistent with any cash collateral or postpetition financing document or order entered by this Court.

RLF1 8603292v.3

8. The Debtors are hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Order.

9. Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

10. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: _____, 2013
      Wilmington, Delaware

                                              UNITED STATES BANKRUPTCY JUDGE