## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------- x
In re:                                                  :    Chapter 11
                                                        :
NE OPCO, INC., et al.,                                  :    Case No. 13-_____ (_____)
                                                        :
                    Debtors.¹                           :    Joint Administration Pending
------------------------------------------------------- x
```

## MOTION OF DEBTORS FOR AN ORDER AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS (A) TO CONTINUE PREPETITION INSURANCE COVERAGE AND (B) TO MAINTAIN THE PREPETITION FINANCING AGREEMENT

The debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") hereby move (the "**Motion**") for entry of an order, under Sections 105(a), 363 and 364 of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 4001 and 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 4001-2 and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), substantially in the form attached hereto as **Exhibit A**, authorizing, but not directing, the Debtors to continue to maintain and administer their prepetition insurance policies, to revise, renew, supplement or replace such policies, as needed, to pay or honor prepetition obligations outstanding on account of the Debtors' Insurance Obligations (as defined below) and to maintain the prepetition financing agreement. In support of the Motion, the Debtors rely upon and incorporate by reference the Declaration of James Pinto in Support of Chapter 11 Petitions and First Day Motions, filed with

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are NE Opco, Inc. (9830) and NEV Credit Holdings, Inc. (9596). The above-captioned Debtors' mailing address is c/o NE Opco, Inc., 3211 Internet Boulevard, Suite 200, Frisco, Texas 75034.

the Court concurrently herewith (the "**Pinto Declaration**").[2]  In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are Sections 105(a), 363, and 364 of the Bankruptcy Code, Bankruptcy Rules 4001 and 6003, and Local Rules 4001-2 and 9013-1(m).

## BACKGROUND

2.      On the date hereof (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing cases (the "**Chapter 11 Cases**") for relief under Chapter 11 of the Bankruptcy Code.  The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the Pinto Declaration and fully incorporated herein by reference.

3.      The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been requested in the Chapter 11 Cases, and no committees have yet been appointed.

A.      **The Debtors' Insurance Policies**

---

[2]      Capitalized terms not otherwise defined herein have the meanings given to them in the Pinto Declaration.

4.      In the ordinary course of the Debtors' business, the Debtors maintain a number of insurance policies that provide coverage for, among other things, cargo, property, general liability, business automotive, workers' compensation, printer's errors and omissions, pollution legal liability, and directors & officers liability (collectively, the "**Policies**"). A description of the current Policies, terms and annual insurance premiums is set forth below.[3] For 2012-2013 year, the Debtors' annual insurance premiums for the Policies (collectively the "**Premiums**") total approximately $1,670,529.  As of the Petition Date, the Debtors are past due on certain Premium payments and estimate that such past due amount is approximately $145,463 in Premium payments, brokerage payments, and financing payments.

5.      Additionally, certain of the Policies may be due for renewal in the coming months.  Although the Debtors are not obligated to renew such Policies, the Policies nevertheless are essential to the preservation of the value of the Debtors' businesses, property and assets.  In many cases, the coverage provided under the Policies is required by various laws and contracts that govern the Debtors' commercial activities and as such are necessary to continue the Debtors' business operations.  A description of the Policies is set forth below:

*(1) Cargo Insurance*

In the ordinary course of the Debtors' business, the Debtors maintain insurance for cargo cover.  The cargo insurance is provided by Beazley Insurance Company (Falvey), and carries a premium of $20,000 payable in quarterly installments.  As of the Petition Date, the

---

[3]      In addition to the Policies discussed in this motion, the Debtors maintain numerous insurance programs with respect to employee health, medical and life insurance benefits which are addressed in the *Motion of Debtors for Order Under 11 U.S.C. §§ 105(a), 363(b), 363(c), 507(a), 541, 1107(a) and 1108 and Fed. R. Bankr. P. 6003 (I) Authorizing Payment of Certain Prepetition Workforce Obligations, Including Compensation, Benefits, Expense Reimbursements and Related Obligations, (II) Confirming Right to Continue Workforce Programs On Postpetition Basis, (III) Authorizing Payment of Withholding and Payroll-Related Taxes, (IV) Authorizing Payment of Prepetition Claims Owing to Administrators of, or Third Party Providers Under, Workforce Programs and (V) Directing Banks to Honor Prepetition Checks and Fund Transfers for Authorized Payments.*

RLF1 8597286v.6

Debtors are past due on the final $5,000 premium payment owed under the cargo insurance policy. The cargo insurance policy expires on September 6, 2013.

*(2) Workers' Compensation Insurance*

