IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | |
| NEC HOLDING CORP*., et al.*, | ) | Case No. 13-11483 (CSS) |
| | ) | |
| Debtors. | ) | |
| | ) | Re:  Docket Nos. 12 and 43 |

**LIMITED OBJECTION OF NEENAH PAPER, INC. TO THE DEBTORS ' MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION SECURED FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507; (II) AUTHORIZING USE OF CASH COLLATERAL; (III) GRANTING LIENS AND SUPER-PRIORITY CLAIMS; (IV) GRANTING ADEQUATE PROTECTION; (V) MODIFYING AUTOMATIC STAY; AND (VI) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

Neenah Paper, Inc. ("Neenah") submits this limited objection (the "Objection") to the *Debtors ' ("Debtors") Motion for Interim and Final Orders (I) Authorizing Debtors to Obtain Post-Petition Secured Financing Pursuant to 11 U.S.C. §§ 105,* 361, 362, 363, 364 *and 507; (II) Authorizing Use of Cash Collateral; (III) Granting Liens and Super-Priority Claims; (IV) Granting Adequate Protection; (V) Modifying Automatic Stay; and (VI) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001* (the "Motion", D.I. 12).[1]

There is a troubling pattern that many chapter 11 cases seem to be following these days. File your petition.  Do a quick section 363 sale.  Convert to chapter 7 (or possibly consummate a "structured" dismissal).  Even in today's economy, however, a chapter 11 case should not be administered, and DIP financing procured, for the sole benefit of secured lenders.  See, e.g., In re Aqua Assocs., 123 B.R. 192, 195-96 (Bankr. E.D. Pa. 1991) ("[C]redit should not be approved when it is sought for the primary benefit of a party other than the debtor."); In re Ames Dep't. Stores, Inc., 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990) ("[A] proposed financing will not be

---

[1] Neenah has not finalized its own analysis, but believes it holds a section 503(b)(9) claim in the approximate amount of $52,000 and  has submitted a reclamation claim in the approximate amount of $113,000.

approved where it is apparent that the purpose of the financing is to benefit a creditor rather than the estate."); <u>In re Tenney Village Co., Inc.</u>, 104 B.R 562, 568 (Bankr. D.N.H. 1989) (debtor-in-possession financing terms must not "pervert the reorganizational process from one designed to accommodate all classes of creditors and equity interests to one specially crafted for the benefit" of the secured creditor").

Moreover, it is inappropriate for a case to remain in chapter 11 where there is no realistic possibility that a plan will be confirmed and where lenders are simply using the chapter 11 process to arrange a section 363(f) sale to be followed by a conversion to chapter 7 or dismissal. <u>E.g.</u> <u>In re Encore Healthcare Assocs.</u>, 312 B.R. 52, 54-55 (Bankr. E.D. Pa. 2004) (section 363 sale served no legitimate business purpose where debtor admitted that it would convert the case to chapter 7 following the sale); <u>accord</u> <u>In re Fremont Battery Company</u>, 73 B.R. 277, 279-80 (Bank. N.D. Ohio 1987); <u>In re Au Natural Restaurant, Inc.</u>, 63 B.R. 575, 581 (Bankr. S.D.N.Y. 1986) (need for expedited sale is not a sufficient business justification to sell substantially all of the debtor's assets when the debtor's prospect of proceeding to confirmation and making distributions to unsecured creditors thereunder is unlikely); <u>In re Duro Industries, Inc.</u>, 2002 WL 34159091 (Bankr. D. Mass. 2002) ("Where all equity in a debtor's assets belongs to the secured creditor, with no appreciable expectation of a remainder for unsecured creditors, the liquidation of the assets serves no bankruptcy purpose and should not be permitted to occur in bankruptcy.").

The Debtors comprise one of the largest envelope manufacturers in the nation. As a manufacturer, it is not surprising that 20-day trade claims under section 503(b)(9) are likely to be significant relative to the size of these cases. Indeed, in the prior National Envelope bankruptcy, now in chapter 7 before this Court, section 503(b)(9) claims were initially estimated to be *$20 million.* Neenah has not located, in the Motion or otherwise, any estimate of the magnitude

of 503(b)(9) claims. If the Debtors do not have a clear picture of the magnitude of these claims, that may not bode well for the future of these cases.

Generally, section 503(b)(9) claims should be treated just like any other administrative claim. See generally In re Plastech Engineering, 394 B.R. 147 (Bankr. E.D. Mich. 2008) (rejecting application of 502(d) to 503(b)(9) claims, Court holds that 503(b)(9) claims should be treated like any other administrative claim). Obviously, such claims must be paid at confirmation. 11 U.S.C. § 1129(a)(9). However, nothing in the Motion or the attached budget appears to provide for the payment, the funding, or even an assessment of such claims. It is also notable that in the milestones built into the Motion, the Debtors may either file a plan *or* a section 363 motion within 60 days of the petition date. Motion, p. 20 (Milestones). The plan or sale motion must be approved in advance by the lenders. Loan Agreement (Exhibit "B" to Motion) pp. 93-94.

In the event that there are insufficient funds to pay 503(b)(9) claims, these cases may be administratively insolvent. Administrative insolvency may constitute 'cause' for the conversion of dismissal of a chapter 11 case. E.g. In re Midwest Communications, Inc., 269 B.R. 40, 42 (Bankr. N.D. Iowa 2001) (case dismissed on US Trustee's motion where chapter 11 debtor was administratively insolvent and where there was no likelihood of rehabilitation). Under such circumstances, the Debtors should not be able to take on the DIP obligations that can have no conceivable benefit to anyone but the secured lenders. To be clear, as Debtors have not filed their schedules and SOFAs, or otherwise provided detailed financial disclosure, Neenah is not in a position to allege that these cases are administratively insolvent – and indeed, Neenah hopes this is not true. Neenah maintains instead that, before a $60 million roll-up be approved, the

Debtors and Lenders should be able to make the representation, backed up by specific financial information, as to how they plan to exit chapter 11.

In sum, Neenah submits that any approval of DIP financing should be conditioned, at a minimum, on a showing that the Debtors have reasonable prospects for confirming a chapter 11 plan that will include payment of all administrative claims, including section 503(b)(9) claims.

WHEREFORE, Neenah requests that in the absence of a showing that a plan of reorganization, which includes payment in full of all administrative claims, is at least reasonably probable, that the Motion be denied.

DATED:  June 26, 2013

       /s/ Christopher D. Loizides
Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE  19801
Telephone:     (302) 654-0248
Facsimile:     (302) 654-0728
E-mail:         loizides@loizides.com

*Counsel for Neenah Paper, Inc.*