IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | |
| | ) | Case No. 13-11483 (CSS) |
| NE OPCO, INC., *et al.*[1], | ) | (Jointly Administered) |
| | ) | |
| | ) | Hearing: July 19, 2013 at 12:00 p.m. |
| Debtors. | ) | Objections: July 18, 2013 at 12:00 p.m. |
| | ) | |
| | ) | Re: Docket Nos. 97 and 157 |

**OBJECTION OF NEENAH PAPER, INC. TO THE MOTION OF DEBTORS PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 TO APPROVE SETTLEMENT AMONG THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, THE DIP AGENT, INTERNATIONAL PAPER COMPANY AND GALACTIC HOLDINGS, LLC**

Neenah Paper, Inc. ("Neenah") submits this objection (the "Objection") to the Motion of Debtors Pursuant to Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019 to Approve Settlement Among the Debtors, the Official Committee of Unsecured Creditors, the DIP Agent, International Paper Company and Galactic Holdings, LLC (D.I. 157, the "Motion").

The Motion seeks approval of a settlement (the "Settlement") among the Debtors, the Official Committee of Unsecured Creditors (the "Committee"), the DIP Agent, International Paper Company ("IP") and Galactic Holdings, LLC. It appears that the Settlement was negotiated in part in an effort to address claims arising under 11 U.S.C. § 503(b)(9) (the "20 Day Claims"), including the 20 Day Claim of Neenah. However, the Settlement is nowhere near sufficient to fund 503(b)(9) claims.[2]

In particular, it has been estimated that there are approximately $3.3 million in 20 Day Claims (excluding the 20 Day Claim of IP). See Transcript of July 12, 2013 hearing, p. 17.

---

[1] The Debtors in the Chapter 11 cases are NE Opco, Inc. and NEV Credit Holdings, Inc.

[2] Neenah incorporates its objection to the final DIP financing motion (D.I. 97).

Under the Settlement, there are several potential sources for the payment of 503(b)(9) claims, but no matter how you count them, they do not come close to being able to satisfy such claims:

1. The DIP Budget is amended to provide for the payment of $250,000 (in ten weekly installments) into an account for 20 Day Claims (the "503(b)(9) Account"). A trust for the benefit of general unsecured creditors (the "GUC Trust") will also be established, and the funds from the 503(b)(9) Account will be moved into an account held by the GUC Trust.

2. *If* there is an agreement of sale sufficient to pay the DIP Agent in full, $500,000 of additional cash will be transferred to the 503(b)(9) Account.

3. The Debtors will use "good faith efforts to require any purchaser to assume all 503(b)(9) claims".

4. *If* the DIP Agent is paid in full, the GUC Trust will receive 25% of the next $4 million (i.e. up to $1 million) and then 3% of any amount over $4 million until the second and third lien debt is paid in full.

5. $789.000 of cash will be earmarked to pay wind-down costs; any unused remainder will go to the GUC Trust.

Under a best case scenario, if (a) there is sufficient cash to make the ten payments into the 503(b)(9) Account, (b) the DIP Agent is paid in full, (c) there are $4 million of proceeds above those necessary to pay the DIP Agent and (d) there are *no* wind down expenses, then the total amount available to pay 20 Day Claims would be $2,539,000 – well short of the estimated $3.3 million of such claims. But in a worst case scenario, *no funds* would be available to pay 503(b)(9) claimants at all.

It is also somewhat unclear how the Settlement affects the rights of 503(b)(9) claimants. In particular, is the statutory priority of such claims carried over to the GUC Trust? If so, is that priority recognized on all funds held by the GUC Trust or only funds specifically earmarked to pay 20 Day Claims (i.e. ##1 and 2, above)? Will holders of 20 Day Claims retain their rights against the Debtors and their estates as to any unpaid portion of such claims? Will the right of the 20 Day claimants be *pari passu* with the rights of the Committee's professionals to compensation from the GUC Trust? To the extent that the answers to these questions are negative, the outlook for 20 Day Claimants is even worse.

The bottom line is that there appears to be no realistic plan to satisfy 503(b)(9) creditors. While the Settlement provides for, at best, a *partial* funding of such claims based on a host of contingencies, Debtors are again relying on no more than a 'wing and a prayer'. After all, in the first National Envelope bankruptcy, even before any objections were raised, the Debtors *did* have a plan of sorts to pay *some portion* of the 503(b)(9) claims – but it was clear from the Debtors' records and statements that in the best case scenario, they merely hoped that such creditors would voluntarily agree to a haircut. The Court held that partial funding, plus hope that there would be reduction agreements, wasn't enough. The proposed Settlement is no better.

Other aspects of the Settlement also raise concerns. The Settlement provides, without any basis whatsoever, a general release of liability of the Debtors' *present and former* officers and directors, despite the fact that they are not contributing anything to the Settlement. Other parties are also receiving broad releases that appear to be broader in scope that those that would be ordinarily granted to a secured lender under a DIP financing order.

Neenah appreciates that the Debtors and the Committee are put in a difficult situation where it appears that there are blanket liens on all of the Debtors assets. But the question

remains why the secured lenders should have virtually free reign to run a chapter 11 case without any clear commitment to fund a chapter 11 plan. Accordingly, Neenah requests that the Settlement in its present form not be approved unless the proponents can show that it is reasonably certain that 503(b)(9) claims *at a minimum* will be paid in full.

WHEREFORE, Neenah requests that in the absence of a showing that a plan of reorganization, which includes payment in full of all administrative claims, is at least reasonably probable, that the Motion be denied.

DATED: July 18, 2013

/s/ Christopher D. Loizides
Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:   (302) 654-0248
Facsimile:    (302) 654-0728
E-mail:        loizides@loizides.com

*Counsel for Neenah Paper, Inc.*