IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NE Opco, Inc., *et al.*<br><br>Debtors. | Chapter 11<br><br>Case No. 13-11483 (CSS)<br>Jointly Administered<br><br>**Objections Due: 7/18/13 at 12:00 p.m.**<br>**Hearing Date: 7/19/13 at 1:00 p.m.** |

**UNITED STATES TRUSTEE'S OBJECTION TO THE MOTION OF DEBTORS PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 TO APPROVE SETTLEMENT AMONG THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, THE DIP AGENT, INTERNATIONAL PAPER COMPANY AND GALACTIC HOLDINGS, LLC**

In support of her objection (the "Objection") to the Motion of Debtors Pursuant to Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019 to Approve Settlement Among the Debtors, the Official Committee of Unsecured Creditors, the DIP Agent, International Paper Company and Galactic Holdings, LLC (the "Motion"), Roberta DeAngelis, the United States Trustee for Region 3 ("U.S. Trustee"), through her undersigned counsel, respectfully states as follows:

1. This Court has jurisdiction to hear the Objection.

2. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

3.     Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to be heard with regard to the Objection.

## Preliminary Statement

4.     The Motion seeks approval of a broad settlement among the Debtors, the Committee, International Paper Co., Salus Capital Partners, LLC, and Galactic Holdings, LLC.  Because the Debtors have not yet filed their schedules of assets and liabilities or statements of financial affairs, there is not an adequate basis on which the Court can determine that the proposed settlement is fair, reasonable, and in the interest of the Debtors' estates.  The Debtors have not described what potential claims the releases contained in the proposed settlement would purport to resolve and have not shown that the releases satisfy *Master Mortgage*.  The Debtors are seeking relief typically sought in a plan, on seven days' notice,[1] without ever having had to fully disclose their assets and liabilities.  The Motion should be denied.

## Background

5.     On June 10, 2013 (the "Petition Date"), the Debtors filed voluntary chapter 11 petitions in this Court.

6.     On June 21, 2013, the U.S. Trustee appointed an Official Committee of Unsecured Creditors (the "Committee").

7.     On July 11, 2013, the Court entered an order extending the time in which the Debtors could file their schedules of assets and liabilities or statements of financial affairs to August 9, 2013. *See* D.I. 145.

---

[1] The Motion recites that notice of the Motion was provided to, among others, "all parties that . . . are required to receive notice pursuant to Bankruptcy Rule 2002."  To the extent the Motion was not served on all creditors, including in particular all priority claimants, the U.S. Trustee reserves the right to object on the basis that service was deficient under Local Rule 2002-1(b).

8. As of the date this Objection was filed, the Debtors had not filed their schedules of assets and liabilities or statements of financial affairs.

9. As of the date this Objection was filed, the Debtors had not filed a motion to establish a claims bar date.

10. On July 12, 2013, the Debtors filed the Motion.

11. The proposed settlement would:

- advance $250,000 in DIP financing proceeds into escrow, to be put into a general unsecured creditors' trust ( the "GUC trust") to pay allowed Section 503(b)(9) claims;

- set aside $250,000 more for the Committee's professional fees;

- determine how the proceeds of a not-yet-arranged Section 363 sale would be allocated among secured creditors and the GUC trust;

- give the DIP lender, non-debtor affiliates, and pre-petition secured lenders, as well as various other entities connected to them, broad debtor releases;

- contemplate the establishment of a protocol by which Section 503(b)(9) claims would be paid from the GUC trust; and

- fund the winding down of the Debtors' chapter 11 cases.

12. The proposed order accompanying the Motion provides in part:

Upon entry of this Order, for good and valuable consideration, the Debtors and the Committee shall, and shall be deemed to, forever, completely, and unconditionally release, waive, void, extinguish and discharge Salus, International Paper, The Gores Group, Galactic Holdings, LLC, NEV Parent Holdings, Inc., NEV RE Holdings, Inc., the Debtors' present and/or former directors and officers, and each of the foregoing parties' affiliates, present or former directors, managers, officers, members, equity holders, employees, agents, financial advisors, partners, attorneys, and other professional advisors or representatives from any and all claims, obligations, rights, suits, judgments, damages, causes of action, demands, counterclaims, remedies, and liabilities of any nature whatsoever, including without limitation any derivative claims, asserted or assertable on behalf of the Debtors or their estates, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, arising from or relating to the period prior to the date of the this Order (including prior to the Petition Date) or that may be based, in

3

whole or in part, upon or otherwise relate to, any act, omission or transaction, event or other circumstance taking place, arising or existing on or prior to the date of this Order (including prior to the Petition Date); provided, however, that nothing in this release shall be construed as a release of any obligations of any party under this Order.

