# ORIGINAL

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NE OPCO, INC., et al.,[1] | Case No. 13-11483 (CSS) |
| Debtors. | (Jointly Administered) |
| | Re: Docket No. 12 |

### FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507 (1) APPROVING POSTPETITION FINANCING, (2) AUTHORIZING USE OF CASH COLLATERAL, (3) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (4) GRANTING ADEQUATE PROTECTION, AND (5) MODIFYING AUTOMATIC STAY

THIS MATTER having come before the Court upon the motion (the "**DIP Motion**") by NEV Credit Holdings, Inc. ("**NEV**" or the "**Parent**") and NE Opco, Inc. ("**Opco**" or the "**Borrower**"), each as a debtor and debtor in possession (collectively the "**Debtors**") in the above-captioned Chapter 11 cases (collectively, the "**Cases**"), pursuant to Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d) and 507 of title 11 of the United States Code, (11 U.S.C. §§ 101 et seq., as amended, the "**Bankruptcy Code**"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), seeking entry of a final order (this "**Final Order**")[2] inter alia:

---

[1]     The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: NEV Credit Holdings, Inc. (9596) and NE Opco, Inc. (9830).

[2]     To the extent that there is a conflict between the terms of this Final Order and the terms of the order (the "**Settlement Order**") entered by the Court approving the *Motion of Debtors Pursuant to Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019 to Approve Settlement Among the Debtors, the Official Committee of Unsecured Creditors, the DIP Agent, International Paper Company and Galactic Holdings, LLC* [D.I. 157], the terms of the Settlement Order shall control.

(i)     authorizing the Borrower and the Parent to obtain, as co-borrowers, secured, superpriority postpetition financing, including Tranche A, Tranche A-1 and Tranche B Commitments (the "**DIP Facility**"), consisting of a senior secured super-priority revolving credit facility pursuant to the terms and conditions of that certain Debtor-In-Possession Credit Agreement (as amended, supplemented, restated, or otherwise modified from time to time, the "**DIP Credit Agreement**") by and among the Debtors and the Guarantors (together, the "**Debtor Parties**"), and Salus Capital Partners, LLC, as Administrative and Collateral Agent (the "**DIP Agent**") for the Lenders party thereto (the "**DIP Lenders**" and each a "**DIP Lender**"), substantially in the form of Exhibit A attached to the DIP Motion; and

(ii)    authorizing the Debtors to execute and deliver the DIP Credit Agreement and all other related documents and agreements, including security agreements, deposit account control accounts, pledge agreements, guaranties and Tranche A, Tranche A-1 and Tranche B promissory notes (collectively, the "**DIP Loan Documents**") and to perform such other acts as may be necessary or desirable in connection with the DIP Loan Documents;[3] and

(iii)   granting the DIP Facility and all obligations owing thereunder and under the DIP Loan Documents to the DIP Agent (collectively, and including all "Obligations" as described in the DIP Credit Agreement, respectively, and, together, the "**DIP Obligations**") allowed superpriority administrative expense claim status in each of the Cases and any Successor Cases (as defined herein), subject to the priorities set forth herein; and

(iv)    granting to the DIP Agent automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all property

---

[3]     Capitalized terms used but not defined have the meanings given to them in the DIP Loan Documents.

RLF1 8904408v.8

constituting "Cash Collateral," as defined in section 363(a) of the Bankruptcy Code, which liens shall be subject to the priorities set forth herein; and

(v)     authorizing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under each of the DIP Loan Documents as they become due, including, without limitation, continuing commitment or unused line fees, closing fees, servicing fees, audit fees, structuring fees, monitoring and exit fees, the reasonable fees and disbursements of the DIP Agent's and International Paper's (solely in its capacity as the Tranche B Lender under the DIP Facility (in such capacity, the "**Tranche B Lender**"; the Tranche B Lender is a "DIP Lender" for all purposes of this Final Order) and not any amounts incurred in connection with its capacity as a prepetition lender) as attorneys, advisers, accountants, and other consultants, and all related expenses of the DIP Agent, all to the extent provided by and in accordance with the terms of the respective DIP Loan Documents; and

(vi)    authorizing the Debtors to pay the Prepetition Senior Obligations (as defined herein), subject to the rights of parties in interest described in paragraphs 35 and 36 of this Final Order; and

(vii)   providing adequate protection to the Prepetition Subordinated Secured Creditors (as defined herein) to the extent set forth herein; and

(viii)  vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Final Order; and

(ix)    scheduling a final hearing (the "**Final Hearing**") to consider the relief requested in the DIP Motion and approving the form of notice with respect to the Final Hearing.

RLF1 8904408v.8

The Court having considered the DIP Motion, the Declaration of James Pinto, the Debtors' Chairman and Chief Executive Officer, in support of the Chapter 11 petitions and first day motions, including the DIP Motion, the exhibits attached thereto, the DIP Loan Documents, and the evidence submitted or adduced and the arguments of counsel made at the Final Hearing and the interim hearing held on the DIP Motion (the "**Interim Hearing**"); and notice of the Final Hearing and the Interim Hearing having been given in accordance with Bankruptcy Rules 4001(b), (c) and (d), 9014, and Rule 9013-1 of the Local Rules; and the Final Hearing and the Interim Hearing to consider the relief requested in the DIP Motion having been held and concluded; and all objections, if any, to the relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and their creditors and equity holders, and is essential for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE FINAL HEARING AND AT THE INTERIM HEARING BY THE DEBTORS, INCLUDING THE SUBMISSIONS OF DECLARATIONS AND THE REPRESENTATIONS OF COUNSEL, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.    *Petition Date*.  On June 10, 2013 (the "**Petition Date**"), each of the Debtors filed a separate voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**") commencing these Cases.

B.     *Debtors in Possession*.   The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

C.     *Jurisdiction and Venue*.   This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Cases and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.     *Committee Formation*.   On June 21, 2013, the Office of the United States Trustee (the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors in these Cases pursuant to Section 1102 of the Bankruptcy Code (the "**Committee**").

E.     *Debtors' Stipulations*.   After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties in interest as set forth in paragraph 35 herein, the Debtors (on behalf of and for themselves) admit, stipulate, acknowledge and agree that (collectively, paragraphs E(i) through E(viii) below are referred to herein as the "**Debtors' Stipulations**"):

(i)     *Prepetition Senior Credit Documents*.   As of the Petition Date, the Debtor Parties had outstanding secured debt to Wells Fargo Capital Finance, LLC, as Agent (in such capacity, the "**Prepetition Senior Agent**") for various lenders (the "**Prepetition Senior Secured Creditors**"), pursuant to that certain Credit Agreement dated as of September 7, 2010 by and between Opco, NEV and the Prepetition Senior Agent (as amended, modified and supplemented from time to time, the "**Prepetition Senior Credit Agreement**" and together with all related documents, guaranties and agreements, the "**Prepetition Senior Credit Documents**").

- 5 -

(ii)    *Prepetition Senior Obligations.*    As of the Petition Date, the aggregate outstanding principal amount owed by the Debtor Parties under the Prepetition Senior Credit Documents was not less than $50,505,438.00 as of June 6, 2013 (collectively, together with any interest, fees, costs and other charges or amounts paid, incurred or accrued prior to the Petition Date in accordance with the Prepetition Senior Credit Documents, including all "Indebtedness" as described in the Prepetition Senior Credit Agreement, and all interest, fees, costs and other charges allowable under Section 506(b) of the Bankruptcy Code, the "**Prepetition Senior Obligations**"). As more fully set forth in the Prepetition Senior Credit Documents, prior to the Petition Date, the Debtor Parties granted first-priority security interests in and liens on substantially all personal and real property of the Debtors, including owned real estate, accounts, inventory, equipment and general intangibles (collectively, the "**Prepetition Collateral**") to the Prepetition Senior Agent (collectively, the "**Prepetition Senior Liens**") to secure repayment of the Prepetition Senior Obligations.

(iii)    *Prepetition Subordinated Obligations.* As of the Petition Date, the Debtor Parties also had outstanding secured debt to: (A) Galactic Holdings, LLC, as Agent (in such capacity, the "**Prepetition Second Lien Agent**"[4]) for various lenders, including International Paper, pursuant to that certain Second Lien Credit Agreement dated as of September 7, 2010 (as amended from time to time, the "**Prepetition Second Lien Credit Agreement**", and together with all related documents, guaranties and agreements, the "**Prepetition Second Lien Credit Documents**"); and (B) International Paper Company (the "**Prepetition Third Lien Lender**," and together with the Prepetition Second Lien Agent, the "**Prepetition Subordinated Secured**

---

[4]    The Prepetition Second Lien Agent is an affiliate of Gores Group, which is the owner of a majority of the Parent's equity interests. International Paper, the Third Lien Lender, is also the Tranche B Lender under the DIP Credit Agreement.

**Creditors**"; the Prepetition Senior Agent and the Prepetition Subordinated Secured Creditors are collectively referred to herein as the "**Prepetition Secured Creditors**"), pursuant to that certain Amended and Restated Secured Promissory dated as of February 5, 2013 (as amended from time to time, the "**Prepetition Third Lien Credit Agreement**", and together with all related documents, guaranties and agreements, the "**Prepetition Third Lien Credit Documents**").  The Prepetition Second Lien Credit Documents and the Prepetition Third Lien Credit Documents are collectively referred to herein as the "**Prepetition Subordinated Credit Documents**."  The Prepetition Subordinated Credit Documents and the Prepetition Senior Credit Documents are collectively referred to herein as the "**Prepetition Credit Documents**".

