**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------- x

| | |
|---|---|
| In re: | :    Chapter 11 |
| | : |
| NE OPCO, INC., et al., | :    Case No. 13-11483 (CSS) |
| | : |
| Debtors.[1] | :    (Jointly Administered) |
| | : |

------------------------------------------------------------- x   **Re: Docket No. 110**

### DEBTORS' OBJECTION TO MOTION OF PLASTIC SUPPLIERS, INC. FOR ALLOWANCE AND IMMEDIATE PAYMENT OF ADMINISTRATIVE EXPENSE

The above-captioned debtors and debtors-in-possession (the "**Debtors**") submit this objection (the "**Objection**") to the *Motion of Plastic Suppliers, Inc. for Allowance and Immediate Payment of Administrative Expense* (the "**Motion**") [Docket No. 110], filed by Plastic Suppliers, Inc. ("**Plastic Suppliers**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**"). In support of the Objection, the Debtors respectfully represent as follows:

### Jurisdiction

1.    The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relevant Background

2.    On June 10, 2013 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code (the "**Bankruptcy Code**"), thereby commencing the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"). As of the date hereof, no trustee or examiner has been appointed in the Chapter 11 Cases. On June 21,

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are NE Opco, Inc. (9830) and NEV Credit Holdings, Inc. (9596). The above-captioned Debtors' mailing address is c/o NE Opco, Inc., 3211 Internet Boulevard, Suite 200, Frisco, Texas 75034.

2013, the Office of the United States Trustee appointed an official committee of unsecured creditors in the Chapter 11 Cases. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.[2]

3.      To date, the Debtors' have not sought to establish and the Court has not established a bar date for asserting claims in the Chapter 11 Cases, including with respect to claims arising under Section 503(b)(9) of the Bankruptcy Code.

4.      Prior to the Petition Date, Plastic Suppliers shipped certain goods to the Debtors for use in the ordinary course of the Debtors' business. In the Motion, Plastic Suppliers sets forth that it delivered goods worth not less than approximately $773,611.87 (the "**Goods**") to the Debtors within the twenty (20) days prior to the Petition Date (the "**503(b)(9) Period**"). *See* Motion ¶ 4. Accordingly, Plastic Suppliers seeks allowance and immediate payment of this amount (the "**Claim**")[3] as an administrative expense claim pursuant to Section 503(b)(9) of the Bankruptcy Code. Id. at ¶ 5. The Debtors do not dispute that Plastic Suppliers delivered goods in the ordinary course of business within the 503(b)(9) Period, and may hold an administrative expense claim pursuant to Section 503(b)(9) of the Bankruptcy Code, but the Debtors dispute the amount of Plastic Supplier's Claim[4] as well as its request for immediate payment of its Claim.

---

[2]      Additional information regarding the Debtors' business and the background relating to events leading up to the Chapter 11 Cases can be found in the *Declaration of James Pinto in Support of Chapter 11 Petitions and First Day Motions* [Docket. No. 3].

[3]      In the Motion, Plastic Suppliers asserts that its claim is approximately $835,166.42, but notes that it cannot verify delivery to the Debtors of that amount of goods within the 20 days preceding the Petition Date. Nevertheless, Plastic Suppliers asserts that it delivered not less than $773,611.87 of goods during the 503(b)(9) Period. *See* Motion ¶ 4, n. 2.

[4]      According to their records, the Debtors' received approximately $602,442.00 in goods from Plastic Suppliers during the 503(b)(9) Period. See **Exhibit A** attached hereto.

2

## Argument

5.    Plastic Suppliers has failed to establish that cause exists for the immediate payment of the Claim.  Section 503(b)(9) of the Bankruptcy Code states, in relevant part:

> After notice and a hearing, there shall be allowed administrative expenses… including… the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

11 U.S.C. § 503(b)(9).  While all other claims under Section 503 of the Bankruptcy Code are for expenses arising during the postpetition period, Section 503(b)(9) of the Bankruptcy Code specifically grants administrative expense status to a select group of prepetition claims.

6.    Section 503(b)(9) of the Bankruptcy Code does not specify a time for payment of administrative expenses.  The only relevant provision is Section 1129(a)(9) of the Bankruptcy Code, which states that administrative expenses claims must be paid in full no later than the effective date of a plan of reorganization.  With no specific Bankruptcy Code provision dictating the time of payment for a claim arising under Section 503(b)(9), it is well accepted (and the Court itself has held) that the determination of the timing of payment of administrative expenses is a matter within the discretion of the court.  *See e.g., In re Global Homes Prods.*, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) (determination of timing of payment an exercise of court's discretion).

