IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NE OPCO, INC., et al., | ) | Case No. 13-11483 (CSS) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Related Docket No.: 639 |
| | ) | |

## OPINION

**BALLARD SPAHR LLP**
Matthew G. Summers
919 N. Market Street, 11th Floor
Wilmington, DE  19801

-and-

**HUGHES HUBBARD & REED LLP**
Kathryn A. Coleman
Christopher Gartman
One Battery Park Plaza
New York, NY  10004

Counsel for Cenveo Corporation
and Cenveo Inc.

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins
John H. Knight
Michael J. Merchant
Paul N. Heath
Zachary I. Shapiro
Tyler D. Semmelman
920 North King Street
Wilmington, DE  19801

Counsel for Debtors and
Debtors in Possession

**GELLERT SCALI BUSENKELL
& BROWN LLC**
Michael Busenkell
Brya Keilson
913 N. Market Street, 10th Floor
Wilmington, DE  19801

- and-

**LAW OFFICE OF SCOTT R. AMES**
Scott R. Ames
1137 West Olympic Blvd. Suite 500
Los Angeles, CA  90064

Counsel for Paul Torres

Dated: August 8, 2014

Sontchi, J. *Clifford Sontchi*

# INTRODUCTION

Before the Court is the *Corrected Motion Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's September 12, 2013 Sale Order and Injunction* (D.I. 639) (the "Motion") filed by Cenveo Corporation and Cenveo, Inc. (collectively, "Cenveo"). As explained below, Torres[1] alleges wrongful discrimination against Cenveo for (alleged) acts that occurred prior to, but related to, Cenveo's purchase of the Debtors' assets. At its heart, the Motion seeks to insulate Cenveo from (alleged) wrongdoing it committed prior to the sale Closing. For the reasons set forth below, the Court overrules the Torres' objection, in part, and grants Cenveo's Motion as it relates to pre-Closing allegations.

## STATEMENT OF FACTS

### A. Procedural History

Cenveo filed the Motion which was objected to by Paul Torres[2] ("Torres") and supported by NE Opco, Inc. ("NE Opco") and certain of its affiliates[3] (collectively, with NE Opco, the "Debtors"). The Court heard argument on the Motion on July 3, 2014 (the "Hearing") and at the conclusion of the hearing took the Motion and issues related

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them below.

[2] D.I. 667. Hereinafter referred to as the "Torres Response."

[3] D.I. 704.

thereto under advisement. The Motion is fully briefed and is ripe for the Court's consideration.

## B. Factual Background

### i. Debtors' Bankruptcy

The Debtors filed for Chapter 11 protection on June 10, 2013. In August 2013, the Debtors filed a motion seeking approval of three asset purchase agreements with three different purchasers, including Cenveo, pursuant to which substantially all of the Debtors' assets would be sold. The Cenveno sale agreement provided that Cenveo would assume certain identified liabilities, while all other liabilities would be retained by the Debtors.[4]

On September 12, 2013, this Court entered the Sale Order. The Sale Order provided that the sale transactions are

> free and clear of every lien, encumbrance, pledge, mortgage, deed of trust, security interest, claim, lease, charge, option, right of first refusal, easement, servitude, proxy, voting trust or agreement, transfer restriction under any shareholder or similar agreement or encumbrance other than Permitted Exceptions, and the Excluded Liabilities, . . . and the Excluded Liabilities shall be released, terminated and discharged as to the Purchased Assets . . .[5]

---

[4] *Findings of Fact, Conclusions of Law, and Order Authorizing (A) the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (B) The Debtor's Entry Into and Performance of Its Obligations Under the Asset Purchase Agreements, (C) the Debtor's Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and (D) Related* Relief (the "Sale Order"), Exhibit A (*Asset Purchase Agreement By and Between Ne Opco, Inc., Cenveo Corporation and Cenveo, Inc.*, dated as of August 21, 2013) ("Cenveo APA"), § 2.3 (D.I. 353).

[5] Sale Order, ¶ 16.

The Sale Order continues that all persons and entities, including employee and litigation claimants, release all liens and claims, whether arising prior to or subsequent to the commencement of the Debtors' cases, "arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the operation of the Debtors' businesses before the Closing or the transfer of the Debtors' interests in the Purchased Assets" to Conveo and "shall not on account of such Interest assert, prosecute or otherwise pursue claims against" Cenveo.[6]

The Sale Order expressly reserves this Court's jurisdiction to enforce the Sale Order.[7]

Furthermore, the Cenveo APA stated that all liabilities "with respect to the employment . . . or termination of employment . . . of any Employee" are defined as "Excluded Liabilities" that were not purchased or assumed by Cenveo and for which the Debtors, as seller, would remain "solely and exclusively liable."[8]

Cenveo closed on its purchase under the Cenveo APA on September 16, 2013 (the "Closing" or "Closing Date").[9]

---

[6] Sale Order, ¶ 17. The Sale Order contains other provisions releasing and protecting Cenveo from claims arising before the Closing. *See, e.g.*, Sale Order ¶¶ I, N, 10, 19, 20, and 28. Additionally, Cenveo was found to be a "good faith purchaser" under section 363(m) with the related protections. *Id.* at ¶¶ G and L.