Under the laws of the various states in which they operate, the Debtors are required to maintain workers' compensation policies and programs, or participate in workers' compensation programs administered by state governments, to provide their employees with workers' compensation coverage for claims arising from or related to their employment with the Debtors.

Employees are covered under workers' compensation policies issued by QBE for the current policy term (September 6, 2012 to September 6, 2013) and the previous policy term (September 6, 2011 to September 6, 2012). From September 2010 to September 2011, Employees are covered under a workers' compensation policy issued by AIG (f/k/a Chartis). Depending on the date of the occurrence, an Employee's workers' compensation claim may be paid by either QBE or AIG. There is a $350,000 each accident deductible in connection with the QBE and AIG policies, which the Debtors are responsible for paying. QBE and AIG are responsible for claim amounts above the applicable deductible, and the Debtors are not responsible for reimbursing QBE or AIG for amounts above the deductible.

Under the AIG and QBE policies, the Debtors funded to the insurers a depleting cash fund (the "**Depleting Cash Fund**"), as required for each of the policy terms, for the payment of the Debtors' obligations for claims within the deductible under the policies. The Debtors have continued to make periodic payments to the insurers for the purpose of funding the Depleting Cash Funds, but as of the Petition Date, the balance for at least one such fund is negative. By the insurance motion, the Debtors request authority to continue to fund the

4

Depleting Cash Funds as necessary for purposes of paying claims within the deductibles under the workers' compensation policies.

As of the May 31, 2013, there were 77 open workers' compensation claims under the QBE policies and 14 open workers' compensation claims under the AIG policy. The aggregate amount of outstanding reserves within the deductible is approximately $1,129,532.38 under the QBE policies and approximately $638,742.50 under the AIG policy. The Debtors' current annual insurance premiums in connection with their workers' compensation policies are approximately $364,199 in premiums and approximately $57,774 in surcharges, for a total of approximately $421,973. As of the Petition Date, the Debtors are past due on the remaining $32,373.44 Premium owed for the workers' compensation policy.

*(3) Pollution Legal Liability Insurance*

In connection with the Debtors' operations, the Debtors' maintain insurance coverage for pollution legal liability. In connection with the pollution legal liability insurance, provided by Chartis Specialty Insurance Company ("**Chartis**"), the Debtors' pay a premium of approximately $256,053 with the policy expiring on September 6, 2020. The pollution legal liability insurance policy premium is paid in full.

*(4) Directors and Officers and Employment Practices Liability Insurance*

Chartis also provides the Debtors with directors' and officers' and employment practices liability insurance (the "**Directors' and Officers' Policy**"). The Directors' and Officers' Policy runs until September 1, 2013, and the premium of approximately $67,234 is paid in full.

*(5) Business Automotive, General Liability, Umbrella and Excess Liability Insurance*

Further, the Debtors' carry a business automotive insurance policy. The business automotive insurance policy is provided by the Federal Insurance Company (Chubb Group of

Insurance Companies) ("**Chubb**"), and carries a premium of $24,510 payable in monthly installments. The policy expires on September 6, 2013.

To supplement the insurance maintained by the Debtors, described above, the Debtors' also maintain certain other insurance policies each provided by Chubb (together, along with the business automotive policy, the "**Chubb Policies**"). The Chubb Policies expire on September 6, 2013. The Chubb Policies include a general liability policy, with a premium of $68,608 payable in monthly installments; an umbrella policy, with $25M in limits, and a premium of $53,759 payable in monthly installments; and a second excess liability insurance policy, with limits of $25M in excess of $50M, and premiums of approximately $20,874 payable in monthly installments. As of the Petition Date, the Debtors are past due on the remaining $13,919 premium payment under the Chubb Policies.

*(6) The Financed Policies*

Certain of the Debtors' Policies (the "**Financed Policies**") are financed by AFCO Credit Corporation ("**AFCO**" or the "**Finance Company**", as applicable) pursuant to a financing agreement (the "**Financing Agreement**"). The Debtors pay approximately $5,224 in interest on the Financed Polices. The Financed Policies are the property insurance policy (the "**Property Insurance**"), printer's errors and omissions policy (the "**P&E Policy**"), and the first excess liability policy (the "**First Excess Policy**"). The Debtors' Property Insurance is provided by FM Global and carries a premium of $386,330. The Property Insurance expires on September 6, 2013. The Debtors also carry the P&E Policy, as insurance for certain errors and/or omissions that could occur in their printing operations. The P&E Policy is provided by Axis Insurance Company and carries a premium of $25,042. It expires on September 6, 2013. The remaining Financed Policy that the Debtors' carry is the First Excess Policy with limits of $25M in excess of umbrella policy limits, which is provided by The Travelers Companies. The policy carries a

6