### **Argument**

13. Approval of a settlement under Rule 9019 is committed to the bankruptcy court's discretion. *In re Washington Mutual, Inc.*, 442 B.R. 314, 327 (Bankr. D. Del. 2011). The court must determine that the compromise is fair, reasonable, and in the best interests of the estate—not that the compromise is the best of all possible compromises. *Id.* at 327-28. The settlement must be above "'the lowest point in the range of reasonableness.'" *Id.* at 328 (*citing In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004)).

14. Settlement proponents have the burden of showing that the settlement is reasonable. *See In re Washington Mutual, Inc.*, 442 B.R. at 328.

15. The Debtors have not shown that the settlement is reasonable. Because the Debtors have not filed their schedules and statements, information about what the Debtors' assets and liabilities are and what they are worth has not been fully disclosed. The docket does not show that any bid has been made for the Debtors' assets. The Debtors have not filed a motion to establish bidding procedures. The Debtors have not described the potential claims that the Committee, The Gores Group, Salus, International Paper or the Debtors may have against one another and that the Motion seeks to resolve. The Motion does not contain an estimate of the total amount of Section 503(b)(9) claims—or other administrative expenses or priority claims—against the Debtors. Nothing in the Motion suggests that all priority claims would be paid in full before any payments were made to general unsecured creditors.

16. Absent a record of what the Debtors' assets and liabilities are, what specific claims are being settled or released, and what the prospects are for a sale of the Debtors' assets,

4

the Motion is premature and opaque.  The Motion does not set forth sufficient information for the Court to find that the proposed settlement is in the best interests of the estate.  Because the Debtors have not yet filed their schedules and statements, the contents of the estate have not yet been fully disclosed.  And because the Motion does not describe the potential claims sought to be settled, it does not support a finding that the settlement is above the lowest point in the range of reasonableness.  The settlement proponents have the burden of establishing that the settlement is fair, reasonable, and in the best interests of the estate.  Self-serving or conclusory assertions in the Motion do not satisfy this burden.

17.    The Debtors have not shown that the releases in the settlement are fair.  The Third Circuit has not established a test for evaluating debtor releases in Chapter 11.  However, the Bankruptcy Court has applied the analytical framework of *In re Master Mortgage Investment Fund, Inc.*, 168 B.R. 930 (Bankr. W.D. Mo. 1994).  *See*, *e.g.*, *In re Zenith Electronics Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999); *In re Washington Mutual, Inc.*, 442 B.R. at 346-47; *In re Spansion, Inc.*, 426 B.R. 114, 142-43 n.47 (Bankr. D. Del. 2010); *In re Tribune Co.*, 464 B.R. 126, 186 (Bankr. D. Del. 2011).  The *Master Mortgage* standard focuses on the following factors:

> (1) the debtor and non-debtor have such identity of interest that a suit against the non-debtor will deplete estate resources;
> (2) the non-debtor substantially contributes to the plan;
> (3) the release is necessary to the reorganization;
> (4) creditors and interest holders have overwhelmingly accepted the plan and release; and
> (5) all or substantially all creditors' and interest holders' claims are paid under the plan.

*See Master Mortgage*, 168 B.R. at 934-35.  *See also In re Coram Healthcare Corp.*, 315 B.R. 321, 335 (Bankr. D. Del. 2004); *In re Washington Mutual, Inc.*, 442 B.R. at 346; *In re Tribune Co.*, 464 B.R. at 186.  The *Master Mortgage* factors are not exclusive or conjunctive; rather they

guide the court's analysis of whether debtor releases in chapter 11 are fair. *See*, *e.g.*, *In re Washington Mutual, Inc.*, 442 B.R. at 346; *In re Spansion, Inc.*, 426 B.R. at 142-43 n.47; *In re Tribune Co.*, 464 B.R. at 186.