(iv)    *Prepetition Subordinated Obligations.*    As of the Petition Date, the outstanding principal amount owed by the Borrowers under (1) the Prepetition Second Lien Credit Documents was not less than $65,840,234.00 (collectively, together with any amounts paid, incurred or accrued prior to the Petition Date in accordance with the Prepetition Second Lien Credit Documents, the "**Prepetition Second Lien Obligations**"); and (2) the Prepetition Third Lien Credit Documents was not less than $32,270,060.03 (collectively, together with any amounts paid, incurred or accrued prior to the Petition Date in accordance with the Prepetition Third Lien Credit Documents, the "**Prepetition Third Lien Obligations**";  the Prepetition Second Lien Obligations and the Prepetition Third Lien Obligations are collectively referred to herein as the "**Prepetition Subordinated Obligations**"; and the Prepetition Senior Obligations and the Prepetition Subordinated Obligations are collectively referred to herein as the "**Prepetition Secured Obligations**"). As more fully set forth in the Prepetition Subordinated Credit Documents, prior to the Petition Date, the Debtor granted second-priority security interests in and liens on the Prepetition Collateral to the Prepetition Second Lien Agent (the

"**Prepetition Second Liens**"), and third-priority security interests in and liens on the Prepetition Collateral to the Prepetition Third Lien Lender (the "**Prepetition Third Liens**"; the Prepetition Second Liens and the Prepetition Third Liens are collectively referred to herein as the "**Prepetition Subordinated Liens**") to secure repayment of the Prepetition Subordinated Obligations. The Prepetition Second Liens, the Prepetition Third Liens and the Prepetition Senior Liens are collectively referred to herein as the "**Prepetition Liens**."

(v)    *Subordination Agreement.*    Each of the Prepetition Secured Creditors entered into an Amended and Restated Intercreditor Agreement dated as of February 5, 2013 (as amended from time to time, including by that Ratification of Amended and Restated Intercreditor Agreement dated June 10, 2013 among the DIP Agent, the Prepetition Second Lien Agent and the Prepetition Third Lien Lender, the "**Subordination Agreement**"), pursuant to which the Prepetition Subordinated Secured Creditors agreed, among other things and as more specifically set forth therein, that (A) the Prepetition Subordinated Obligations (other than accounts payable constituting Prepetition Subordinated Obligations) are subordinated in all respects to the prior payment in full of the Prepetition Senior Obligations, (B) the Prepetition Subordinated Liens are subordinate and junior in all respects to the Prepetition Senior Liens, (C) the Prepetition Third Lien Obligations (other than accounts payable constituting Prepetition Subordinated Obligations) are subordinated in all respects to the prior payment in full of the Prepetition Second Lien Obligations, and (D) the Prepetition Third Liens are subordinate and junior in all respects to the Prepetition Second Liens. The DIP Agent has advised the Debtors that its willingness to provide the DIP Facility is conditioned on, among other things, the DIP Agent succeeding to the rights of the Prepetition Senior Agent under the Subordination Agreement.

RLF1 8904408v.8

(vi)    *Validity, Perfection and Priority of Prepetition Liens and Obligations.*
The Debtors (for themselves and their estates only, and without limiting the rights of other parties in interest under paragraphs 35 and 36 of this Final Order), and the Prepetition Secured Creditors acknowledge and agree that: (a) as of the Petition Date, the Prepetition Liens on the Prepetition Collateral are valid, binding, enforceable, non-avoidable and properly perfected, the Prepetition Senior Liens are senior in priority to the Prepetition Subordinated Liens and the Prepetition Second Liens are senior in priority to the Prepetition Third Liens; (b) as of the Petition Date, the Prepetition Liens have priority over any and all other liens, if any, on the Prepetition Collateral, subject only to certain other liens otherwise permitted by the Prepetition Credit Documents (to the extent any such permitted liens were valid, binding, enforceable, properly perfected, non-avoidable and senior in priority to the Prepetition Liens as of the Petition Date, the "**Prepetition Permitted Liens**")[5]; (c) the Prepetition Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors; (d) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or the Prepetition Secured Obligations exist, and no portion of the Prepetition Liens or the Prepetition Secured Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of actions, and/or

---

[5]    For purposes of this Final Order, Prepetition Permitted Liens shall include all liens that were valid, senior, enforceable, nonavoidable, and perfected under applicable law as of the Petition Date. Nothing herein shall constitute a finding or ruling by this Court that any such Prepetition Permitted Liens are valid, senior, enforceable, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party in interest including, but not limited, to the Debtors, the DIP Agent, and the Committee to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such Prepetition Permitted Lien and/or security interest. Any lien or security interest asserted by Leaf Financing is not a Prepetition Permitted Lien. Any rights of setoff of Wells Fargo Bank, in its capacity as a depositary bank and as such rights may be modified by any applicable deposit account control agreement, remain unmodified and in full force and effect.

choses in action, including without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code, against any of the Prepetition Secured Creditors or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors or employees arising out of, based upon or related to the Prepetition Credit Documents; (f) as of the Petition Date, the value of the Prepetition Collateral securing the Prepetition Senior Obligations exceeded the amount of those obligations, and accordingly the Prepetition Senior Obligations are allowed secured claims within the meaning of Section 506 of the Bankruptcy Code, in a principal amount of not less than $50,505,438 as of June 6, 2013, together with accrued and unpaid and hereafter accruing interest, fees (including, without limitation, attorneys' fees and related expenses), costs and other charges, including $50,000 to secure contingent indemnification obligations arising under or related to the Prepetition Credit Documents (provided that the foregoing amount securing contingent obligations shall be increased to $150,000 by the Debtors if a Challenge, as defined in this Final Order, is timely brought against the Prepetition Senior Agent and/or in respect of the Prepetition Senior Obligations or the Prepetition Senior Liens).

(vii)    *Cash Collateral.*  The Debtors represent that all of the Debtors' cash, including the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitute Cash Collateral and is Prepetition Collateral of the Prepetition Secured Creditors.

(viii)    *Default by the Debtors.*  The Debtors acknowledge and stipulate that the Debtors are in default under each of the Prepetition Senior Credit Documents and the Prepetition Subordinated Credit Documents.

RLF1 8904408v.8

F.    *Findings Regarding the Postpetition Financing.*

(i)    *Request for Postpetition Financing.*  The Debtors seek authority to (a) enter into the DIP Facility on the terms described herein and in the DIP Loan Documents, (b) repay (and otherwise "Refinance" as such term is used in the Subordination Agreement) the Prepetition Senior Obligations and (c) use Cash Collateral on the terms described herein to administer their Cases and fund their operations.

(ii)    *Priming of the Prepetition Liens.*  The priming of each of the Prepetition Subordinated Liens on the Prepetition Collateral by the DIP Liens will enable the Debtors to obtain the DIP Facility and to continue to operate their businesses for the benefit of their estates and creditors.  Each of the Prepetition Subordinated Secured Creditors has consented to such priming liens and is entitled to receive adequate protection of its interests as more fully described below.

(iii)    *Need for Postpetition Financing and Use of Cash Collateral.*  The Debtors' need to use Cash Collateral and to obtain credit pursuant to the DIP Facility is immediate and critical in order to enable the Debtors to continue operations and to administer and preserve the value of their estates.  The ability of the Debtors to finance their operations, maintain business relationships, to pay their employees, protect the value of their assets and otherwise finance their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, their creditors and equity holders, and the possibility for a successful administration of these Cases.  The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or to maintain their

- 11 -

properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

(iv)    *No Credit Available on More Favorable Terms.*    Given their current financial condition, financing arrangements, and capital structure, the Debtors are unable to obtain financing from sources other than the DIP Agent on terms more favorable than the DIP Facility.  The Debtors have been unable to obtain unsecured credit allowable under Bankruptcy Code Section 503(b)(1) as an administrative expense.  The Debtors have also been unable to obtain credit:  (a) having priority over that of administrative expenses of the kind specified in Sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.  Financing on a postpetition basis is not otherwise available without granting the DIP Agent (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets (other than Avoidance Actions (as defined herein)) with the priorities set forth herein, (2) superpriority claims, and (3) the other protections set forth in this Final Order.