7.    It is well-settled law that the time of payment of administrative expense claims is within a court's discretion.  *In re Garden Ridge Corp.*, 323 B.R. 136, 143 (Bankr. D. Del. 2005); *In re Global Home Prods., LLC*, 2006 WL 3791955 at * 5.  Courts in this jurisdiction, however, have held that bankruptcy courts may deviate from the general rule and grant immediate payment of such administrative expenses after considering three factors: (1) the prejudice to the debtors, (2) the hardship to the claimant, and (3) potential detriment to other creditors.  *Garden Ridge*

3

*Corp.*, 323 B.R. at 143; *Global Home Prods.*, 2006 WL 3791955 at *4; see also *In re*

*Bookbinders' Rest., Inc.*, 2006 WL 3858020 at *13-4 (Bankr. E.D. Pa. Dec. 28, 2006) (holding

that when Congress enacted Section 503(b)(9) it did not intend to alter the existing practice of

leaving the timing of payment of an allowed administrative expense claim to the discretion of the

court).   Other courts have recognized that the immediate payment of administrative expense

claims is "exceptional" and "a creditor must show that 'there is a necessity to pay and not merely

that the Debtor has the ability to pay'."  *In re Cont'l Airlines, Inc.*, 146 B.R. 520, 531 (Bankr. D.

Del. 1992) (quoting *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 179 (Bankr. S.D.N.Y. 1989)); see

also *Bookbinders' Rest., Inc.*, 2006 WL 3858020 at *4 (court rejected argument that creditor was

entitled to immediate payment of its administrative expense without a further hearing even

though the debtor's monthly operating reports showed that it had sufficient cash to make the

payments).

8.      Plastic Suppliers has not presented any evidence to establish the need for

immediate payment of the Claim.   Rather, Plastic Suppliers makes generalized statements

regarding the Debtors' postpetition financing, a decrease in Plastics Suppliers' revolving credit

availability, and a lack of harm to other of the Debtors' creditors.  *See* Motion ¶¶ 14-15.

A.      Plastic Suppliers Assertion Regarding the Debtors' Administrative Insolvency Is

         Incorrect as a Matter of Law

9.      Plastic Suppliers argues that the Debtors postpetition DIP financing should

provide for administrative solvency while the Debtors operate in Chapter 11 and pursue a sale

process or plan of reorganization.  *See* Motion ¶ 9.  Plastic Suppliers argument, however, reflects

an implicit assumption about the nature of administrative solvency that is not correct.   Plastic

Suppliers' argument assumes that in order to be administratively solvent the Debtors must

4

immediately be able to pay all of their outstanding 503(b)(9) administrative expense obligations. While administrative insolvency does reflect a debtor's inability to pay its administrative expenses, it is not clear, in the context of 503(b)(9) claims, when such solvency should be measured.  As noted above, the only explicit timing requirement in the Bankruptcy Code for the payment of Section 503(b)(9) claims is found in Section 1129(a)(9), which merely requires payment of Section 503(b)(9) claims in full on or before the effective date of a confirmed plan of reorganization.  Accordingly, Plastic Suppliers assumption that the Debtors' administrative solvency requires immediate payment of 503(b)(9) claims is incorrect as a matter of law, as any determination that the Debtors are administratively insolvent based upon unpaid 503(b)(9) claims is premature.

B.    Denial of Motion for Immediate Payment Will Not Impose Hardship on Plastic Suppliers

10.    As mentioned above, the immediate payment of administrative expense claims is an extraordinary remedy and requires a claimant to show that the survival of its business is at risk absent such payment.  *Global Home Prods.*, 2006 WL 3791955 at *5 (noting the relatively large revenue of the creditor as justification for denying the motion for immediate payment because such relief was not necessary to keep the claimant in business).  Here, Plastic Suppliers avers that it should not be forced to fund the Debtors' reorganization and that payment of its 503(b)(9) claim would have the salutary effect for Plastic Suppliers of additional availability of credit under its revolving loan facility.