[7] Sale Order, ¶ 23.

[8] Cenveo APA, § 2.4(e).

[9] *See* D.I. 370 (*Motion of the Debtors for Entry of An Order (I) Establishing Bar Dated for Filing Proofs of Claim on Account of (A) Claims Arising Prior to the Petition Date, and (B) Administrative Expense Claims Incurred in the Postpetition Pre-Closing Period and (II) Approving Form and Manner of Notice Thereof*) at ¶ 6.

### ii. Factual Background Related to Torres

Torres worked for NE Opco as a machine adjuster beginning in 1993.[10] In May 2013, Torres was injured at work. Although still injured and requiring surgery at a later date to repair his injuries, Torres returned to work shortly after his injury. As a result of his injury, Torres was accommodated by having him perform modified duties such as supervising other machine operators, and handling quality assurance, paperwork, inventory, parts and other non-manual/physical tasks.

In June 2013, Torres had surgery to repair his injury. On June 28, 2013, NE Opco approved Torres' medical leave of absence through September 16, 2013. Thereafter, in early September 2013, Torres contacted his supervisor and informed her that he would be released to return to work with restrictions on September 13, 2013. Although at this time Torres was an employee of NE Opco, his supervisor responded asking Torres to come into work and fill out a Cenveo job application.[11]

On September 4, 2013, Torres went to the NE Opco plant and his supervisor gave him a job application packet to complete. Torres filled out the application and attempted to return it to Cenveo's human resources representative Susan Torres (no relation to Torres) and informed her that he would be released to work with restrictions on September 13, 2013. However, Susan Torres refused to take Torres' application telling him that he "was not on the list." Susan Torres was unable to tell Torres if he could return

---

[10] For the purposes of this Memorandum Order, the Court will assume that the facts alleged by Torres are true. However, no factual findings regarding Torres' injury and the subsequent series of events are being made herein.

[11] According to the draft amended complaint attached to Torres' objection at Exhibit C, all NE Opco employees transitioning to Conveo filled out job applications. Torres' Response, Exh. C ¶ 18.

to work with restrictions or whether he could have his job back. Susan Torres then requested that Torres bring his "return to work release" to her when he received it.

Torres received his "return to work release with restrictions" paperwork on September 13, 2013 (three days prior to the Closing), and provided it to Plant Manager John Rogers that same day. Rogers told Torres that he would provide Torres' paperwork to human resources. Later that same day, Torres received a later notifying him that his employment was terminated effective September 13, 2013.[12]

On January 24, 2014, Torres filed a complaint against Cenveo and the Debtors, among others, in the Los Angeles County Superior Court for (i) disability discrimination, (2) failure to provide reasonable accommodation, (3) failure to engage in the interactive process, (4) retaliation, (5) denial of leave rights under the California Family Rights Act ("CFRA"), (6) interference with rights under CFRA, (7) retaliation for exercising rights under CFRA, (8) failure to take all reasonable steps to prevent discrimination and retaliation, and (9) wrongful termination in violation of public policies. All of these claims arise under state law prohibiting disability discrimination and the denial of medical leave.

---

[12] It bears noting that Torres states that he received his termination letter via Federal Express which means it was posted prior to September 13, 2014. Torres Response at Exhibit A ¶ 21. Furthermore, the termination letter is dated September 11, 2014. Torres Response at Exhibit B.

At the Hearing, Torres alleged two sets of claims of employment discrimination against Cenveo: (i) before the Closing Date related to the termination of his employment; and (ii) after the Closing for failure to hire Torres.[13]

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(N). The Court has the judicial power to enter a final order.