premium of $21,250 and also expires on September 6, 2013. AFCO has paid each insurer in connection with the Financed Policies in full on behalf of the Debtors. As of the Petition Date, the Debtors are past due in payments owed to AFCO under the Financing Agreement in the approximate amount of $37,295.36. Additionally, the final, remaining payment under the Financing Agreement is $37,295.36 and is due on July 6, 2013.

Further, brokerage services are provided to the Debtors by Aon Risk Services (the "**Broker**"). The annual fee for brokerage services is $227,500, due in quarterly installments to the Broker. The Debtors are past due on their remaining $56,875 payment owed to the Broker.

*(7) The Additional Insurance Coverage Provided through the Gores Group*

Additionally, the Debtors are covered under several additional insurance policies provided through The Gores Group. Specifically, the additional polices are: (a) a first excess director's and officers' insurance policy, provided by XL Specialty, which the Debtors' portion of the premium is approximately $25,306; (b) a second excess directors' and officers' insurance policy, provided by Houston Casualty Company, which the Debtors' portion of the premium is approximately $11,461; (c) a crime insurance policy, provided by Zurich American Insurance Company, which the Debtors' portion of the premium is approximately $29,207; and (d) fiduciary liability policies, provided by Travelers (St. Paul Mercury Insurance Company) and CNA, which the Debtors' portion of the premium is approximately $6,556. The premium for each policy is paid in full, and the policies expire on September 1, 2013.

## RELIEF REQUESTED

6.      By this motion, and pursuant to Sections 105(a), 363, and 364 of the Bankruptcy Code, the Debtors seek authority, but not direction, to (a) continue to maintain and administer the Policies and revise, renew, supplement or replace such Policies, as needed, to

7

(b) pay or honor outstanding prepetition obligations with respect to the Policies (the "**Insurance Obligations**"), and (c) continue and maintain the Financing Agreement.

## BASIS FOR RELIEF

A.    **Section 363(b) of the Bankruptcy Code Authorizes the Debtors to Continue the Policies and Financing Agreement and Honor the Insurance Obligations**

7.    The Debtors believe that continuing the Policies and the Financing Agreement, including utilizing the Broker, constitute "ordinary course of business" practices and, therefore, do not require court approval.  To the extent doing so would be viewed as a use of property outside the ordinary course of business, however, Section 363 of the Bankruptcy Code authorizes a debtor to, in relevant part, "use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Under Section 363, a court may authorize a debtor to pay certain prepetition claims if the debtor "articulate[s] some business justification, other than mere appeasement of major creditors."  In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989); see also Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under [Section 363], courts require the debtor to show that a sound business purpose justifies such actions.").

8.    Failure to (1) maintain the Policies and the Financing Agreement, including the utilization of the Broker, and (2) honor the Insurance Obligations may harm the Debtors' estates in several ways.  Specifically, under their respective agreements, insurers and the Finance Company could terminate the Policies.  The Finance Company could also seek recovery of unearned Premiums if the Debtors do not timely pay their obligations owed under the Financing Agreement.  Termination of coverage would place additional strain on the

8

Debtors' customers, vendors and employees who benefit from the Policies and would eviscerate the Debtors' ability to prevent loss in value caused by casualty or other unforeseen events during the ordinary course of their business.  In turn, the foregoing would have devastating impacts on the Debtors' ability to operate their businesses and on the value of their estates.  If the Debtors were not permitted to continue their Policies or the Financing Agreement, they would be forced to replace the necessary insurance coverage, likely at a higher price.  In light of the foregoing, the continued payment of amounts related to the Policies and Financing Agreement and payment of the prepetition Insurance Obligations are necessary to maintain the Debtors' business operations and to reorganize successfully.

9.    It is especially critical that the Debtors be permitted to continue their workers' compensation programs and to pay outstanding prepetition claims, taxes, charges, assessments, and premiums in the ordinary course of business because alternative arrangements for workers' compensation coverage would most certainly be more costly, and the failure to provide coverage may, in some states, subject the Debtors and/or their officers to severe penalties.  To facilitate the ordinary course handling of workers' compensation claims, the Debtors further request authority, in their sole discretion, to lift the automatic stay of Section 362 of the Bankruptcy Code, to allow workers' compensation claimants to proceed with their claims under the applicable insurance policy or program and to allow the Debtors or their insurance providers to negotiate, settle and/or litigate workers' compensation claims, and pay resulting amounts, whether such claims arose before or after the Petition Date.