18. Typically, the *Master Mortgage* factors are applied to debtor releases in plans. The Debtor releases here are phrased as if they were part of a plan and, if granted, would have the same effect as they would in a confirmed plan. The releases seek, among other things, to release the Debtors' current and former directors and officers from any claims or liability that existed before or that arose from any act or omission that occurred on or before the date of the proposed settlement order. The U.S. Trustee submits that the Debtor releases sought in the settlement are appropriate, if at all, only in a plan and should not be approved as part of the proposed settlement. However, to the extent the Court concludes the releases here may be sought as part of the settlement, the U.S. Trustee submits that *Master Mortgage* is the appropriate analysis.

19. The *Master Mortgage* factors are wanting. First, the Debtors do not disclose what or how various released entities are contributing to the settlement. For example, nothing in the Motion suggests that "the present or former directors, managers, officers, members, equity holders, employees, agents, financial advisors, partners, attorneys, and other professional advisors or representatives" of Salus, International Paper, The Gores Group, Galactic Holdings, NEV Parent Holdings, or NEV RE Holdings—or the Debtors' present and former directors and officers—have contributed to the settlement. Second, the Debtors do not disclose how the releases are necessary to the Debtors' reorganization, given that we do not know (1) what claims are being released; or (2) that the Debtors are actually pursuing a reorganization. Given that the settlement would establish a fund for winding down the chapter 11 cases, a reorganization seems unlikely. Third, there is no showing that creditors and interest holders have overwhelmingly

accepted the releases. By the time the Motion is heard, creditors who were actually served with the Motion will have had only seven days to review the releases and comment on them. Creditors will not have had the opportunity to vote on the releases. Fourth, there is no showing that all or substantially all creditors' and interest holders' claims are being paid pursuant to the settlement. On one hand, the Debtors apparently anticipate that—other than professionals' fees—only Section 503(b)(9) claims will be paid.[2] On the other hand, the Debtors have not fully disclosed what their assets are worth or how much a reasonable bid for them might be. Either way, presently there is no basis for asserting that substantially all creditors' and interest holders' claims will be paid. Additionally, by its terms, the releases would release conduct that constitutes gross negligence or willful misconduct. The Debtor releases in the proposed settlement are not fair.

20. The U.S. Trustee reserves any and all rights, remedies and obligations to, among other things, complement, supplement, augment, alter and/or modify this Objection, file an appropriate motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

---

[2] The proposed settlement would put $250,000 in the GUC trust "for the benefit of general unsecured creditors and claimants holding allowed Section 503(b)(9) claims . . . ." Mot. Prelim. Statement. The Debtors also state that "the Settlement creates the reasonable likelihood for the payment of Section 503(b)(9) claims, as well as the opportunity for a recovery for general unsecured creditors and the estate . . . [and] creates a framework for the payment of administrative claims, including 503(b)(9) claims, and unsecured claims." Id. ¶¶ 14 & 15. However, the settlement also provides that the Debtors "will use good faith efforts to require any purchaser to assume all 503(b)(9) claims." To the extent money from the GUC trust or the 503(b)(9) Account (as that term is defined in the Motion) would be used to pay any general unsecured claim before all allowed priority claims had been paid in full, the U.S. Trustee objects on the basis that such a distribution would be contrary to the distribution scheme contemplated in the Bankruptcy Code.

WHEREFORE, the U.S. Trustee requests that this Court issue an order denying the Motion and/or granting such other relief as this Court deems appropriate and just.

        Respectfully submitted,
**ROBERTA DeANGELIS**
**UNITED STATES TRUSTEE**

Dated: July 18, 2013        **By:** /s/ *Benjamin Hackman*
        Benjamin Hackman
        Trial Attorney
        J. Caleb Boggs Federal Building
        844 King Street, Suite 2207, Lockbox 35
        Wilmington, DE 19801
        (302) 573-6491