(v)    *Use of Proceeds of the DIP Facility.*    As a condition to entry into the DIP Credit Agreement, the extensions of credit under the DIP Facility and the authorization to use Cash Collateral, the DIP Agent requires, and the Debtors have agreed, that proceeds of the DIP Facility shall be used (a) for the repayment in full in cash of the Prepetition Senior Obligations on the Closing Date (other than contingent indemnification obligations) as provided in that certain payoff letter prepared by the Prepetition Senior Agent (the "**Payoff Letter**", a copy of which has been approved by the DIP Agent), and (b) in a manner consistent with the terms and conditions of this Final Order, the DIP Loan Documents and in accordance with the budget (a

- 12 -

copy of which is attached as Exhibit A hereto, as the same may be modified from time to time consistent with the terms of the DIP Loan Documents, and subject to such variances as may be permitted thereby, the "**Budget**"), solely for (i) post-petition operating expenses and other working capital, (ii) certain transaction fees and expenses, (iii) permitted payment of costs of administration of the Cases, including professional fees, (iv) to obtain trade credit from International Paper, and (v) as otherwise permitted under this Final Order, the DIP Loan Documents, as applicable. The repayment of the Prepetition Senior Obligations in accordance with this Final Order and the Payoff Letter is necessary, as the Prepetition Senior Agent has not otherwise consented to the use of its Cash Collateral or the subordination of its liens to the DIP Liens, and the DIP Agent is not willing to provide the DIP Facility unless the Prepetition Senior Obligations (other than contingent indemnification obligations) are paid in full upon the closing of the DIP Facility (subject to the terms of the Payoff Letter and this Final Order). Such payments will not prejudice the Debtors or their estates, because payment of such amounts is subject to the rights of parties in interest under paragraphs 35 and 36 herein.

(vi)    *Application of Proceeds of DIP Collateral.* As a condition to entry into the DIP Loan Documents, the extension of credit under the DIP Facility, and the authorization to use Cash Collateral, the Debtors and the DIP Agent have agreed that the proceeds of DIP Collateral (as defined herein) shall be applied in accordance with paragraph 19 of this Final Order.

G.    *Adequate Protection.* The Debtors shall pay to the Prepetition Senior Agent the amounts required under the Payoff Letter upon closing of the DIP Facility. Because of such payment, and the provisions of the Payoff Letter, there is no need to provide adequate protection to the Prepetition Senior Agent or the lenders party to the Prepetition Senior Credit Documents,

- 13 -

other than senior Adequate Protection Liens (as defined herein) to secure the "Surviving Obligations" (as defined in the Payoff Letter) and senior Adequate Protection Superpriority Claims (as defined herein) with respect to the Surviving Obligations. The Prepetition Subordinated Secured Creditors shall receive, subject to the priorities set forth in paragraphs 12 and 13 below, the Adequate Protection Liens and the Adequate Protection Superpriority Claims. For the avoidance of doubt, the Adequate Protection Liens and the Adequate Protection Superpriority Claims each shall be junior in all respects to the DIP Liens and the DIP Carve Out, and the Adequate Protection Superpriority Claims are junior in all respects to the DIP Superpriority Claim (as defined herein).

    H. *Sections 506(c) and 552(b).* In light of (i) the DIP Agent's agreement to subordinate its liens and superpriority claims, as applicable, to the DIP Carve Out (as defined herein); and (ii) the Prepetition Subordinated Secured Creditors' agreement to subordinate the Adequate Protection Superpriority Claims and the Adequate Protection Liens to the DIP Carve Out, the DIP Liens, and the DIP Superpriority Claim, in each case as applicable, upon entry of this Final Order, each of the DIP Agent and the Prepetition Subordinated Secured Creditors are entitled to a waiver of (a) the provisions of Section 506(c) of the Bankruptcy Code, and (b) any "equities of the case" claims under Section 552(b) of the Bankruptcy Code.

    I. *Good Faith of the DIP Agent and International Paper.*

    (i) *Willingness to Provide Financing.* The DIP Agent and the Tranche B Lender have indicated a willingness to provide financing to the Debtors subject to:  (a) the entry of this Final Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Loan Documents and the payoff of the Prepetition Senior Obligations; and (c) entry of findings by this Court that such financing is essential to the Debtors' estates, that the DIP Agent and the

Tranche B Lender are extending credit to the Debtors pursuant to the DIP Loan Documents in good faith, and that the DIP Agent's and the Tranche B Lender's claims, superpriority claims, security interests, liens, rights, and other protections granted pursuant to this Final Order and the DIP Loan Documents will have the protections provided in Section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Final Order or any other order.

(ii)    *Business Judgment and Good Faith Pursuant to Section 364(e).*    The extension of credit under the DIP Facility reflects the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration. The DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors and the DIP Agent and the Tranche B Lender. The use of Cash Collateral and credit to be extended under the DIP Loan Documents shall be deemed to have been so allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses, within the meaning of Section 364(e) of the Bankruptcy Code, and the DIP Agent and the Tranche B Lender are therefore entitled to the protection and benefits of Section 364(e) of the Bankruptcy Code and this Final Order.

J.    *Notice.*    Notice of the Final Hearing and the relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including: (i) the U.S. Trustee for the District of Delaware; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (v) counsel to each of the Prepetition Secured Creditors; (vi) the Pension Benefit Guaranty Corporation ("**PBGC**"); (vii) Leaf Capital Funding, LLC ("**Leaf Capital**"); and (viii) all parties that have

submitted written requests for notice in these Cases. The parties have made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the final relief set forth in this Final Order, and no other or further notice is or shall be required.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.      Final Financing Approved.    The DIP Motion is granted and the financing requested therein is authorized and approved on a final basis, and the use of Cash Collateral on a final basis is authorized, subject to the terms and conditions set forth in this Final Order.

2.      Objections Overruled.    All objections to the DIP Motion and the finaincing requested therein, to the extent not withdrawn or resolved, are hereby overruled on the merits.

**DIP Facility Authorization**

3.      Authorization of the DIP Financing, DIP Loan Documents and Payoff Letter. The Debtors are expressly and immediately authorized, empowered to execute and deliver the DIP Loan Documents and the Payoff Letter, to incur and to perform the DIP Obligations in accordance with, and subject to the terms of this Final Order, the DIP Loan Documents and the Payoff Letter, to deliver all instruments and documents that may be necessary or required for performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Final Order and the DIP Loan Documents, and, subject to the rights of third parties pursuant to paragraphs 35 and 36 below, to pay and perform all obligations under the Payoff Letter in accordance with the terms set forth therein and in this Final Order, including to provide for (x) the releases in favor of Prepetition Senior Agent, each

- 16 -

of the lenders under the Prepetition Senior Credit Agreement and their related parties and (y) repayment in full in cash of the Prepetition Senior Obligations (other than the Surviving Obligations). The Debtors are hereby authorized to pay the principal, interest, fees, expenses and other amounts described in the DIP Loan Documents as such become due and without need to obtain further Court approval, including, without limitation, closing fees, unused facility fees, continuing commitment fees, monitoring and exit fees, servicing fees, audit fees, structuring fees, the reasonable fees and disbursements of the DIP Agent's and the Tranche B Lender's attorneys, advisers, accountants, and other consultants (solely with respect to their work in connection with the DIP Facility), whether or not the transactions contemplated hereby are consummated, all to the extent provided in the DIP Loan Documents, with invoices to be provided in accordance with paragraph 28 below. All collections and proceeds, whether from ordinary course collections, asset sales, debt issuances, insurance recoveries, condemnations or otherwise, will be deposited and applied as required by this Final Order and the DIP Loan Documents. Upon execution and delivery, the DIP Loan Documents shall represent valid and binding, and joint and several, obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms. Upon execution and delivery, the Payoff Letter shall represent a valid and binding obligation of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms, but subject only to the rights of third parties pursuant to paragraphs 35 and 36 below. Notwithstanding anything to the contrary in the Subordination Agreement, upon receipt of the Payoff Amount, the Prepetition Senior Agent may terminate all bank account control agreements, bailee letter, landlord agreements or similar agreements with respect to its rights thereunder, and may deliver to the DIP Agent any possessory collateral in the Prepetition Senior Agent's possession, without regard

- 17 -

to whether the Prepetition Second Lien Agent has any rights thereunder or has obtained additional rights under any other similar agreement, provided, however, the Prepetition Second Lien Agent shall succeed to the DIP Agent's rights hereunder after payment in full in cash of the DIP Obligations.

4.      <u>Authorization to Borrow</u>.   Until the Termination Date (as defined in the DIP Credit Agreement), and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Loan Documents, the DIP Facility, and this Final Order, and in order to prevent immediate and irreparable harm to the Debtors' estates, the Debtors are hereby authorized to request extensions of revolving credit under the DIP Facility up to an aggregate principal amount of $67,500,000 at any one time outstanding, inclusive of trade credit to be provided by the Tranche B Lender.

5.      <u>DIP Obligations</u>.   The DIP Loan Documents and this Final Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Obligations, which DIP Obligations shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee or other estate representative appointed in the Cases, or any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases (collectively, "**<u>Successor Cases</u>**").   Upon entry of this Final Order, the DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to the DIP Agent under the DIP Loan Documents or this Final Order, including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts owed pursuant to the DIP Loan Documents, and shall be joint and several obligations of the Debtors in all respects.

6.      <u>Postpetition Liens and Collateral</u>.