11.    Neither of these arguments demonstrates prejudice sufficient to justify the Court requiring the Debtors to make immediate payment on the Claim.  First, Plastic Suppliers does not explain how the Debtors' failure to pay the Claim immediately forces Plastic Suppliers to involuntarily fund the Debtors' reorganization or sale efforts.  *See* Motion ¶ 14.  Moreover,

Plastic Suppliers does not aver that increased availability under its revolving credit facility is in any way critical to its ongoing operations. *Id.* at ¶ 15. Furthermore, Plastic Suppliers has failed to provide any evidence to support its scant claims of hardship. *See Id.* at ¶ 14, 15. The Debtors' believe that it is unlikely that the operations of Plastic Suppliers will be affected by the outstanding invoices of one client, but even if that were the case, Plastic Suppliers has failed to provide specific evidence of harm to its business that would justify immediate payment of the Claim. As such, immediate payment of the Claim is unwarranted.

12.    Plastic Suppliers also argues that its claims are prejudiced as against other claimants that are being paid pursuant to orders entered by the Court. *See* Motoin ¶ 18. The claimant in *Global Home Products*, raised a similar argument, asserting that the debtors' postpetition payments to "critical vendors" pursuant to an order of the court unfairly discriminated against the claimant's 503(b)(9) claim. 2006 WL 3791955, at *5. After noting that payment of critical venders was left to the debtors' business judgment, the Court found that the claimant would suffer "little prejudice" or hardship if its payment was deferred until after confirmation of a plan. *Id.* The Debtors should obtain a similar result here. Any perceived prejudice to Plastic Suppliers is not sufficient to support its request for immediate payment of its Claim.

C.    <u>Immediate Payment Will Be Severely Prejudicial to the Debtors</u>

13.    An order granting the immediate payment of the Claim would deprive the Debtors of liquidity when the Debtors are already operating under extremely tight budgetary constraints, as reflected in the budget attached to the Debtors' motion to approve their postpetition financing. *See* Docket Nos. 12, 39. An additional unanticipated, and unbudgeted, demand on the Debtors'

RLF1 8923607v.1

limited cash funds will adversely impact their ability to move ahead in their Chapter 11 Cases and to maximize the value of their assets through a sale as a going concern.

14.     Moreover, an order granting the immediate payment of the Claims may encourage other administrative expense claimants to file similar motions, which could cause even further disruption to the reorganization process.  If the relief requested were granted, there is no question that other claimants will most likely rely on the relief granted to Plastic Suppliers to seek the immediate payment for their claims.  The Debtors would then be required immediately to expend time and resources analyzing the validity of a cascade of claims, and divert funds from their limited cash resources to assess and respond to the claims.  As the court noted in *HQ Global Holdings, Inc.*, in making a determination of the timing of payment of a 503(b)(9) claim, "one of the chief factors courts consider is…the need to prevent a race to a debtor's assets." *In re HQ Global Holdings, Inc.,* 282 B.R. 169 (Bankr. D. Del. 2002).  Just such a race would result here, and the concomitant diversion of the Debtors' resources would harm the Debtors' and their estates and is unnecessary at this stage of the Debtors' Chapter 11 Cases, both as a practical matter and as a matter of law.  Accordingly, Plastic Suppliers' Motion should be denied.

<u>Conclusion</u>

15.     Plastic Suppliers has failed to establish that it will suffer a hardship if the Claim is not immediately paid.  Conversely, the Debtors have established that the immediate payment of the Claim will severely prejudice them, and will also harm their creditors.  For these reasons the Debtors submit that the Court should exercise its discretion to deny Plastic Suppliers' request for immediate payment of the Claim.

WHEREFORE the Debtors respectfully request that the Court enter an order denying the Motion and grant the Debtors such other and further relief as is just.

RLF1 8923607v.1

Dated: July 19, 2013
      Wilmington, Delaware

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Robert C. Maddox*
John H. Knight (No. 3848)
Michael J. Merchant (No. 3854)
Paul N. Heath (No. 3704)
Robert C. Maddox (No. 5356)
920 N. King Street
Wilmington, Delaware 19801
Telephone: 302-651-7700
Facsimile: 302-651-7701
Email: collins@rlf.com
      knight@rlf.com
      merchant@rlf.com
      heath@rlf.com
      maddox@rlf.com

*Counsel for Debtors and Debtors in Possession*

RLF1 8923607v.1