## ANALYSIS

### i. Pre-Closing Claims

In the Motion, Cenveo makes three arguments in support of its position that the Sale Order bars the pre-Closing claims made by Torres: (i) this Court has jurisdiction to enforce the Sale Order, including the injunction contained therein, against Torres; (ii) Cenveo cannot be held liable for NE Opco's alleged conduct, either directly or as a successor, "single enterprise" or "joint employer" with NE Opco; and (iii) Torres' state employment law claims do not enable him to circumvent the Court's Sale Order, and the injunction contained therein. Torres concedes that Cenveo did not assume certain liabilities of the Debtors, and that this Court can enforce the Sale Order and the injunction contained herein. The heart of Torres' argument is that he has direct claims against

---

[13] D.I. 712 (Transcript of Hr'g on July 3, 2014 at 24:19-20) (hereinafter referred to as Tr. page:line). At the hearing, it was unclear whether Torres had already asserted his post-Closing claims against Cenveo. Tr. 22:3-9. However, as set forth in more detail *infra* the Court does not have jurisdiction to hear post-Closing claims and issues against Cenveo.

7

Cenveo for Cenveo's pre-Closing, independent wrongdoing. Torres explains that Cenveo made the decision to terminate Torres' employment, and that such decision happened upon the entry of the Sale Order. Torres argues that Cenveo was his employer and/or that Cenveo was a prospective employer and that Cenveo discriminated against Torres because of his disability.

"It is well-settled that a bankruptcy court retains jurisdiction to interpret and enforce its prior orders, especially where, as here, the bankruptcy court expressly retains jurisdiction to do so."[14] As such, this Court has jurisdiction to interpret and enforce the Sale Order.

In *In re Trans World Airlines*,[15] the Third Circuit Court of Appeals determined that section 363(f) cut off successor liability to the buyer of an airline for a series of employee and other claims filed pre-sale. The Third Circuit reasoned that, notwithstanding the federal statutory basis of these interests, allowing successor liability claims as an exception to the "free and clear" termination of liability under section 363(f) would unacceptably afford one class of general unsecured claimants priority over others in derogation of the bankruptcy distribution scheme:

> We recognize that [these claims] are based on congressional enactments addressing employment discrimination and are, therefore, not to be extinguished absent a compelling justification. At the same time, in the context of a bankruptcy,

---

[14] *Morgan Olson, LLC v. Frederico (In re Grumman Olson Indus., Inc.)*, 445 B.R. 243, 247-48 (Bankr. S.D.N.Y. 2011) *aff'd*, 467 B.R. 694 (S.D.N.Y. 2012) (*citing Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 129 S.Ct. 2195, 2205, 174 L.Ed.2d 99 (2009)). *See also In re Motors Liquidation Co.*, 09-50026 (REG), 2014 WL 3747338, *8 n. 43 (Bankr. S.D.N.Y. July 30, 2014).

[15] 322 F.3d 283 (3d Cir. 2003) (hereinafter "*TWA*").

>these claims are, by their nature, general unsecured claims and, as such, are accorded low priority. To allow the claimants to assert successor liability claims against [buyer] while limiting other creditors' resources to the proceeds of the asset sale would be inconsistent with the Bankruptcy Code's priority scheme.[16]

Although in *TWA* there was no wrongdoing asserted against the purchaser, *TWA* establishes that successor liability claims may be barred by section 363(f) findings. In other words, "[b]y its terms, § 363(f) cleanses the transferred assets of any attendant liabilities, and allows the buyer to acquire them without fear that an estate creditor can enforce its claim against those assets. . . . In addition, § 363(f) has been interpreted to authorize the bankruptcy court to grant *in personam* relief, similar to the discharge under Bankruptcy Code § 1141(d), that exonerates the buyer from successor liability, including liability for tort claims."[17] As such, section 363(f)'s "free and clear" provisions serves two policies: "First, it preserves the priority scheme of the Bankruptcy Code and the principle of equality of distribution by preventing a plaintiff from asserting *in personam* successor liability against the buyer while leaving other creditors to satisfy their claims from the proceeds of the asset sale. Second, it maximizes the value of the assets that are sold."[18]

In *In re Christ Hospital*,[19] the bankruptcy court authorized a transfer of a debtor's assets to a purchaser free and clear of claims. Thereafter, a competitor filed a state court action against the debtor and the purchaser. The competitor-plaintiff alleged that the

---

[16] *Id.* at 292.

[17] *Grumman Olson Indus.*, 445 B.R. at 249 (citations omitted).

[18] *Id.* (citations omitted).

[19] 502 B.R. 158 (Bankr. D. N.J. 2013) (hereinafter "*Christ Hospital I*").

purchaser's action diminished the value of the assets, which in turn, harmed the value of claims against the debtor.[20] The bankruptcy court held that the economic tort claims asserted by the competitor against the purchaser were directly attributable to the sale, transfer and use of assets by the purchaser, and thus were "interests" as that term was used in section 363.[21] The bankruptcy court continued that such claims were barred by the *in rem* protected sale of property "free and clear."[22] As such, the bankruptcy court enjoined the state court litigation against the purchaser to the extent that the plaintiff sought redress for tortious interference allegedly committed in the course of negotiating and consummating the section 363 sale because such claims directly related to the purchaser's acquisition and use of assets.[23]

Although distinguishable, as the competitor-plaintiff was asserting liability against the purchaser for wrongdoing committed by the purchaser that affected the value of the competitor-plaintiff's claims against the debtors, *Christ Hospital I* allows successor liability claims to be cut-off as against the purchaser for the purchaser's pre-closing alleged wrongdoing.