**B.    The Relief Requested Herein Should Be Granted Pursuant to Section 105(a) of the Bankruptcy Code and the Doctrine of Necessity**

10.    Section 105(a) of the Bankruptcy Code empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the

RLF1 8597286v.6

provisions of this title." 11 U.S.C. § 105(a).    Courts in this Circuit and elsewhere have consistently held that Section 105(a) authorizes a bankruptcy court to exercise its broad grant of equitable powers to permit payment of prepetition obligations when essential to the continued operation of the debtor's business.  See, e.g., In re Just for Feet, Inc., 242 B.R. 821, 824-25 (D. Del. 1999) (holding that Section 105(a) of the Bankruptcy Code provides a statutory basis for the payment of prepetition claims under the doctrine of necessity and noting that "[t]he Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of prepetition claims when such payment is necessary for the debtor's survival during chapter 11"); In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (confirming that the doctrine of necessity, *i.e.*, whether the payment is essential to the continued operation of the business, is the standard in the Third Circuit for enabling a court to authorize the payment of prepetition claims prior to the confirmation of a reorganization plan).

11.    Indeed, bankruptcy courts regularly rely upon their authority under Section 105(a) of the Bankruptcy Code to grant a debtor in possession the discretionary authority to pay certain prepetition claims "where the payment is necessary to permit the effectuation of the rehabilitative purposes of the Bankruptcy Code."  In re Sharon Steel Corp., 159 B.R. 730, 736 (Bankr. W. D. Pa. 1993); see also In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to continued operation of the debtor); In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept").  As these courts have noted, the rationale for making payments to prepetition creditors under the doctrine of necessity is consistent with the paramount goal of chapter 11—

"facilitating the continued operation and rehabilitation of the debtor . . . ."  <u>Ionosphere Clubs</u>, 98 B.R. at 176.

12.    Maintaining each of the Policies and Financing Agreement and paying the Insurance Obligations is essential to the Debtors' operations and reorganization efforts.  Given that the insurers and AFCO have the right under the applicable documents to terminate the Policies and seek recovery of unearned Premiums, the potential exposure to the Debtors and their estates if the Policies and Financing Agreement are not maintained would create an unreasonable risk.  Due to the nature and scale of the Debtors' operations, continuation of the Policies and Financing Agreement on an ongoing and uninterrupted basis is essential to the Debtors' reorganization.

13.    Moreover, not only are some of the Policies required by the various regulations, laws and contracts that govern the Debtors' commercial activities, but Section 1112(b)(4)(C) of the Bankruptcy Code also provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public," is "cause" for mandatory conversion or dismissal of a chapter 11 case.  *See* 11 U.S.C. § 1112(b)(4)(C).  Accordingly, the Debtors submit that the use of the estates' funds to pay the Insurance Obligations and to continue the Policies and Financing Agreement, including payments to the Broker, in the ordinary course of business and consistent with past practice is permitted by the Bankruptcy Code.

C.    **Section 364 of the Bankruptcy Code Allows the Debtors to Continue to Maintain the Financing Agreement**

14.    The Court may authorize the Debtors to maintain their Financing Agreement and replace such agreement pursuant to Section 364 of the Bankruptcy Code.  Specifically, Section 364 provides that a debtor may incur secured postpetition debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interests of the estate.

See 11 U.S.C. § 364(c); see, e.g., In re Budget Grp., Inc., No. 02-12152, 2002 Bankr. LEXIS 1050, at *5-6 (Bankr. D. Del. Aug. 1, 2002) (authorizing funding of property acquisition on a secured basis where acquired property was necessary to maintain operations and debtors could not obtain such funding on an unsecured basis); In re Ames Dep't Stores, Inc., 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (stating that with respect to postpetition credit, courts "permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties"); In re Simasko Prod. Co., 47 B.R. 444, 449 (D. Colo. 1985) (authorizing interim financing agreement where debtor's best business judgment indicated financing was necessary and reasonable for benefit of estate).

        15.    The relief requested in this Motion is similar to relief granted by numerous courts, including this court in other chapter 11 cases in this district. See, e.g., In re ATLS Acquisition, LLC, Case No. 13-10262 (PJW) (Bankr. D. Del. Feb. 20, 2013); In re Amicus Wind Down Corp. (f/k/a Friendly Ice Cream Corp.), Case No. 11-13167 (KG) (Bankr. D. Del. Oct. 6, 2011); In re Schutt Sports, Inc., Case No. 10-12795 (KJC) (Bankr. D. Del. Sept. 8, 2010); Buffets Holdings, Inc., Case No. 08-10141 (MFW) (Bankr. D. Del. Feb. 12, 2008); In re Goody's, LLC, Case No. 09-10124 (CSS) (Bankr. D. Del. Feb. 3, 2009). InSight Health Servs. Holdings Corp., Case No. 07-10700 (BLS) (Bankr. D. Del. May 31, 2007).[4]