(a)      Effective immediately upon the entry of this Final Order and the payment

of the Payoff Amount (as defined in the Payoff Letter), pursuant to sections 364(c)(2), 364(c)(3),

and 364(d) of the Bankruptcy Code, the DIP Agent (for itself and the ratable benefit of the

Lenders party to the DIP Loan Documents) is hereby granted, continuing valid, binding,

enforceable, non-avoidable and automatically and properly perfected postpetition security

interests in and liens on (collectively, the "**DIP Liens**") any and all presently owned and

hereafter acquired assets and real and personal property of the Debtors, including, without

limitation, the following (the "**DIP Collateral**"):

(i)      all Accounts[6] (including health care receivables);

(ii)     all Chattel Paper (whether tangible or intangible);

(iii)    all Documents (including, if applicable, electronic documents);

(iv)     all General Intangibles (including, without limitation, any payment

intangibles, Software, and Intellectual Property);

(v)      all Goods (including, without limitation Inventory, Equipment and

Fixtures);

(vi)     all Instruments;

(vii)    all Investment Property, Stock and other equity interests of any type or

nature whatsoever;

(viii)   all Deposit Accounts, including Local Deposit Accounts, Concentration

Accounts, Disbursement Accounts, and all other bank accounts and all deposits therein;

(ix)     all money, cash or cash equivalents;

---

[6]  All defined terms in the description of DIP Collateral shall have the meanings ascribed thereto in the DIP Loan
Documents.  All terms not specifically defined in the DIP Loan Documents shall have the meanings ascribed to such
terms in Article 8 or 9 of the Uniform Commercial Code, as applicable.

(x)     all credit balances, deposits and other property now or hereafter held or received by or in transit to the DIP Agent or at any other depository or other institution from or for the account of any Debtor, whether for safekeeping, pledge, custody, transmission, collection or otherwise;

(xi)    all Supporting Obligations and Letter of Credit Rights (whether or not any such Letter of Credit is in writing) of the Debtors;

(xii)   all commercial tort claims;

(xiii)  all proceeds of leases of real property and all owned real property;[7]

(xiv)   the Debtors' rights under Section 506(c) and Section 550 of the Bankruptcy Code and the proceeds thereof;

(xv)    to the extent not otherwise described above, all receivables and all present and future claims, rights, interests, assets and properties recovered by or on behalf of any Debtor;

(xvi)   all books, records, and information relating to any of the foregoing and/or to the operation of any Debtor's business, and all rights of access to such books, records, and information, and all property in which such books, records and information are stored, recorded and maintained; and

(xvii)  to the extent not otherwise included, all Proceeds, tort claims, insurance claims, contract rights, rights to the payment of money, and other rights to payment not otherwise included in the foregoing and products of the foregoing and all accessions to, substitutions and replacements for, and rents and profits of, each of the foregoing.

---

[7] For the avoidance of doubt, the DIP Liens extend only to the proceeds of leased real property and are not direct liens on the Debtors' leases of real property unless such liens are expressly permitted pursuant to the underlying lease documents.

- 20 -

For the avoidance of doubt, the DIP Collateral shall not include any actions to avoid a transfer of property (or an interest in property) or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including, without limitation, actions under Chapter 5 and Section 724(a) of the Bankruptcy Code (other than Section 549 of the Bankruptcy Code) (collectively, "**Avoidance Actions**").

(b)    Effective upon the entry of this Final Order and the payment of the Payoff Amount (as defined in the Payoff Letter), all DIP Liens and the DIP Carve Out shall each be and remain at all times senior to the Prepetition Liens, and all existing blocked account agreements, collateral access agreements, deposit control agreements, securities account agreements, credit card acknowledgements, credit card agreements, landlord agreements, warehouse agreements, bailee agreements, customs broker agreements, freight forwarder agreements or filings with the United States Patent and Trademark Office or the Library of Congress with respect to the recordation of an interest in intellectual property which were filed by the Prepetition Senior Agent on any Debtor's assets (real or personal) shall be deemed terminated. Except as provided in the Payoff Letter, effective upon the entry of this Final Order and the Payoff Effective Time, any and all interests of the Prepetition Senior Agent in the Debtors' assets and properties shall terminate and the Debtors, their counsel and counsel to the DIP Agent each are expressly and immediately authorized and empowered to execute and deliver applicable documents (which may include a copy of this Final Order) evidencing the termination of such interests. The DIP Agent is hereby deemed to be the successor to the Prepetition Senior Agent under the terms of the Subordination Agreement and shall have all of the rights and remedies accorded to the "First Lien Agent" under the Subordination Agreement.

7.    DIP Lien Priority.

- 21 -

(a)    *DIP Liens.* The DIP Liens shall be junior only to the (i) DIP Carve Out, and (ii) the Prepetition Permitted Liens, and effective upon the payment of the Payoff Amount shall otherwise be senior in priority and superior to the Prepetition Liens, the Adequate Protection Liens (as defined herein) and Adequate Protection Superpriority Claims (as defined herein) and any other security, mortgage, collateral interest, lien or claim on or to any of the DIP Collateral.

(b)    Other than as set forth herein or as further ordered by the Court, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases. The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or Successor Cases. The DIP Liens shall not be subject to challenge under Sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to Section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

(c)    *Prepetition Liens.* For the avoidance of doubt, effective upon payment of the Payoff Amount, the Prepetition Liens shall be junior to the (i) DIP Carve Out; (ii) DIP Liens; (iii) the Adequate Protection Liens described in paragraph 12 below; (iv) the Adequate Protection Superpriority Claims; and (v) Prepetition Permitted Liens.

8.    DIP Superpriority Claim.

(a)    *DIP Agent Superpriority Claim.* Upon entry of this Final Order and payment of the Payoff Amount, the DIP Agent (for itself and the ratable benefit of the Lenders

party to the DIP Loan Documents) is hereby granted, pursuant to Section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (collectively, the "**DIP Superpriority Claim**") for all DIP Obligations. Effective upon payment of the Payoff Amount, the DIP Superpriority Claim shall be subordinate only to the DIP Liens, the DIP Carve Out and Prepetition Permitted Liens, and shall otherwise have priority over any and all administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code Sections 503(b) and 507(b), as provided under Section 364(c)(1) of the Bankruptcy Code. The DIP Superpriority Claims shall not be satisfied from Avoidance Actions or any recoveries therefrom.

(b)     *Priority of DIP Superpriority Claim.* Effective upon payment of the Payoff Amount, the DIP Superpriority Claim shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof (except Avoidance Actions), subject only to the payment in full in cash of the DIP Obligations, the DIP Carve Out and amounts secured by the Prepetition Permitted Liens.

9.     No Obligation to Extend Credit. The DIP Agent and the DIP Lenders shall not have any obligation to make any loan or advance under the DIP Loan Documents unless all of the conditions precedent to the making of such extension of credit or the issuance of such letter of credit under the applicable DIP Loan Documents and this Final Order have been satisfied in full or waived by the DIP Agent in its sole discretion (or, in respect of the making of Tranche B Advances, waived by the Tranche B Lender, in its sole discretion).

10.     Use of DIP Facility Proceeds. Unless ordered otherwise by the Court after notice and a hearing, and subject to the DIP Agent's right to declare an Event of Default in accordance with the DIP Loan Documents, from and after the Petition Date, the Debtors shall use advances

of credit under the DIP Facility only for the purposes specifically set forth in this Final Order, the DIP Loan Documents, the Payoff Letter, and in compliance with the Budget, a copy of which has been delivered to the DIP Agent and the Prepetition Subordinated Secured Creditors.

## Authorization to Use Cash Collateral

11.     Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Final Order and the DIP Loan Documents, and in accordance with the Budget, the Debtors are authorized to use Cash Collateral until the Termination Date; provided, however, that during the Remedies Notice Period (as defined herein) the Debtors may use Cash Collateral in accordance with the terms and provisions of the Budget solely to meet payroll and to pay expenses critical to the preservation of the Debtors and their estates as agreed by the DIP Agent in its sole discretion or upon order of the Court.  Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business (which shall be subject to further Orders of this Court), or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Final Order, the DIP Loan Documents, and in accordance with the Budget.

12.     Payoff Letter and Adequate Protection Liens.

(a)     *Prepetition Senior Agent – Payoff Letter.*   Each of the Debtors and the Prepetition Senior Agent shall comply with the terms and provisions of the Payoff Letter  The Debtors' residual interest in any amounts payable or potentially payable to any of them under the terms of the Payoff Letter shall be subject to the DIP Liens in accordance with the priorities set forth in this Final Order and the DIP Loan Documents.

(b)     *Prepetition Senior Agent and Prepetition Subordinated Secured Creditors – Adequate Protection Liens.*   Each of the Prepetition Senior Agent and Prepetition Subordinated Secured Creditors are hereby granted valid and perfected replacement and additional security

- 24 -

interests in, and liens on all of the Debtors' right, title and interest in, to and under all DIP Collateral (the "**Adequate Protection Liens**").  The Adequate Protection Liens granted to the Prepetition Senior Agent shall secure only the Surviving Obligations and shall be senior in all respects to the Adequate Protection Liens granted to the Prepetition Second Lien Agent and Third Lien Lender.  The Adequate Protection Liens granted to the Prepetition Second Lien Agent shall be senior in all respects to the Adequate Protection Liens granted to the Prepetition Third Lien Lender. The Adequate Protection Liens are and shall be valid, binding enforceable and fully perfected as of the date hereof and subordinate and subject to (i) the DIP Liens, (ii) the Permitted Prior Liens, and (iii) the DIP Carve Out.

(c)     *Treatment of Adequate Protection Liens.*  Other than as set forth herein or as further ordered by the Court, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases.  The Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or Successor Cases.