Thereafter, again in *In re Christ Hospital*,[24] the bankruptcy court was faced with remarkably similar facts as this Court is facing. In *Christ Hospital II*, the bankruptcy court entered a sale order which contained findings that the assets were being transferred free

---

[20] *Id.* at 163.

[21] *Id.* at 163 and 170-73.

[22] *Id.* at 171-74.

[23] *Id.* 176-77.

[24] Case No. 12-12906, 2014 WL 2135942 (Bankr. D. N.I. May 22, 2014) (hereinafter "*Christ Hospital II*").

and clear and contained injunctive language regarding claims and interests related to the sale. After the bankruptcy court entered the sale order but *prior* to the sale closing, an employee was (allegedly) wrongfully terminated; although, the opinion does not note whether such termination was a result of the purchaser's impending closing on the assets, the Court finds it reasonable to assume so.[25] The *Christ Hospital II* court considered whether the employee's claims were barred by the approved sale of assets and the provisions of the sale order (and the later entered confirmation order).[26] The *Christ Hospital II* court, relying on *TWA*, held that a section 363(f) finding cut off successor liability to the buyer for claims and interests arising out of the property being sold, including the employee's wrongful termination claim.[27]

This progression of cases leads the Court to find that, even though Cenveo may have committed a wrongdoing *after* the Court approved and entered the Sale Order but *prior* to the sale Closing, the Sale Order and the injunction contained therein bars Torres from asserting pre-Closing claims against Cenveo related to Cenveo's impending purchase of assets from the Debtors.

Furthermore, the Court finds that Cenveo negotiated the assumed assets and liabilities, excluded assets and liabilities, and provisions of the Sale Order, including the injunction; and such negotiations led to a bargained for price of the transaction, which benefited the Debtors' and their creditors. As set forth above, the "free and clear"

---

[25] *Id.* at *1-2.

[26] *Id.* at *4.

[27] *Id.* at *3.

findings in section 363(f) serves two policies – both which are met here: Torres will not be able to circumvent the priority scheme of the Bankruptcy Code by asserting successor liability claims against Cenveo while other creditors satisfy their claims against the Debtors; and the Debtors received the maximum price for the assets because Cenveo was given some comfort through the injunction language contained in the Sale Order.[28]

As such, the Court finds that pre-Closing claims against Cenveo related to the sale of the assets do not survive the Closing. Consequently, Torres' pre-Closing claims are barred by the Sale Order and enjoined from continuing against Cenveo.

### ii. Post-Closing Claims

Torres also makes claims against Cenveo for failure to hire him post-Closing. In *In re Grumman Olson Industries, Inc.*, a tort claimant asserted claims against a purchaser of the debtors' assets for an injury that arose from an asset manufactured and sold by the debtor prior to the bankruptcy. The tort claimant alleged that the purchaser's action post-sale contributed to her injury. The bankruptcy court held that the sale order did not give the purchaser "a free pass on future conduct, and the suggestion that it could is doubtful."[29] Torres' (alleged) claims for failure to hire Torres occurred after the transfer of assets from the Debtors and are, as such, not affected by the section 363(f) finding in the Sale Order.[30] Claims arising post-Closing are not claims against the Debtors'

---

[28] *See Grumman Olson Indus.*, 445 B.R. at 249 (citations omitted).

[29] *Id.* at 250 (citations omitted).

[30] *Id.* at 254 (holding that "a person injured after the sale (or confirmation) by a defective product manufactured and sold prior to the bankruptcy does not hold a 'claim' in the bankruptcy case and is not affected by either the § 363(f) sale order or the discharge under 11 U.S.C. § 1141(d)." (citations omitted)).

bankruptcy estate and cannot be barred by the Sale Order. Thus, the Sale Order does not enjoin Torres from asserting claims against Cenveo for (alleged) wrongdoings committed after the Closing. Furthermore, as there are no post-Closing claims against the Debtors, this Court does not have jurisdiction to decide the post-Closing claims between Torres and Cenveo.

## CONCLUSION

For the reasons set forth above, Torres' pre-Closing claims are barred by the Sale Order and the injunction contained therein; however, Torres' post-Closing claims are not barred by the Sale Order. The Motion will be granted, in part, and denied, in part. An order will be issued.