**D.    The Requirements of Bankruptcy Rule 6003 Are Satisfied**

        16.    For a debtor to obtain relief to make pre-plan payments within 21 days of the Petition Date, it must establish that making such payments satisfies the requirements mandated by Bankruptcy Rule 6003—namely, the relief requested is necessary to avoid "immediate and irreparable harm." Fed. R. Bankr. P. 6003. If a debtor's prospect of

---

[4]    Due to the voluminous nature of the orders cited herein, they are not attached to this motion. Copies of these orders are available upon request to the Debtors' counsel.

reorganizing is threatened, or swift diminution in value of the debtor's estate is likely, absent the granting of the requested relief, immediate and irreparable harm likely exists.  See In re WorldSpace, Inc., Case No. 08–12412, 2008 WL 8153639, at *2 (Bankr. D. Del. Oct. 20, 2008) (PJW) (granting emergency motions for postpetition financing, adequate protection and modification of the stay where the court found that the relief was necessary to avoid irreparable harm to the debtors and their estates because such relief was essential for the continued operations of the debtors' businesses); In re New World Pasta Co., Case No. 04–02817, 2004 WL 5651052, at *5 (Bankr. M.D. Pa. July 9, 2004) (MDF) (same); see also In re Ames Dep't Stores, Inc., 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (finding that "immediate and irreparable harm" exists where loss of the business threatens the ability to reorganize).

17.    As described above, without the relief requested herein the Debtors risk suspension or complete loss of their insurance coverage.  Specifically, without the ability to pay any outstanding Premium amounts, the Policies may be terminated leaving the Debtors without the requisite insurance to operate their businesses.  Moreover, not only are some of the Policies required by various laws and vendor or customer contracts, but Section 1112 of the Bankruptcy Code also provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. Accordingly, because the failure to maintain the Policies and to honor the Insurance Obligations would cause immediate and irreparable harm to the Debtors and their estates, the Debtors submit that Bankruptcy Rule 6003 is satisfied.

**E.    Banks and Other Financial Institutions Should be Authorized to Honor and Pay Checks Issued and to Make Other Transfers to Pay Insurance Obligations**

18.    The Debtors request that the Court authorize the Debtors' banks and financial institutions on which checks are drawn or electronic payment requests are made in

RLF1 8597286v.6

payment of the prepetition obligations to receive, process, honor and pay all such checks and electronic payment requests, to the extent the Debtors have sufficient funds standing to their credit with such financial institutions, when presented for payment, and that all such banks and financial institutions be authorized to rely on the Debtors' designation of any particular check or electronic payment request as being approved by the Order entered into in connection with the Motion without any duty of further inquiry nor any liability for relying on such representations or following the Debtors' instructions.

## WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

19.     Given the nature of the relief requested herein, the Debtors respectfully request a waiver of (i) the notice requirements under Bankruptcy Rule 6004(a), and (ii) the 14-day stay under Bankruptcy Rule 6004(h), to the extent that either rule is applicable.

## DEBTORS' RESERVATION OF RIGHTS

20.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Section 365 of the Bankruptcy Code. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## NOTICE

21.     Notice of this Motion will be given to: (a) the Office of the United States Trustee for the District of Delaware, (b) counsel to the Debtors' postpetition secured lender, (c) counsel to Wells Fargo Capital Finance, LLC, as agent under the First Lien Credit Agreement, (d) counsel to Galactic Holdings, LLC, as agent under the Second Lien Credit

Agreement, (e) counsel to International Paper Company, (f) the parties included on the Debtors'
consolidated list of thirty (30) largest unsecured creditors and (g) all parties that have requested
or that are required to receive notice pursuant to Bankruptcy Rule 2002.  The Debtors will serve
copies of the Motion and any order entered in respect of the Motion as required by Rule 9013-
1(m) of the Local Rules.  The Debtors submit that, under the circumstances, no other or further
notice is required.

**WHEREFORE**, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter an order granting the relief requested in this motion and (b) grant such other and further relief as may be just, proper and equitable.

Date: June 9, 2013
     Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**

Mark D. Collins (No. 2981)
John H. Knight (No. 3848)
Michael J. Merchant (No. 3854)
Paul N. Heath (No. 3704)
920 N. King Street
Wilmington, Delaware 19801
Telephone:  302-651-7700
Facsimile:  302-651-7701
Email:collins@rlf.com
      knight@rlf.com
      merchant@rlf.com
      heath@rlf.com

Proposed Counsel for Debtors and Debtors in Possession

RLF1 8597286v.6

**<u>Exhibit A</u>**

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------- x
```
In re:                                         :  Chapter 11
                                               :
NE OPCO, INC., et al.,                         :  Case No. 13-_____ (_____)
                                               :
              Debtors.[1]                      :  Joint Administration Pending
```
------------------------------------------------------- x
```