13.     Adequate Protection Superpriority Claims.

(a)     *Superpriority Claim of Prepetition Senior Agent and Prepetition Subordinated Secured Creditors.*  As further adequate protection of the interests of the Prepetition Senior Agent with respect to the Surviving Obligations and the Prepetition Subordinated Secured Creditors, each of Prepetition Senior Agent and the Prepetition Subordinated Secured Creditors is hereby granted an allowed administrative claim against the Debtors' estates under Sections 503 and 507(b) of the Bankruptcy Code (the "**Adequate**

**Protection Superpriority Claims**") to the extent that the Adequate Protection Liens do not adequately protect against any diminution in the value of the Prepetition Subordinated Secured Creditors' interests in the Prepetition Collateral. The Adequate Protection Superpriority Claims shall not be satisfied from Avoidance Actions or any recoveries therefrom.

(b)      *Priority of Adequate Protection Superpriority Claims.* The Adequate Protection Superpriority Claim granted to the Prepetition Senior Agent shall be senior in all respects to the Adequate Protection Superpriority Claim granted to the Second Lien Agent and the Prepetition Third Lien Lender. The Adequate Protection Superpriority Claim granted to the Second Lien Agent shall be senior in all respects to the Adequate Protection Superpriority Claim granted to the Prepetition Third Lien Lender. Each of the Adequate Protection Superpriority Claims shall be junior to the DIP Carve Out and the DIP Liens, the DIP Superpriority Claim and the Adequate Protection Liens and shall otherwise have priority over administrative expenses of the kinds specified in or ordered pursuant to Sections 503(b), and 507(b) of the Bankruptcy Code.

## Provisions Common to DIP Financing and Use of Cash Collateral Authorizations

14.      Amendments. The DIP Loan Documents may from time to time be amended, modified or supplemented by the parties thereto without notice or a hearing if: (i) in the reasonable judgment of the Debtors and the DIP Agent, the amendment, modification, or supplement (A) is in accordance with the DIP Loan Documents (it being understood that any amendment of the DIP Loan Documents affecting the Tranche B Commitment must be consented to by the Tranche B Lender) provided that any amendment adversely affecting unsecured creditors, 503(b)(9) claimants, the Committee, or the Committee's professionals must be consented to by the Committee, (B) is not prejudicial in any material respect to the rights of third parties (including the Prepetition Subordinated Secured Creditors), and (C) has been

- 26 -

consented to by the DIP Agent, and (ii) a copy (which may be provided through electronic mail or facsimile) of the amendment, modification or supplement is provided to counsel for the Committee, the Prepetition Subordinated Secured Creditors and the U.S. Trustee at least one (1) Business Day prior to the effective date of the amendment, modification or supplement.

15.    Budget Maintenance.  The Budget and any modification to, or amendment or update of, the Budget shall be in form and substance reasonably acceptable to the DIP Agent and approved by the DIP Agent in its sole discretion, provided, however, that any modification to or amendment of the Budget adversely affecting general unsecured creditors, 503(b)(9) claimants, the Committee, or the Committee's professionals shall require the consent of the Committee and provided further that any modification to or amendment of the Budget adversely affecting the Prepetition Subordinated Secured Lenders shall require the consent of the Prepetition Subordinated Secured Lenders.  The Debtors shall comply with and update the Budget from time to time in accordance with the DIP Loan Documents (provided that any update shall be in form and substance reasonably acceptable to the DIP Agent and approved by the DIP Agent in its sole discretion), but in any event not less than on a weekly basis (with delivery to the DIP Agent and the Tranche B Lender on or before Wednesday of each week and to the United States Trustee and the Committee each week after delivery to the DIP Agent and the Tranche B Lender).

16.    Modification of Automatic Stay.  The automatic stay imposed under Bankruptcy Code Section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to:  (a) permit the Debtors to grant the DIP Liens, the Adequate Protection Liens, the DIP Superpriority Claim, and the Adequate Protection Superpriority Claims; and (b) authorize the Debtors to pay, and the DIP Agent and Prepetition

RLF1 8904408v.8

Secured Creditors to retain and apply, payments made in accordance with the terms of this Final Order.

17.    Perfection of DIP Liens and Adequate Protection Liens.

(a)    *Automatic Perfection of Liens.*  This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, collateral access agreement, customs broker agreement or freight forwarding agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens, or to entitle the DIP Agent or the Prepetition Secured Creditors to the priorities granted herein.  Notwithstanding the foregoing, the DIP Agent is authorized to file, as it in its sole discretion deems necessary, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence any of the DIP Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create, perfect or enforce the DIP Liens.  The Debtors are authorized to execute and deliver promptly upon demand to the DIP Agent all such financing statements, mortgages, control agreements, notices and other documents as the DIP Agent may reasonably request.  The DIP Agent, in its sole discretion, may file a photocopy of this Final Order as a financing statement

with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument.

18.    Intentionally Omitted.

19.    Application of Proceeds of DIP Collateral.  As a condition to the entry into the DIP Loan Documents, the extension of credit under the DIP Facility and the authorization to use Cash Collateral, the Debtors have agreed that the proceeds of DIP Collateral shall be applied as follows:

(a)    (i) all payments received by the DIP Agent in respect of any DIP Obligation and all funds transferred and credited to the "Concentration Account" maintained by the Debtors at Wells Fargo Bank, National Association and (ii) all net proceeds from any Disposition of DIP Collateral, each shall be applied:  *first*, to payment of fees, costs and expenses, including Credit Party Expenses payable and reimbursable by the Debtors under the DIP Credit Agreement and the other DIP Loan Documents; *second*, to payment of interest with respect to the DIP Obligations, *third*, to payment of all DIP Obligations (including the Tranche B Lender) in accordance with the DIP Loan Documents; and *fourth*, to the Debtor Parties' operating account, or for the account of and paid to whomever may be lawfully entitled thereto.

(b)    The Debtors shall not, directly or indirectly, voluntarily purchase, redeem, defease, prepay any principal of, premium, if any, interest or other amount payable in respect of any indebtedness prior to its scheduled maturity, other than the DIP Obligations and the Prepetition Senior Obligations (each in accordance with the DIP Loan Documents, the Payoff Letter and this Final Order) and obligations authorized under the Debtors' "first-day" orders.

20.    Proceeds of Subsequent Financing.  If the Debtors, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently

appointed in these Cases or any Successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code Sections 364(b), 364(c) or 364(d) in violation of the DIP Loan Documents at any time prior to the repayment in full of all DIP Obligations and the termination of the DIP Agent's obligation to extend credit under the DIP Facility, including subsequent to the confirmation of any plan of reorganization or liquidation with respect to any or all of the Debtors and the Debtors' estates, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied as set forth in paragraph 19(a) herein.

21.     Maintenance of DIP Collateral.   Until the payment in full in cash of all DIP Obligations and the termination of the DIP Agent's and the DIP Lenders' obligations to extend credit under the DIP Facility, as provided therein, the Debtors shall:  (a) insure the DIP Collateral as required under the DIP Facility; and (b) maintain the cash management system which has been agreed to by the DIP Agent or as otherwise required by the DIP Loan Documents.

22.     Disposition of DIP Collateral; Rights of DIP Agent.   Unless otherwise authorized by the Court, the Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral except as permitted by the DIP Loan Documents.   Nothing provided herein shall limit the right of the DIP Agent, the DIP Lenders or the Prepetition Subordinated Secured Creditors to object to any proposed disposition of the DIP Collateral.

23.     Reserved.

24.     Termination Date.   On the Termination Date, (i) all DIP Obligations shall be immediately due and payable, and all commitments to extend credit under the DIP Facility, including the Tranche B Commitment, will terminate, and (ii) all authority to use Cash Collateral derived from the proceeds of DIP Collateral shall cease, provided, however, that during the

- 30 -

Remedies Notice Period (as defined herein), the Debtors may use Cash Collateral solely as set forth in paragraph 11 herein.

25.     Events of Default.  The occurrence of an "Event of Default" under the DIP Credit Agreement (unless the DIP Agent or the Tranche B Lender (as applicable under the DIP Credit Agreement), in its respective sole discretion, elects to waive such Event of Default) shall constitute an event of default under this Final Order (each, an "**Event of Default**").

26.     Rights and Remedies Upon Event of Default.

(a)     *DIP Facility Termination.*     Immediately upon the occurrence and during the continuance of an Event of Default, the DIP Agent may in its discretion (i) declare the DIP Facility terminated (such declaration, a "**Termination Declaration**") or (ii) send a reservation of rights notice to the Debtors, which notice may advise the Debtors that any further advances under the DIP Facility will be made in the sole discretion of the DIP Agent or the Tranche B Lender, as applicable.  Upon the issuance of a Termination Declaration, at the DIP Agent's option: (I) all or any portion of the Commitment of the DIP Agent and DIP Lenders to make Advances (including the Tranche B Lender's commitment to extend credit) or otherwise extend credit may be suspended or terminated; (II) all DIP Obligations may be deemed immediately due and payable; and (III) after three (3) Business Days from the Termination Declaration Date, any right or ability of the Debtors to use any Cash Collateral (other than as expressly set forth in this Final Order during the Remedies Notice Period) may be terminated, reduced or restricted by the DIP Agent, provided that during such three (3) Business Day period, the Debtors may use Cash Collateral in accordance with the Budget solely to meet payroll and to pay expenses critical to the preservation of the Debtors and their estates as agreed by the DIP Agent or ordered by the Court.  With respect to the DIP Collateral, following the Termination Declaration, subject to the

- 31 -

Remedies Notice Period, the DIP Agent and the DIP Lenders may exercise all rights and remedies available to them under the DIP Loan Documents or applicable law against the DIP Collateral. Without limiting the foregoing, the DIP Agent and the DIP Lenders may, subject to the Remedies Notice Period (i) enter onto the premises of any Debtor Party in connection with an orderly liquidation of the DIP Collateral; and/or (ii) exercise any rights and remedies provided to the DIP Agent and the DIP Lenders under the DIP Loan Documents or at law or equity, including all remedies provided under the Bankruptcy Code and pursuant to this Final Order. Following the termination of the Remedies Notice Period, the DIP Agent may require the Debtor Parties to seek authority from the Court to retain an Approved Liquidator for the purpose of conducting a liquidation or "going out of business" sale and/or the orderly liquidation of the DIP Collateral and, if Debtors refuse to seek such authority, the DIP Agent shall be entitled to seek such authority directly. Nothing in this Final Order shall limit the Tranche B Lender's rights and remedies with respect to the Tranche B Commitment provided under the DIP Loan Documents or applicable law.