### ORDER AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS (A) TO CONTINUE PREPETITION INSURANCE COVERAGE AND (B) TO MAINTAIN THE PREPETITION FINANCING AGREEMENT

Upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), pursuant to Sections 105(a) and 363 of the Bankruptcy Code, seeking entry of an order authorizing, but not directing, the Debtors to (a) continue to maintain and administer prepetition insurance policies and revise, renew, supplement or replace such policies, as needed (b) pay or honor prepetition obligations outstanding on account of the Policies, as further described in the Motion, and (c) continue and maintain the Financing Agreement; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding in accordance with 28 U.S.C. § 157(b)(2); and venue being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion being adequate and appropriate under the particular circumstances; and upon the Pinto Declaration, the record of all proceedings had before the Court; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors,

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are NE Opco, Inc. (9830) and NEV Credit Holdings, Inc. (9596).  The above-captioned Debtors' mailing address is c/o NE Opco, Inc., 3211 Internet Boulevard, Suite 200, Frisco, Texas 75034.

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

their estates, their creditors and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefore, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is granted.

2.      The Debtors are authorized, in their discretion, to (a) continue to maintain and perform under their Policies; (b) pay prepetition amounts due and owing related thereto to the extent that the Debtors determine that such payment is necessary or appropriate and (c) revise, renew, supplement or replace such Policies, if necessary, in the ordinary course of business and consistent with past practice.

3.      The Debtors are authorized, in their discretion to continue to maintain and perform under their Financing Agreement and revise, extend, renew, supplement or replace such Financing Agreement, if necessary, in the ordinary course of business and consistent with past practice.

4.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized but not directed to receive, process, honor and pay all such checks and electronic payment requests, solely to the extent the Debtors have sufficient funds standing to their credit with such financial institutions, when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as being approved by this Order and shall have no duty of further

RLF1 8597286v.6

inquiry nor any liability for relying on such representations or following the Debtors'
instructions.

        5.     Notice of the Motion as provided therein shall be deemed good and
sufficient and such notice satisfies the requirements of Bankruptcy Rule 6004(a).

        6.     The requirements set forth in Bankruptcy Rule 6003(b) are
satisfied by the contents of the Motion or otherwise deemed waived.

        7.     Notwithstanding the possible applicability of Bankruptcy Rules
6004(h), 7062, 9014 or otherwise, this Order shall be immediately effective and enforceable
upon its entry.

        8.     The Debtors are authorized to take all actions necessary to
effectuate the relief granted pursuant to this Order in accordance with the Motion.

        9.     The Court retains jurisdiction with respect to all matters arising
from or related to the interpretation or implementation of this Order.

Date: _____, 2013
     Wilmington, Delaware

                                  _____
                                  UNITED STATES BANKRUPTCY JUDGE

RLF1 8597286v.6