(b)    *Notice of Termination.*  Any Termination Declaration shall be given by facsimile (or other electronic means) to counsel to the Debtors, counsel to the Prepetition Subordinated Secured Creditors, counsel to the Committee, and the U.S. Trustee (the earliest date any such Termination Declaration is made shall be referred to herein as the "**Termination Declaration Date**"). The DIP Obligations shall be due and payable, and the Tranche B Lender shall have no obligation to continue providing trade credit to the Debtors, without notice or demand, and the use of Cash Collateral shall automatically cease on the Termination Declaration Date, except as provided in paragraphs 11 and 26 of this Final Order. Any automatic stay otherwise applicable to the DIP Agent and the DIP Lenders is hereby modified so that three (3)

- 32 -

business days after the Termination Declaration Date (the "**Remedies Notice Period**"), the DIP Agent and the DIP Lenders shall be entitled to exercise all rights and remedies against the DIP Collateral in accordance with the DIP Loan Documents and this Final Order and shall be permitted to satisfy the DIP Superpriority Claim and the DIP Liens, subject only to the DIP Carve Out, and Permitted Liens. During the Remedies Notice Period, the Debtors and the Committee shall be entitled to seek an emergency hearing with the Court for the sole purpose of contesting whether an Event of Default has occurred and/or is continuing. Unless the Court determines otherwise during the Remedies Notice Period, the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice or order and the DIP Agent and the DIP Lenders shall be permitted to exercise all remedies set forth herein, in the DIP Credit Agreement, the DIP Loan Documents, and as otherwise available at law against the DIP Collateral, without further order of or application or motion to the Court, and without restriction or restraint by any stay under Sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the DIP Collateral or any other rights and remedies granted to the DIP Agent with respect thereto pursuant to the DIP Credit Agreement, the other DIP Loan Documents, or this Final Order.

27.    Good Faith Under Section 364 of the Bankruptcy Code; No Modification or Stay of this Final Order. The DIP Agent and each DIP Lender have acted in good faith in connection with this Final Order and its reliance on this Final Order is in good faith. Based on the findings set forth in this Final Order and the record made during the Interim Hearing and the Final Hearing, and in accordance with Section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Final Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Agent and each of the DIP Lenders are entitled to

- 33 -

the protections provided in Section 364(e) of the Bankruptcy Code. Any such modification, amendment or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim or priority authorized or created hereby, provided that this Final Order was not stayed by court order after due notice had been given to the DIP Agent and the Tranche B Lender at the time the advances were made or the liens, claims or priorities were authorized and/or created. Any liens or claims granted to the DIP Agent and the DIP Lenders hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges and benefits granted herein, provided that this Final Order was not stayed by court order after due notice had been given to the DIP Agent and each DIP Lender at the time the advances were made or the liens, claims or priorities were authorized and/or created.

28. <u>DIP and Other Expenses</u>. The Debtors are authorized to pay all reasonable out-of-pocket expenses of the DIP Agent and the Tranche B Lender in connection with the DIP Facility (including, without limitation, expenses incurred prior to the Petition Date), as provided in the DIP Loan Documents, whether or not the transactions contemplated hereby are consummated, including, without limitation, legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of fees and expenses, upon the Debtors' receipt of invoices for the payment thereof. Payment of all such fees and expenses shall not be subject to allowance by the Court and professionals for the DIP Agent and the Tranche B Lender shall not be required to comply with the U.S. Trustee fee guidelines. Notwithstanding the foregoing, at the same time such invoices are delivered to the Debtors, the professionals for the DIP Agent and

the Tranche B Lender shall deliver a copy of their respective invoices to counsel for the Committee, the Prepetition Subordinated Secured Creditors and the U.S. Trustee, redacted as necessary with respect to any privileged or confidential information contained therein. Any objections raised by the Debtors, the U.S. Trustee, the Prepetition Subordinated Secured Creditors or the Committee with respect to such invoices within ten (10) Business Days of the receipt thereof will be resolved by the Court. In the event of any objection, the provisions of Section 107 of the Bankruptcy Code and Rule 9018 of the Federal Rules of Bankruptcy Procedure shall apply. Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Debtors. Notwithstanding the foregoing, the Debtors are authorized to pay on the Closing Date all reasonable fees, costs and expenses of the DIP Agent and the Tranche B Lender incurred on or prior to such date without the need for any professional engaged by the DIP Agent or the Tranche B Lender to first deliver a copy of its invoice as provided for herein.

29.   Indemnification.  The Debtors shall indemnify and hold harmless the DIP Agent and the Tranche B Lender and their respective shareholders, members, directors, agents, officers, subsidiaries and affiliates, successors and assigns, attorneys and professional advisors, in their respective capacities as such, from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, whether groundless or otherwise, and reasonable costs and expenses incurred, suffered, sustained or required to be paid by an indemnified party of every nature and character arising out of or related to the DIP Loan Documents, or the DIP Facility or the transactions contemplated thereby and by this Final Order, whether such indemnified party is party thereto, as provided in and pursuant to the terms of the DIP Loan Documents and as further described therein and herein, or in connection with these

- 35 -

Cases, any plan, or any action or inaction by the Debtors, in each case except to the extent resulting from such indemnified party's gross negligence or willful misconduct as finally determined by a final non-appealable order of a court of competent jurisdiction. The indemnity includes indemnification for the DIP Agent's and the Tranche B Lender's exercise of discretionary rights granted under the DIP Facility. In all such litigation, or the preparation therefor, the DIP Agent and the Tranche B Lender shall be entitled to select its own counsel and, in addition to the foregoing indemnity, the Debtors agree to promptly pay the reasonable fees and expenses of such counsel.

30.     Proofs of Claim.   Any order entered by the Court in relation to the establishment of a bar date for any claims (including without limitation administrative claims) in any of the Cases or Successor Cases shall not apply to the DIP Agent, the Tranche B Lender, Prepetition Senior Agent or the Prepetition Subordinated Secured Creditors. Neither the DIP Agent, the Tranche B Lender, Prepetition Senior Agent nor the Prepetition Subordinated Secured Creditors will be required to file proofs of claim or requests for approval of administrative expenses in any of the Cases or Successor Cases, and the provisions of this Final Order relating to the amount of the DIP Obligations, the DIP Superpriority Claim, Prepetition Senior Obligations and Prepetition Subordinated Obligations shall constitute timely filed proofs of claim and/or administrative expense requests.

31.     Rights of Access and Information.   Without limiting the rights of access and information afforded the DIP Agent and the DIP Lenders under the DIP Loan Documents, the Debtors shall be, and hereby are, required to afford representatives, agents and/or employees of the DIP Agent and DIP Lenders reasonable access to the Debtors' premises and their books and records in accordance with the DIP Loan Documents, and shall reasonably cooperate, consult

- 36 -

with, and provide to such persons all such information as may be reasonably requested.   In addition, the Debtors authorize their independent certified public accountants, financial advisors, investment bankers and consultants to cooperate, consult with, and provide to the DIP Agent all such information as may be reasonably requested with respect to the business, results of operations and financial condition of any Debtor Party.

32.   DIP Carve Out.

(a)   *DIP Carve Out.*   As used in this Final Order, the "**DIP Carve Out**" means, collectively, the following expenses: (i) all statutory fees required to be paid to (a) the Clerk of the Bankruptcy Court  pursuant to 28 U.S.C. § 1930(a), and (b) to the Office of the United States Trustee pursuant to 28 U.S.C. §1930(a)(6), as determined by agreement of the United States Trustee or by final order of the Court; (ii) upon the occurrence of any Event of Default and delivery of a written notice by the DIP Agent to lead counsel for the Debtors and the Committee, the Tranche B Lender and the U.S. Trustee (a "**Carve Out Trigger Notice**"), an aggregate amount equal to $500,000 (the "**Case Professionals DIP Carve Out Amount**"), which amount may be used subject to the terms of this Final Order to pay (A) allowed and unpaid professional fees and expenses of the Debtors' and the Committee's professionals, retained by either of them by final order of the Court (which order has not been reversed, vacated or stayed unless such stay is no longer effective) under Sections 327 or 1103(a) of the Bankruptcy Code (the "**Case Professionals**"), to the extent such fees and expenses are allowed and payable pursuant to an order of the Court (which order has not been reversed, vacated or stayed) ("**Allowed Professional Fees**"), (B) the reimbursement of out-of-pocket expenses allowed by the Bankruptcy Court incurred by the Committee members in the performance of their duties (but excluding fees and expenses of third party professionals employed by such

- 37 -

members) ("**Committee Fees**"), in each case, incurred after the delivery of a Carve Out Trigger Notice, and (C) any Allowed Professional Fees of Case Professionals incurred, irrespective of allowance date, but unpaid prior to the receipt of the Carve Out Trigger Notice. No portion of the DIP Carve Out, any cash collateral or proceeds of the DIP Loan may be used in violation of this Final Order, including paragraph 33 hereof. So long as the Carve Out Trigger Notice has not been delivered, the Debtors shall be permitted to pay, as the same may become due and payable and as allowed by the Bankruptcy Court, fees and expenses of Case Professionals provided for in the Budget and payable under 11 U.S.C. § 330 and § 331 pursuant to court order, and the same shall not reduce the Case Professionals DIP Carve Out Amount. The Case Professionals DIP Carve Out Amount shall be funded, in full, on the Closing Date of the DIP Facility into an account maintained by counsel to the Debtors, for the benefit of the Case Professionals. In the event that the Allowed Professional Fees payable from the DIP Carve Out are less than the Case Professionals DIP Carve Out Amount, the excess shall be returned to the DIP Agent for application in accordance with paragraph 19 of this Final Order. The DIP Liens, Adequate Protection Liens, and the liens of the Prepetition Subordinated Secured Creditors are hereby deemed to attach to the Debtors' residual interest in such excess.

(b)    *No Direct Obligation to Pay Professional Fees or Committee Expenses.* Except for funding the DIP Carve Out Amount as provided herein, the DIP Agent, the DIP Lenders, Prepetition Senior Agent, the lenders under the Prepetition Credit Documents, and the Prepetition Subordinated Secured Creditors shall not be responsible for the funding, direct payment or reimbursement of any fees or disbursements of any Case Professionals or any Committee Expenses incurred in connection with the Cases or any Successor Cases. Nothing in this Final Order or otherwise shall be construed to obligate the DIP Agent, Prepetition Senior

RLF1 8904408v.8

Agent, the lenders under the Prepetition Senior Credit Agreement or the Prepetition Subordinated Secured Creditors, in any way to pay compensation to or to reimburse expenses of any Case Professional (including any Committee Expenses), or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement. Nothing in this Final Order or otherwise shall be construed to increase the DIP Carve Out if actual (i) Allowed Professional Fees of any Case Professional or (ii) Committee Expenses are higher in fact than the estimated fees and disbursements reflected in the Budget.

(c)     *Payment of DIP Carve Out After Carve Out Trigger Notice.* Any payment or reimbursement made on or after the delivery of the Carve Out Trigger Notice in respect of any Allowed Professional Fees (exclusive of the application of any retainers by any of the Professionals) or Committee Expenses shall permanently reduce the Case Professionals DIP Carve Out Amount on a dollar-for-dollar basis. The funding of the DIP Carve Out shall be added to and made a part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this Final Order, the DIP Loan Documents, the Bankruptcy Code and applicable law.

33.     Limitations on the DIP Facility, the DIP Collateral, the Cash Collateral and the Case Professionals DIP Carve Out. The DIP Facility, the DIP Collateral, the Cash Collateral and the DIP Carve Out may not be used: (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) adverse to the interests of the Prepetition Subordinated Secured Creditors, the DIP Agent, or the Tranche B Lender or their rights and remedies under the DIP Loan Documents, the Prepetition Subordinated Credit Documents or this Final Order, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtors or the Committee in connection

- 39 -

with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the DIP Obligations or the Prepetition Subordinated Obligations, (iii) for monetary, injunctive or other affirmative relief against the DIP Agent, Tranche B Lender, or the Prepetition Subordinated Secured Creditors, or their respective collateral, (iv) preventing, hindering or otherwise delaying the exercise by the DIP Agent, Tranche B Lender, Prepetition Senior Agent, the Prepetition Subordinated Secured Creditors of any rights and remedies under this Final Order, the DIP Loan Documents, the Prepetition Subordinated Credit Documents or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the DIP Agent upon any of the DIP Collateral, by the Prepetition Subordinated Secured Creditors upon any of its Prepetition Collateral, or (v) against the Prepetition Subordinated Secured Creditors; (b) to make any distribution under a plan of reorganization in any Chapter 11 Case; (c) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without the prior written consent of the DIP Agent or the Prepetition Subordinated Secured Creditors, as applicable, unless otherwise ordered by this Court; (d) to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests in any of the Debtors without the prior written consent of the DIP Agent, (e) objecting to, contesting, or interfering with, in any way, the DIP Agent's or the DIP Lenders' enforcement or realization upon any of the DIP Collateral once an Event of Default has occurred, except as provided for in this Final Order, or seeking to prevent the DIP Agent from credit bidding in connection with any proposed plan or reorganization or liquidation or any proposed transaction

- 40 -

pursuant to Section 363 of the Bankruptcy Code; (f) using or seeking to use Cash Collateral while the DIP Obligations remain outstanding, without the consent of the DIP Agent, in a manner inconsistent with the Budget; (g) using or seeking to use any insurance proceeds constituting DIP Collateral without the consent of the DIP Agent; (h) incurring Indebtedness (as defined in the DIP Credit Agreement) outside the ordinary course of business without the prior consent of the DIP Agent, except as permitted under the DIP Loan Documents; (i) objecting to or challenging in any way the claims, liens, or interests held by or on behalf of the DIP Agent or the Prepetition Subordinated Secured Creditors; (j) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, against the DIP Agent or the Prepetition Subordinated Secured Creditors; (k) prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the Prepetition Subordinated Obligations, the DIP Liens, or the Prepetition Subordinated Liens or any other rights or interests of the DIP Agent or the Prepetition Subordinated Secured Creditors; or (l) in an amount greater than $100,000 to investigate or pursue a Challenge, without the consent of the Prepetition Subordinated Secured Creditors.  The provisions of this paragraph 33(i) through (l) shall not preclude the Committee from taking a position before the Court with respect to the matters raised therein or the Court from issuing any appropriate order in connection therewith.  Notwithstanding the foregoing, nothing herein shall be deemed to (x) limit the ability of the Committee's professionals to be paid from the GUC Trust, (y) preclude the Court from awarding fees and expenses of the Committee's professionals pursuant to section 330 of the Bankruptcy Code for such services rendered and related disbursements, or (z) relieve the Debtors or any plan proponent(s) from the obligation to pay all administrative expenses in

connection with confirmation of any plan. The Committee is hereby granted standing to assert any Challenge (as defined herein) against the Prepetition Senior Agent and the lenders under the Prepetition Senior Credit Agreement.

34.     Payment of Compensation. Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Case Professionals or shall affect the right of the DIP Agent or any of the DIP Lenders to object to the allowance and payment of such fees and expenses. So long as no Event of Default has occurred and is continuing, the Debtors shall be permitted to pay fees and expenses allowed and payable by order (that has not been vacated or stayed, unless the stay has been vacated) under Sections 330 and 331 of the Bankruptcy Code, as the same may be due and payable, and to the extent set forth in the Budget.

35.     Reservation of Certain Third Party Rights and Bar of Challenges and Claims.

(a)     The stipulations, findings, representations and releases contained in this Final Order or the Payoff Letter with respect to the Prepetition Senior Agent and the Prepetition Senior Obligations shall be binding upon all parties-in-interest, any trustee appointed in these cases and the Committee (each, a "**Challenge Party**"), unless and solely to the extent that (i) the Committee commences a Challenge (defined below) during the Challenge Period, or the Debtors received from a Challenge Party other than the Committee a notice of a potential Challenge (defined below) during the Challenge Period (defined below) and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge. For purposes of this paragraph 35: (a) "**Challenge**" means any claim against the Prepetition Senior Agent on behalf of the Debtors or the Debtors' creditors and interest holders, or to object to or to challenge the stipulations, findings or Debtors' Stipulations set forth herein, including, but not limited to those in relation to: (i) the validity, extent, priority, or perfection of the mortgage, security interests, and liens of

the Prepetition Senior Agent; (ii) the validity, allowability, priority, or amount of the Prepetition Senior Obligations (including any fees included therein); (iii) the secured status of the Prepetition Senior Obligations; or (iv) any liability of the Prepetition Senior Agent with respect to anything arising from any of the Prepetition Senior Credit Documents; and (b) "**Challenge Period**" means (x) with respect to the Committee, the period ending on the date that is one hundred and twenty (120) days from the date of entry of this Order, subject to extension for cause shown by the Committee, and (y) with respect to any party-in-interest other than the Committee, the period from the Petition Date until the date that is seventy five (75) calendar days after the entry of the Interim Order. The Committee shall use good faith efforts to complete its investigation relating to the Prepetition Senior Agent expeditiously. Upon completion of the Committee's investigation, if the Committee determines it will not pursue a Challenge with respect to the Prepetition Senior Agent, the Committee shall promptly send notice of such determination to the Debtors, the Prepetition Senior Agent, and the Prepetition Second Lien Agent, and upon the sending of such notice, the Challenge Period with respect to the Committee will expire.

(b)     Upon the expiration of the Challenge Period (the "**Challenge Period Termination Date**"), without the filing of a Challenge: (A) any and all such Challenges and objections by any party (including, without limitation, the Committee, any Chapter 11 trustee, and/or any examiner or other estate representative appointed in these Cases, and any Chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case) shall be deemed to be forever waived, released and barred, (B) all matters not subject to the Challenge, findings, Debtors' Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to each Prepetition Secured Creditors' claims, liens, and interests

RLF1 8904408v.8

shall be of full force and effect and forever binding upon the Debtors, the Debtors' bankruptcy estates and all creditors, interest holders, and other parties in interest in these Cases and any Successor Cases; and (C) any and all claims or causes of action against any of the Debtors, the Prepetition Senior Agent, or the Prepetition Senior Secured Creditors relating in any way to the Prepetition Senior Credit Documents shall be forever waived and released by the Debtors' estates, all creditors, interest holders and other parties in interest in these Cases and any Successor Cases.

(c)    Upon entry of this Final Order, (i) the Debtors' Stipulations, findings, representations, waivers, affirmations, releases, and other stipulations contained in this Final Order with respect to the Prepetition Subordinated Secured Creditors and the Prepetition Subordinated Obligations and their claims, liens, and interests shall be of full force and effect and forever binding upon the Debtors, the Debtors' bankruptcy estates, all creditors, all interest holders, all parties in interest, any trustee appointed in these cases, and the Committee in these Cases and any Successor Cases, and (ii) any and all claims or causes of action against any of the Prepetition Subordinated Secured Creditors relating in any way to the Prepetition Subordinated Credit Documents shall be forever waived and released by the Debtors' estates, all creditors, interest holders, and other parties in interest in these Cases and any Successor Case.

36.    Reservation of Rights:  Notwithstanding anything to the contrary contained in this Final Order in the event there is a timely and successful Challenge by any party in interest (in accordance with paragraph 35 hereof), this Court may unwind the repayment of the Prepetition Senior Obligations and order the repayment of such amount to the extent that such payment resulted in the payment of any Prepetition Senior Obligations consisting of an unsecured claim or other amount not allowable under Section 502 of the Bankruptcy Code.  Notwithstanding the

foregoing, a successful challenge shall not in any way affect the validity, enforceability or priority of the DIP Obligations or the DIP Liens.

37.    No Third Party Rights. Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

38.    Section 506(c) Claims. No costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the DIP Agent, the DIP Lenders or the DIP Collateral, the Prepetition Senior Agent, the lenders under the Prepetition Senior Credit Agreement or the Prepetition Subordinated Secured Creditors or the Prepetition Senior Liens or the Prepetition Subordinated Liens pursuant to Sections 105 or 506(c) of the Bankruptcy Code, or otherwise.

39.    No Marshaling/Applications of Proceeds. Neither the DIP Agent, Prepetition Senior Agent, lenders under the Prepetition Senior Credit Agreement nor the Prepetition Subordinated Secured Creditors shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral.

40.    Section 552(b). The DIP Agent shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code. The "equities of the case" exception under Bankruptcy Code §552(b) shall not apply to the DIP Agent, Prepetition Senior Agent, the lenders under the Prepetition Senior Credit Agreement or the Prepetition Subordinated Secured Creditors with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral.

41.    Joint and Several Liability. Nothing in this Final Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood,

however, that the Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of the DIP Facility and the DIP Loan Documents.

42.     Discharge Waiver.    The Debtors expressly stipulate, and the Court finds and adjudicates that, none of the DIP Obligations, the DIP Superpriority Claim or the DIP Liens shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of Section 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been paid in full in cash on or before the effective date of a confirmed plan of reorganization. The Debtors expressly stipulate, and the Court finds and adjudicates that, none of the Adequate Protection Liens or Adequate Protection Superpriority Claims shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of Section 1141(d) of the Bankruptcy Code, unless the Adequate Protection Superpriority Claims and claims secured by the Adequate Protection Liens have been paid in full in cash on or before the effective date of a confirmed plan of reorganization. None of the Debtors shall propose or support any plan or sale of all or substantially all of the Debtors' assets or entry of any confirmation order or sale order that is not conditioned upon the payment in full in cash, on the effective date of such plan of all DIP Obligations and Adequate Protection Superpriority Claims. The DIP Superpriority Claim and the DIP Liens, and the Adequate Protection Superpriority Claims and Adequate Protection Liens, shall not be affected in any manner by the entry of an order confirming a plan in the Cases or any Successor Cases.

43.     Rights Preserved.    Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) DIP Agent's, the Tranche B Lender's or the Prepetition Secured Creditors' right to seek any other or supplemental relief in respect of the Debtors (including the right to seek

- 46 -

additional adequate protection, including, without limitation, in the form of reimbursement of fees and expenses of counsel to the Prepetition Secured Creditors); (b) the rights of any of the Prepetition Secured Creditors to seek the payment by the Debtors of post-petition interest or fees pursuant to Section 506(b) of the Bankruptcy Code, or (c) any of the rights of the DIP Agent, the Tranche B Lender or the Prepetition Subordinated Secured Creditors under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of Section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans. Other than as expressly set forth in this Final Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Agent, the DIP Lenders and the Prepetition Subordinated Secured Creditors are preserved.

44.    No Waiver by Failure to Seek Relief. The failure of the DIP Agent or the DIP Lenders to seek relief or otherwise exercise its rights and remedies under this Final Order, the DIP Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Agent or the DIP Lenders.

45.    Binding Effect of Final Order.    Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agents, the Prepetition Secured Creditors, all other creditors of any of the Debtors, the Committee or any other court appointed committee, appointed in the Cases, and all other parties in interest and their respective successors and

assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

46.    <u>No Modification of Final Order</u>.  Until and unless the DIP Obligations have been paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly:  (a) without the prior written consent of the DIP Agent (i) any modification, stay, vacatur or amendment to this Final Order; or (ii) a priority claim for any administrative expense or unsecured claim (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in Sections 503(b), 507(a) or 507(b) of the Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the DIP Superpriority Claim, other than the DIP Carve Out; (b) any order allowing use of Cash Collateral resulting from DIP Collateral; and (c) any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens. The Debtors irrevocably waive any right to seek any material amendment, modification or extension of this Final Order without the prior written consent, as provided in the foregoing, of the DIP Agent, and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent.

47.    <u>Final Order Controls</u>.  In the event of any inconsistency between the terms and conditions of the DIP Loan Documents or this Final Order, the provisions of this Final Order shall govern and control.

48.    <u>Survival</u>.  The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of

RLF1 8904408v.8

reorganization in any of the Cases; (b) converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases. The terms and provisions of this Final Order, including the claims, liens, security interests and other protections granted to the DIP Agent and Prepetition Secured Creditors pursuant to this Final Order and/or the DIP Loan Documents, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Final Order until all DIP Obligations have been paid in full and all commitments to extend credit under the DIP Facility are terminated. The terms and provisions concerning the indemnification of the DIP Agent shall continue in the Cases and in any Successor Cases, following dismissal of the Cases or any Successor Cases, following termination of the DIP Loan Documents and/or the repayment of the DIP Obligations.

49.     Collateral Access.     Notwithstanding anything to the contrary set forth in paragraph 26(a) hereof, upon an Event of Default and three business days' written notice to the applicable real property lessor of such Event of Default (the "**Landlord Notice**"), the DIP Agent and the DIP Lenders shall have the right, following the expiration of such three business day notice period, to enter onto or into such lessor's leased premises in order to exercise its rights with respect to the DIP Collateral in accordance with applicable law, including this Final Order; provided that (a) all of the DIP Agent's, the DIP Lenders' and the lessor's rights and privileges are reserved and (b) the applicable Debtor(s) shall remain obligated to pay any rent and other obligations due under the terms of the lease(s), and in the event that such obligations are not fulfilled by the applicable Debtor(s), the DIP Agent occupying any leased premises as set forth in this paragraph shall pay the monthly base rent and other obligations due under the terms of the

- 49 -

lease(s) of the applicable Debtor(s) under any such lease that arise after the Landlord Notice is delivered, through and including the date on which the DIP Agent vacates the leased premises and provides such lessor with written confirmation of such vacation (the "**Collateral Access Period**"), calculated on a per diem basis.  In addition, the DIP Agent shall promptly repair, at the DIP Agent's cost and expense, any physical damage to the applicable leased premises actually caused by the DIP Agent as a result of its entry onto or into the leased premises, but shall not be liable for any diminution in value of the applicable leased premises caused by the removal or absence of the DIP Collateral.  Subject to any written agreement between the DIP Agent and the applicable landlord, the duration of the DIP Agent's occupancy of the leased premises must be reasonable under the circumstances and each lessor reserves the right to request that this Court, upon motion notice of not less than five business days, limit the Collateral Access Period with respect to its properties.  Nothing in this paragraph shall impair the rights of any party under Section 365 of the Bankruptcy Code.

50.     Effect of this Final Order.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect immediately, notwithstanding anything to the contrary proscribed by applicable law.

51.     Retention of Jurisdiction.  The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

Dated: July 19, 2013
         Wilmington, Delaware

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

RLF1 8904408v.8